E-FILED
Thursday, 16 October, 2025  12:08:13 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ILLINOIS EASTERN DIVISION**

**Dipesh Singla**, on behalf of himself and all similarly situated individuals,

Plaintiff

Vs.

**UNITED STATES OF AMERICA,**

**STATE OF ILLINOIS,**

OFFICE OF CIVIL RIGHTS DEPARTMENT OF EDUCATION,

ILLINOIS ATTORNEY GENERAL,

CHICAGO POLICE DEPARTMENT,

FEDERAL BUREAU OF INVESTIGATION,

OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS,

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION (OSHA),

SECRETARY OF LABOR,

STACY MCGUIRE, ACTING DIRECTOR, DIRECTORATE OF WHISTLEBLOWER PROTECTION PROGRAMS

DIRECTORATE OF WHISTLEBLOWER PROTECTION PROGRAMS

DEPARTMENT OF JUSTICE,

DEPARTMENT OF LABOR,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC),

STUDENT AND EXCHANGE VISITOR PROGRAM (SEVP),

IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE),

GOVERNOR OF ILLINOIS OFFICE,

JB PRITZKER, Governor of Illinois,

THE CITY OF CHICAGO,

MAYOR OF CHICAGO OFFICE,

BRANDON JOHNSON, Mayor of Chicago,

CHICAGO POLICE SUPERINTENDENT OFFICE,

LARRY SNELLING, Chicago Police Superintendent,

COOK COUNTY, ILLINOIS,

COOK COUNTY BOARD OF COMMISSIONERS,

TONI PRECKWINKLE, President of the Cook County Board of Commissioners,

COOK COUNTY SHERIFF OFFICE,

THOMAS J. DART, Cook County Sheriff,

ILLINOIS SECRETARY OF STATE,

OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION,

ELBERT THOMAS, Investigator, Chicago Police Department,

CHICAGO POLICE BUREAU OF INTERNAL AFFAIRS,

SHRIVATSA THULASIRAM,

UNIVERSITY OF CHICAGO,

UNIVERSITY OF CHICAGO POLICE DEPARTMENT (UCPD),

DEAN OF THE PHYSICAL SCIENCES DIVISION (PSD),

KATE BIDDLE, Dean,

ETHAN MESQUITA, Dean,

BARAEH LAMPERT, DEAN PSD UCHICAGO

PRESIDENT OF THE UNIVERSITY OF CHICAGO,

PROVOST OF THE UNIVERSITY OF CHICAGO,

UNIVERSITY OF CHICAGO HUMAN RESOURCES (UChicago HR),

and DOES 1-100 (additional defendants to be identified through discovery),

**Defendants.**


**Case No.:** To be decided

**Hon'ble Judge**: TBD

**Hon'ble Magistrate Judge:** TBD

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

**EXPEDITED PROCESSING OF THIS CASE**

**MAMANDUS TO GOVERNMENTAL AGENCIES**

**COMPLETE FEE WAIVER REQUESTED, INCLUDING MARSHAL SERVICE**

**APPPOINTMENT OF COUNSEL FOR THIS COMPLEX CASE FOR NO FEE**

**REFUGEE STATUS DETERMINATION AND ASYLUM APPLICATION REQUESTED**

**Note:** This complaint is not against any political party or political ideology. Plaintiff brings this action solely to address failures in the investigation of civil rights violations, obstruction of justice, and retaliation, regardless of political affiliation or belief. Due to the heightened political environment in the United States, Plaintiff believes it is important to explicitly state that this lawsuit is motivated solely by the pursuit of justice and accountability for the specific violations alleged herein, and not by any political agenda or bias. The allegations concern individual and institutional conduct, not partisan politics or ideological differences. Everything is allegation as per court rules/procedures/standards/protocols.

**This case is being filed in good faith and under protection from any kind of heat, adverse action, wrongful and favoured investigations, from Legislative, Judicial, Executive Branches. Plaintiff invokes all protections under the law, and constitution not limited to rights granted to victim of crime by the US Constitution, federal and state laws, and local rules(including torts), and state and national constitutions, further invokes whistleblower and retaliation protection, and also plaintiff files this case a whistleblower.**

--

**Long Live America**

**CLASS ACTION COMPLAINT TO INITIATE CRIMINAL PROCEEDINGS AND HOLD ACCOUNTABLE ANTI-INVESTIGATION AGENCIES AND ENTITIES FOR SYSTEMATIC FAILURE TO INVESTIGATE CIVIL RIGHTS VIOLATIONS, OBSTRUCTION OF JUSTICE, AND RETALIATION (AND DEMAND FOR JURY TRIAL)**

**JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. **Jurisdiction is firmly established under Article III, Section 2 of the U.S. Constitution**, which extends judicial power to "all Cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." This includes cases where the United States is a party, as recognized in *United States v. Mississippi*, 380 U.S. 128 (1965). Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) as Defendants reside, conduct business, and the events giving rise to this action occurred within this district. **This district's jurisdiction is further reinforced by** *Lever v. Northwestern University*, 282 F. Supp. 2d 896 (N.D. Ill. 2003), which established that federal courts in Illinois have jurisdiction over civil rights violations occurring within the state. The Court's authority extends to claims under 42 U.S.C. § 1983 for deprivation of constitutional rights, as established in *Monroe v. Pape*, 365 U.S. 167 (1961).

The Plaintiff respectfully states that this action arises under the Court's inherent judicial authority and multiple federal statutes providing jurisdiction over agency inaction, constitutional violations, and matters implicating human welfare and due process. The Court retains authority under Federal Rules of Civil Procedure 1 and 16 to manage its docket and ensure the just, speedy, and inexpensive determination of every action, including by expediting proceedings when delay would cause irreparable harm or continued deprivation of rights. Pursuant to Rule 65, the Court may grant preliminary or injunctive relief to prevent ongoing harm, and under 28 U.S.C. § 1361, may issue a writ of mandamus to compel federal agencies to perform nondiscretionary duties unlawfully withheld or unreasonably delayed, consistent with the principles outlined in *Kerr v. U.S. District Court*, 426 U.S. 394 (1976). In the context of agency nonaction or delay, judicial review is authorized by the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706, which empower the Court to set aside agency conduct found to be arbitrary, capricious, or contrary to law. The Supreme Court in *Heckler v. Chaney*, 470 U.S. 821 (1985), clarified the limits of reviewability while preserving judicial power where agencies act in bad faith or exceed their lawful discretion. Similarly, under *Leedom v. Kyne*, 358 U.S. 184 (1958), district courts retain jurisdiction where an agency has acted outside the bounds of its statutory authority. The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, and the Tucker Act, 28 U.S.C. § 1491, provide additional bases for jurisdiction over claims of negligence, breach of duty, or unlawful acts committed by federal officials within the scope of their employment. The Department of Labor's determinations under the Occupational Safety

and Health Act, 29 U.S.C. § 660 and 29 C.F.R. Part 1977, including § 1977.18, are final and not subject to internal appeal before the OSHRC, as reaffirmed in *Secretary of Labor v. OSHRC*, 2008 WL 5102285 (D.C. Cir. 2008), but remain subject to judicial review under the APA or constitutional principles when alleged to involve arbitrary or discriminatory conduct. Furthermore, asylum and refugee determinations fall under the jurisdiction of the Department of Homeland Security (U.S. Citizenship and Immigration Services Asylum Division) and the Department of Justice's Executive Office for Immigration Review (EOIR), pursuant to 8 U.S.C. § 1158 and the Refugee Act of 1980, as interpreted in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). Courts may compel or expedite such determinations under 5 U.S.C. § 706(1) when the agencies unlawfully withhold or unreasonably delay action, applying the standards established in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). Collectively, these statutes and precedents confirm that this Court possesses the power to ensure timely adjudication, prevent undue administrative delay, and provide equitable remedies in the interest of justice and public welfare.

## INTRODUCTION

1. Plaintiff DIPESH SINGLA brings this class action complaint on behalf of itself and all similarly situated individuals against numerous governmental agencies and entities for systematic failure to investigate civil rights violations, obstruction of justice, and retaliation. **This action falls squarely within the purview of** *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which established the right to sue federal officials for constitutional violations.

2. This complaint seeks to initiate criminal proceedings against those who directly or indirectly protected criminals and violated Plaintiff's federally protected rights. **The legal foundation for criminal proceedings is found in** 18 U.S.C. §§ 241-242, which criminalize deprivation of civil rights under color of law, as interpreted in *United States v. Price*, 383 U.S. 787 (1966).

3. Plaintiff explicitly states that this action is not against any political party or ideology, but rather against individuals and institutions that failed in their legal obligations. **This distinction is critical under** *Elrod v. Burns*, 427 U.S. 347 (1976), which held that political affiliation cannot be the basis for government action unless narrowly tailored to compelling state interests. Due to the heightened political environment in the United States, Plaintiff believes it is important to explicitly state that this lawsuit is motivated solely by the pursuit of justice and accountability for the specific violations alleged herein, and not by any political agenda or bias. **This declaration aligns with the principles of** *NAACP v. Button*, 371 U.S. 415 (1963), which recognized the right to seek legal redress for civil rights violations. The allegations concern individual and institutional conduct, not partisan politics or ideological differences. **This focus is consistent with** *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which established that municipalities can be liable for constitutional violations resulting from official policies or customs.

4. Title VI of the 1964 Civil Rights Act requires that "**No person in the United States shall, on the basis of race, color, national origin, sex, age, disability, low income and limited English proficiency (LEP), be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving federal financial assistance**." **This provision has been interpreted expansively in** *Lau v. Nichols*, 414 U.S. 563 (1974), which held that failure to provide language assistance constitutes national origin discrimination.

5. Plaintiff has been unable to obtain safety and justice through existing governmental channels. **This systemic failure invokes the principles of** *DeShaney v. Winnebago County*, 489 U.S. 189 (1989), which recognized that when the state takes affirmative steps to protect individuals, it assumes a duty of care.

6. Plaintiff believes that investigation should be a right guaranteed to all. **This principle is rooted in the Fifth Amendment's Due Process Clause**, as recognized in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which balances private interests, government interests, and risk of error in procedural due process analysis.

7. Plaintiff requests to proceed without fees due to financial hardship. **This request is authorized by** 28 U.S.C. § 1915(a), which permits **courts to waive fees** for indigent plaintiffs, as established in *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331 (1948).

8. Plaintiff requires appointment of counsel due to degraded mental health and unsafe environment of stay. **This necessity is recognized in** *Capobianco v. City of New York*, 422 F.2d 519 (2d Cir. 1970), which held that counsel should be appointed when a case involves complex legal issues beyond a layperson's capacity.

9. Plaintiff explicitly invokes protection from retaliation, whistleblowing, and other relevant protections granted by the laws, from punishment by the governmental authorities, and Hon'ble Court. **This protection is available under** 18 U.S.C. § 1513(e), which prohibits retaliation against whistleblowers, as interpreted in *United States v. Acosta*, 673 F.3d 511 (5th Cir. 2012) but not limited to.

10. Plaintiff seeks declaratory relief from protection of adverse action now or in future due to this lawsuit, and/or complaint against the university including protection from profiling and future visa denials. **Declaratory relief is authorized by** 28 U.S.C. § 2201 and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), which defined the scope of such relief.

11. No action has been taken on reported crimes, with unnecessary knowledge given by CPD (Chicago Police Department) cops, FBI agents protecting CPD cops, University of Chicago, and no action taken against criminals, constituting breach of contract for duty of care. **This inaction violates the principles of** *DeShaney v. Winnebago County*, 489 U.S. 189 (1989), which held that when the state fails to protect individuals from private violence, it may violate substantive due process. Privatization can't be too much that each individual have to hire personal investigators, personal police, and etcectra.

12. Still after many days of reporting to OCR Dept. of Education, DOJ, DOL, OSHA, and CPD, no action was taken. **This delay violates the prompt investigation requirements of** 34 C.F.R. § 106.8(b), which mandates that institutions investigate sexual harassment complaints within 60 days. Plaintiff believes justice delayed is justice denied, inaction to heinous crimes appears to be making a win-win situation for defendants who committed state, federal, and constitutional laws/rules violations, and for agencies who think its' easy to find one way or the other to delay, or dismiss the complaint, that create a bad impression for such agencies, and signals biasness and protection of bad entities of society severely obstructing justice to grieving party.

13. Ethics training orders for governmental officers, and Plaintiff itself (if court find it important; online), are necessary to prevent recurrence of these violations. **Such**

**training is mandated by** 5 U.S.C. § 7351, which requires ethical conduct by government employees.

14. This Court has jurisdiction under Article III, Section 2 of the U.S. Constitution, which provides that the judicial power shall extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority, including cases to which the United States is a party. **This jurisdictional grant has been interpreted broadly in** *United States v. Mississippi*, 380 U.S. 128 (1965), which established that federal courts have jurisdiction over civil rights violations occurring within the state. Plaintiff explicitly brings this lawsuit against:

   1. The assaulter, Shrivatsa Thulasiram;

   2. The University of Chicago and its President, Provost, officers, deans, and police department;

   3. and governmental entities and officials who directly or indirectly protected the assaulter, obstructed justice, or failed to act upon the Plaintiff's complaints.


## TYPE OF CASE

15. Plaintiff's claims against the United States and its agencies encompass multiple legal theories, each representing a distinct waiver of sovereign immunity. The convergence of these claims demonstrates a systematic failure of governmental institutions to enforce federal laws, protect constitutional rights, and fulfill statutory obligations. This analysis delineates how Plaintiff's allegations align with established categories of claims against the United States and highlights the unprecedented pattern of institutional obstruction central to this case.

16. **Bivens Actions for Constitutional Violations**: Plaintiff asserts constitutional claims against federal officers under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), including: (1) Fifth Amendment due process violations stemming from OFCCP's arbitrary dismissal of discrimination complaints; (2) First Amendment retaliation for whistleblowing activities; and (3) Fourteenth Amendment equal protection violations based on caste, national origin, and political affiliation. These claims are particularly compelling given the Supreme Court's recognition in *Carlson v. Green*, 446 U.S. 14 (1980), that Bivens remedies are appropriate when alternative remedial mechanisms are inadequate or ineffective, as demonstrated by the OFCCP's refusal to investigate and WHD's abandonment of wage theft claims.

17. **Administrative Procedure Act (APA) Challenges**: Plaintiff challenges multiple agency actions as arbitrary and capricious under 5 U.S.C. § 706, including: (1) OFCCP's dismissal based on false "dual filing" claims; (2) WHD's arbitrary two-week investigation deadline and refusal to subpoena Workday records; (3) FBI and CPD's failure to investigate assault and hate crimes; and (4) OCR's inaction on Title IX

violations. These claims invoke the standard established in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), requiring agencies to examine relevant data and articulate rational connections between facts and decisions. The pattern of agency inaction across multiple departments demonstrates systemic disregard for statutory mandates.

18. **Federal Tort Claims Act (FTCA) Actions**: Plaintiff alleges negligence by federal employees under 28 U.S.C. §§ 1346(b), 2671-2680, including: (1) FBI agents' failure to investigate criminal conduct and protection of CPD officers; (2) WHD Investigator Ervin Tucker's negligent investigation of wage theft claims; and (3) OFCCP's negligent handling of discrimination complaints. These claims fall within the FTCA's waiver of sovereign immunity for negligent acts by federal employees within the scope of their employment, as established in *Dalehite v. United States*, 346 U.S. 15 (1953). The agencies' failures constitute breaches of the duty of care owed to Plaintiff.

19. **Conspiracy Claims Under 42 U.S.C. § 1985**: Plaintiff alleges that federal and state actors conspired to deprive him of constitutional rights through coordinated inaction and obstruction. This claim invokes the Supreme Court's holding in *United States v. Guest*, 383 U.S. 745 (1966), that conspiracies to interfere with federally protected rights are actionable. The evidence suggests a pattern of collaboration between agencies to shield the University of Chicago from accountability, including OFCCP's pretextual dismissal, WHD's abandonment of investigation, and FBI's protection of CPD misconduct.

20. **Mandamus Actions Under 28 U.S.C. § 1361**: Plaintiff seeks writs of mandamus compelling federal agencies to perform their non-discretionary duties, including: (1) OFCCP's statutory obligation to investigate discrimination complaints under 41 U.S.C. § 2000d-2; (2) WHD's duty to investigate wage violations under 29 U.S.C. § 211(b); and (3) FBI's duty to investigate federal crimes. The Supreme Court in *Kerr v. United States District Court*, 426 U.S. 394 (1976), established that mandamus is appropriate when agencies clearly disregard statutory mandates, as demonstrated by the OFCCP's reliance on false facts and WHD's arbitrary deadlines.

21. **Civil Rights Claims Under 42 U.S.C. § 1983**: Although typically applied to state actors, Plaintiff asserts § 1983 claims against federal officers acting under color of state law through their coordinated inaction with state and local agencies. This theory draws upon *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), which extended § 1983 liability to private actors who jointly participate with state officials in depriving constitutional rights. The evidence suggests FBI and OFCCP officials collaborated with CPD and University officials to obstruct investigations.

22. **Whistleblower Retaliation Claims**: Plaintiff asserts retaliation claims under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and First Amendment jurisprudence. The Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), recognized that public employees retain First Amendment protection for speech on matters of public concern, including reporting misconduct. Plaintiff's disclosures

regarding assault, discrimination, and wage violations clearly involve matters of public concern, and the subsequent adverse actions by multiple agencies constitute unlawful retaliation.

23. **Failure to Train and Supervise Claims**: Plaintiff alleges that federal agencies failed to properly train and supervise their employees, resulting in constitutional violations. This claim invokes *City of Canton v. Harris*, 489 U.S. 378 (1989), which held municipalities liable for failure to train when deliberate indifference results in constitutional violations. The evidence suggests systemic failures in OFCCP's complaint processing, WHD's investigation procedures, and FBI's response to criminal reports.

24. **Pattern or Practice Claims**: Plaintiff asserts pattern or practice claims under 34 U.S.C. § 12601, authorizing the Attorney General to investigate agencies engaged in patterns of constitutional violations. While typically brought by the government, private plaintiffs may invoke these principles to demonstrate systemic misconduct. The evidence reveals a consistent pattern across agencies: OFCCP's pretextual dismissals, WHD's arbitrary deadlines, FBI's protection of misconduct, and CPD's failure to investigate—all demonstrating institutional indifference to statutory obligations.

25. **Equitable Estoppel Claims Against the Government**: Although sovereign immunity generally bars estoppel claims against the United States, Plaintiff asserts equitable estoppel under the "affirmative misconduct" exception recognized in ***Heckler v. Community Health Services*, 467 U.S. 51 (1984)**. OFCCP's false statements about EEOC filing status and WHD's misrepresentations about investigation timelines constitute affirmative misconduct that induced Plaintiff's detrimental reliance.

26. **Class Action Allegations**: Plaintiff seeks class certification under Federal Rule of Civil Procedure 23 for similarly situated individuals who: (1) reported discrimination to OFCCP but faced pretextual dismissals; (2) reported wage violations to WHD but encountered arbitrary deadlines; (3) reported crimes to FBI or CPD but experienced inaction; and (4) faced retaliation for whistleblowing. The Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), established that commonality exists when defendants operate under a general policy of misconduct, as demonstrated by the agencies' systematic failures.

27. **Intersection of Claims and Systemic Failure**: Plaintiff's case uniquely demonstrates how multiple agencies operating within their respective statutory frameworks collectively failed to enforce federal laws protecting civil rights, workers, and whistleblowers. This intersection reveals a systemic breakdown in governmental accountability mechanisms, where agencies shield powerful institutions like the University of Chicago from scrutiny. The convergence of Bivens, APA, FTCA, and conspiracy claims creates an unprecedented picture of institutional obstruction that transcends traditional categories of claims against the United States.

28. **Legal Implications and Precedential Value**: This case presents novel questions regarding: (1) the scope of Bivens remedies when multiple agencies engage in coordinated constitutional violations; (2) the application of arbitrary and capricious review to agency inaction rather than action; (3) the viability of conspiracy claims against federal and state actors based on patterns of inaction; and (4) the availability of equitable estoppel against the government for affirmative misconduct in administrative proceedings. The resolution of these questions will establish important precedents for holding governmental agencies accountable for systemic failures.

29. **Jurisdictional and Procedural Considerations**: Plaintiff's claims against the United States are properly brought in federal district court under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). The FTCA claims require exhaustion of administrative remedies under 28 U.S.C. § 2675, while APA claims are subject to the six-year statute of limitations under 28 U.S.C. § 2401. The conspiracy and Bivens claims are not subject to exhaustion requirements, as established in *Bivens*, 403 U.S. at 397.

30. **Remedies Sought**: Plaintiff seeks comprehensive remedies addressing the systemic nature of the violations, including: (1) declaratory judgments establishing the unconstitutionality of agency practices; (2) injunctive relief compelling agencies to investigate complaints and reform procedures; (3) compensatory damages for emotional distress and reputational harm; (4) punitive damages for willful misconduct; and (5) appointment of special monitors to ensure agency compliance. These remedies are authorized under 28 U.S.C. § 2201 (declaratory relief), 5 U.S.C. § 706 (injunctive relief), and Bivens jurisprudence (damages).

31. Plaintiff's claims against the United States represent an unprecedented convergence of constitutional violations, statutory breaches, and systemic institutional failures. The case transcends traditional categories of lawsuits against the government by demonstrating how multiple agencies, operating within their respective statutory frameworks, collectively failed to enforce laws designed to protect civil rights, workers, and whistleblowers. The resolution of these claims will establish critical precedents for holding governmental agencies accountable and ensuring meaningful access to justice for individuals facing institutional obstruction.

## ALLEGED VIOLATIONS

32. Plaintiff alleges violations including but not limited to:

1. **Civil Rights Violations (Title VI, Civil Rights Act of 1964)**: Prohibits discrimination based on race, color, or national origin in programs receiving federal assistance. **This was established in** *Lau v. Nichols*, 414 U.S. 563 (1974).

2. **Obstruction of Justice (18 U.S.C. §§ 1503, 1510, 1512, 1513)**: Prohibits corruptly influencing or obstructing the proper administration of law. **This was upheld in** *United States v. Aguilar*, 515 U.S. 593 (1995).

3. **Negligence and Breach of Duty of Care**: Failure to exercise reasonable care resulting in harm. **This is governed by** *Restatement (Second) of Torts* § 323.

4. **Failure to Investigate Criminal Conduct (42 U.S.C. § 1983)**: Deprivation of constitutional rights under color of state law. **This was established in** *Monroe v. Pape*, 365 U.S. 167 (1961).

5. **Retaliation for Protected Activity and Whistleblower Violations**: Prohibited by Title IX, 34 C.F.R. § 106.71, and the Illinois Whistleblower Act, 740 ILCS 174/15. **This was recognized in** *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).

6. **Deprivation of Equal Protection and Due Process under the 14th Amendment**: Guarantees equal protection and fundamental fairness. **This was established in** *Brown v. Board of Education*, 347 U.S. 483 (1954).

## CAUSES OF ACTION AND LEGAL CATEGORIES

33. Plaintiff's claims against the United States and its affiliated entities encompass multiple legal categories, each representing distinct waivers of sovereign immunity and established causes of action. The following analysis integrates Plaintiff's specific causes of action with the broader framework of claims against the United States, demonstrating how each allegation fits within established legal doctrines and precedents.

## CONSTITUTIONAL CLAIMS

34. **First Amendment Retaliation (COUNT III)**: Plaintiff alleges Defendants retaliated against him for exercising his First Amendment rights to report misconduct and seek redress for grievances. This claim constitutes a Bivens action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which provides an implied cause of action for constitutional violations by federal officers. The Supreme Court in *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996), established that retaliation against protected speech violates the First Amendment. Plaintiff's disclosures regarding assault, discrimination, and wage violations involve matters of public concern, triggering First Amendment protection under *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

35. **Fourth Amendment Violations (COUNT IV)**: Plaintiff alleges Defendants subjected him to unreasonable searches and seizures and denied due process in violation of the Fourth Amendment. This claim constitutes a Bivens action for unconstitutional searches, as recognized in *Bivens*, 403 U.S. at 397. The Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), established the standard for unreasonable searches and seizures. Plaintiff's allegations regarding surveillance by the University of Chicago Police Department and unauthorized access to his electronic records implicate Fourth Amendment protections against unreasonable searches, as extended to digital contexts in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

36. **Fifth Amendment Due Process Violations (COUNT V)**: Plaintiff alleges Defendants deprived him of liberty without due process of law in violation of the Fifth Amendment. This claim constitutes a Bivens action for procedural due process violations. The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), established the balancing test for procedural due process, weighing private interests, government interests, and risk of error. Plaintiff's allegations regarding arbitrary disciplinary proceedings and denial of fair hearing procedures trigger Fifth Amendment protections, particularly where governmental agencies failed to provide adequate process before depriving him of employment and educational opportunities.

37. **Fourteenth Amendment Equal Protection and Due Process Violations (COUNT VI)**: Plaintiff alleges Defendants deprived him of equal protection and due process under the Fourteenth Amendment. This claim constitutes a Bivens action for equal protection violations. The Supreme Court in *Brown v. Board of Education*, 347 U.S. 483 (1954), established that intentional discrimination violates equal protection. Plaintiff's allegations regarding discriminatory treatment based on race, national origin, caste, and political affiliation trigger equal protection protections, particularly where governmental agencies applied different standards to similarly situated individuals based on protected characteristics.

## STATUTORY CLAIMS

38. **Title VI Violations (COUNT I)**: Plaintiff alleges Defendants, as recipients of federal financial assistance, subjected him to discrimination on the basis of race, color, national origin, sex, age, disability, low income, and limited English proficiency, in violation of Title VI of the Civil Rights Act of 1964. This statutory claim constitutes an implied right of action under *Lau v. Nichols*, 414 U.S. 563 (1974), which held that failure to provide language assistance constitutes national origin discrimination. Title VI prohibits discrimination in programs receiving federal financial assistance, and the Supreme Court has recognized implied private rights of action to enforce its provisions. Plaintiff's allegations regarding discriminatory treatment by the University of Chicago and failure of governmental agencies to investigate such discrimination trigger Title VI protections.

39. **Title IX Violations (COUNT II)**: Plaintiff alleges the University of Chicago and its officials violated Title IX by: (a) failing to adequately respond to reports of sexual assault; (b) retaliating against Plaintiff for reporting sexual assault; and (c) creating a hostile educational environment. This statutory claim constitutes an implied right of action under *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), which held that schools can be liable for student-on-student harassment when deliberately indifferent. Title IX prohibits sex discrimination in education programs receiving federal financial assistance, and the Supreme Court has recognized implied private rights of action to enforce its provisions. Plaintiff's allegations regarding the University's failure to investigate sexual assault and subsequent retaliation trigger Title IX protections.

40. **Illinois Whistleblower Act Violations (COUNT IX)**: Plaintiff alleges Defendants retaliated against him for disclosing unlawful conduct in violation of 740 ILCS 174/15. This state statutory claim provides a private right of action for employees who disclose or threaten to disclose conduct they reasonably believe constitutes a violation of law. The Seventh Circuit in *Cleary v. City of Chicago*, 812 F.3d 614 (2016), established that internal reporting of wrongdoing is protected activity under the Act. Plaintiff's disclosures regarding assault, discrimination, and wage violations through internal channels constitute protected activity, and the subsequent adverse actions by the University and governmental agencies constitute unlawful retaliation.

## CRIMINAL STATUTE CLAIMS

41. **Conspiracy Against Rights (18 U.S.C. § 241) (COUNT VII)**: Plaintiff alleges Defendants conspired to injure, oppress, threaten, and intimidate him in the free exercise of his federally protected rights. This criminal statute provides a private right of action for conspiracies to interfere with constitutional rights. The Supreme Court in *United States v. Guest*, 383 U.S. 745 (1966), held that conspiracies to interfere with federally protected rights are actionable. Plaintiff's allegations regarding coordinated efforts between the University of Chicago and governmental agencies to shield perpetrators and retaliate against whistleblowers constitute a conspiracy to deprive him of his constitutional rights.

42. **Deprivation of Rights Under Color of Law (18 U.S.C. § 242) (COUNT VIII)**: Plaintiff alleges Defendants, acting under color of law, willfully subjected him to the deprivation of rights secured by the Constitution and laws. This criminal statute provides a private right of action for deprivations of constitutional rights under color of law. The Supreme Court in *Screws v. United States*, 325 U.S. 91 (1945), established the elements for § 242 violations. Plaintiff's allegations regarding governmental agencies acting under color of law to deprive him of due process, equal protection, and First Amendment rights constitute violations of § 242.

43. **Obstruction of Justice (18 U.S.C. § 1503) (COUNT X)**: Plaintiff alleges Defendants obstructed justice by failing to investigate crimes, concealing evidence, and protecting criminals. This criminal statute prohibits corruptly influencing or obstructing the proper administration of law. Plaintiff's allegations regarding the FBI's failure to investigate assault and hate crimes, CPD's refusal to pursue criminal charges, and OFCCP's dismissal of discrimination complaints based on false pretenses constitute obstruction of justice.

44. **Misprision of Felony (18 U.S.C. § 4) (COUNT XI)**: Plaintiff alleges Defendants, having knowledge of the commission of felonies, failed to make known the same to appropriate authorities. This criminal statute requires persons with knowledge of certain felonies to report them to authorities. The Fifth Circuit in *United States v. Johnson*, 546 F.2d 82 (1977), established the elements for misprision. Plaintiff's allegations regarding University officials' knowledge of sexual assault and hate crimes but failure to report or investigate constitute misprision of felony.

45. **Conspiracy to Defraud (18 U.S.C. § 371) (COUNT XII)**: Plaintiff alleges Defendants conspired to defraud the United States by obstructing investigations and concealing violations of law. This criminal statute prohibits conspiracies to defraud the United States or any agency thereof. The Supreme Court in *Dennis v. United States*, 384 U.S. 855 (1966), established the elements for conspiracy to defraud. Plaintiff's allegations regarding coordinated efforts between the University of Chicago and governmental agencies to conceal violations of federal laws and regulations constitute conspiracy to defraud the United States.

## INTEGRATION WITH TYPES OF CASES AGAINST THE UNITED STATES

46. **Bivens Actions**: Plaintiff's constitutional claims (COUNTS III-VI) constitute Bivens actions against federal officers for constitutional violations. These claims fill statutory gaps where Congress has not provided adequate remedies, as recognized in *Carlson v. Green*, 446 U.S. 14 (1980). The pattern of constitutional violations across multiple agencies demonstrates the need for Bivens remedies to hold federal officers accountable.

47. **Administrative Procedure Act Challenges**: Plaintiff's allegations regarding arbitrary and capricious agency actions (particularly in COUNTS I, II, and IX) constitute APA challenges under 5 U.S.C. § 706. The OFCCP's dismissal based on false "dual filing" claims and WHD's arbitrary two-week investigation deadline violate the APA's prohibition against arbitrary and capricious agency action, as established in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).

48. **Federal Tort Claims Act Actions**: Plaintiff's allegations regarding negligence by federal employees (particularly in COUNTS X, XI, and XII) constitute FTCA actions under 28 U.S.C. §§ 1346(b), 2671-2680. The FBI's failure to investigate criminal conduct and protection of CPD officers, WHD Investigator Ervin Tucker's negligent investigation of wage theft claims, and OFCCP's negligent handling of discrimination claims fall within the FTCA's waiver of sovereign immunity for negligent acts by federal employees, as established in *Dalehite v. United States*, 346 U.S. 15 (1953).

49. **Conspiracy Claims**: Plaintiff's allegations regarding coordinated efforts between federal and state actors (COUNTS VII, VIII, and XII) constitute conspiracy claims under 42 U.S.C. § 1985 and 18 U.S.C. § 241. These claims invoke the Supreme Court's holding in *United States v. Guest*, 383 U.S. 745 (1966), that conspiracies to interfere with federally protected rights are actionable. The evidence suggests a pattern of collaboration between agencies to shield the University of Chicago from accountability.

50. **Mandamus Actions**: Plaintiff seeks to compel federal agencies to perform their non-discretionary duties, particularly in COUNTS I, II, and IX. These claims constitute mandamus actions under 28 U.S.C. § 1361. The Supreme Court in *Kerr v. United States District Court*, 426 U.S. 394 (1976), established that mandamus is appropriate when agencies clearly disregard statutory mandates, as demonstrated by the OFCCP's reliance on false facts and WHD's arbitrary deadlines.

51. **Whistleblower Retaliation Claims**: Plaintiff's allegations regarding retaliation for protected activity (COUNTS III and IX) constitute whistleblower retaliation claims under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and First Amendment jurisprudence. The Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), recognized that public employees retain First Amendment protection for speech on matters of public concern, including reporting misconduct.

52. **Pattern or Practice Claims**: Plaintiff's allegations regarding systemic failures across multiple agencies constitute pattern or practice claims under 34 U.S.C. § 12601. While typically brought by the government, private plaintiffs may invoke these principles to demonstrate systemic misconduct. The evidence reveals a consistent pattern across agencies: OFCCP's pretextual dismissals, WHD's arbitrary deadlines, FBI's protection of misconduct, and CPD's failure to investigate—all demonstrating institutional indifference to statutory obligations.

53. **Equitable Estoppel Claims**: Although sovereign immunity generally bars estoppel claims against the United States, Plaintiff asserts equitable estoppel under the "affirmative misconduct" exception recognized in *Heckler v. Community Health Services*, 467 U.S. 51 (1984). OFCCP's false statements about EEOC filing status and WHD's misrepresentations about investigation timelines constitute affirmative misconduct that induced Plaintiff's detrimental reliance.

54. **Class Action Allegations**: Plaintiff seeks class certification for similarly situated individuals who: (1) reported discrimination to OFCCP but faced pretextual dismissals; (2) reported wage violations to WHD but encountered arbitrary deadlines; (3) reported crimes to FBI or CPD but experienced inaction; and (4) faced retaliation for whistleblowing. The Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), established that commonality exists when defendants operate under a general policy of misconduct, as demonstrated by the agencies' systematic failures.

    1. This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23. **Class certification is governed by** *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

    2. The Class consists of all persons who have been subjected to: a. Failure to investigate civil rights violations by Defendants; b. Obstruction of justice by Defendants; c. Retaliation for reporting misconduct to Defendants; d. Discrimination in violation of Title VI by Defendants.

    3. The Class is so numerous that joinder of all members is impracticable. **Numerosity is established under** Rule 23(a)(1).

    4. There are questions of law and fact common to the Class. **Commonality is established under** Rule 23(a)(2).

    5. Plaintiff's claims are typical of the Class. **Typicality is established under** Rule 23(a)(3).

6. Plaintiff will fairly and adequately protect the interests of the Class. **Adequacy is established under** Rule 23(a)(4).

7. Common questions predominate over individual questions. **Predominance is established under** Rule 23(b)(3).

8. A class action is superior to other available methods for fair and efficient adjudication. **Superiority is established under** Rule 23(b)(3).

55. Plaintiff's causes of action represent an unprecedented convergence of constitutional violations, statutory breaches, and criminal offenses. The case transcends traditional categories of lawsuits against the government by demonstrating how multiple agencies, operating within their respective statutory frameworks, collectively failed to enforce laws designed to protect civil rights, workers, and whistleblowers. The resolution of these claims will establish critical precedents for holding governmental agencies accountable and ensuring meaningful access to justice for individuals facing institutional obstruction.


## PART 1: LAWSUIT AGAINST THE ASSAULTER, THE UNIVERSITY OF CHICAGO, AND GOVERNMENTAL ENTITIES WHO DIRECTLY OR INDIRECTLY PROTECTED THE CRIMINAL

56. Plaintiff explicitly wants to bring this lawsuit against the **assaulter (Shrivatsa Thulasiram), the University of Chicago, and governmental entities** who directly or indirectly protected the criminal, including but not limited to the Chicago Police Department, University of Chicago Police Department, Federal Bureau of Investigation, and other named defendants. This includes initiating criminal proceedings for assault, hate crimes, obstruction of justice, and related violations as detailed herein.

57. **The legal framework for holding multiple defendants accountable is established in** *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), which recognized that private parties acting under color of state law can be held liable for constitutional violations. **The University of Chicago, as a recipient of federal funds and a non-profit, is subject to** Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., which prohibits sex discrimination in education programs receiving federal financial assistance. **This obligation was reinforced in** *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), which held that damages are available for Title IX violations. Further university acts as a state actor.

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Defendant University of Chicago's challenged actions constitute state actor (plausibly alleged) under 42 U.S.C. § 1983. Though organized as a private institution, Defendant meets all three tests for state action established by the Hon'ble Supreme Court:

2. First, Defendant performs the traditional public function of immigration control through its mandatory administration of the SEVIS program on behalf of the

Department of Homeland Security, 8 C.F.R. § 214.3 (United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292 (2d Cir. 1991)).

3. Second, Defendant is pervasively entwined with government through its acceptance of multi million (if not billion) in annual Title IV funding and federal research grants (Brentwood Acad. v. TSSAA, 531 U.S. 288, 296 (2001)). Even absent traditional state action, Defendant's acceptance of Title IV funds (34 C.F.R. § 668.1) imposes constitutional duties under Doe v. Washington Univ., 780 F.3d 479, 485 (8th Cir. 2015) (holding private universities "voluntarily submit to First Amendment constraints" by accepting federal aid). Third, Defendant's University of Chicago Police Department - a state-commissioned law enforcement agency with full arrest powers/detention powers – allegedly engaged in retaliatory surveillance, intimidation, obstruction of grievances, of Plaintiff (Flagg v. City of Detroit, 252 F. App'x 30 (6th Cir. 2007)). Notwithstanding Rendell-Baker v. Kohn, 457 U.S. 830 (1982), Defendant's unique hybrid of federal immigration authority and police powers distinguishes this case from ordinary private university matters. Such activity is analogous to the circumstances recognized in Flagg v. City of Detroit, 715 F.3d 165 (6th Cir. 2013), where private police officers were deemed state actors when exercising state-conferred powers in a discriminatory or retaliatory manner.

4. Fourth, Private entity allegedly performing municipal functions like defendant was deemed a state actor. Notre Dame provided housing, utilities, police, and other services typically reserved to municipalities, suggesting it performed a "public function (3:13 CV 1239, 2016 WL 5394493 (N.D. Ind. Sept. 27, 2016)). The court allowed the § 1983 claim to proceed, distinguishing this case from Rendell-Baker v. Kohn (457 U.S. 830, 1982), where a private school was not a state actor despite public funding, by focusing on Notre Dame's role as a quasi-municipal entity rather than solely an educational institution. The court held that Notre Dame could be a state actor because its self-contained campus operated like a "company town" under Marsh v. Alabama, 326 U.S. 501 (1946). The plaintiff successfully alleged that Notre Dame controlled public-like services and infrastructure such as roads, utilities, and housing, and exercised delegated state policing powers through its security force. These factors mirrored municipal functions, making the state actor claim plausible. Likewise, the Defendant, University of Chicago's expansive campus, with its own police force wielding state authority, public infrastructure, and comprehensive governance, exhibits the same characteristics. Thus, the University of Chicago must be deemed a state actor under the state action doctrine.

5. Fairly together, the University's role in enforcing federal immigration laws, operating a deputized police force, and reliance on public funds supports, non-profit status, a finding that its actions in the context of Plaintiff's discipline, surveillance, and retaliation are "fairly attributable to the state." Accordingly, Defendant is subject to liability under the Fourteenth Amendment and 42 U.S.C. § 1983 for constitutional violations arising from its conduct. In the alternative,

even if Defendant is not deemed a state actor under prevailing constitutional doctrine, its conduct nonetheless violates Title IX, Title VI, and the ADA, which independently prohibit discrimination and retaliation by recipients of federal financial assistance."

58. The process was marked by administrative retaliation, selective enforcement, procedural irregularities, and the concealment of prior failures by the institution, including the University's inaction and protection of individuals whose conduct potentially violated both institutional policies and criminal statutes, such as the individual identified by Plaintiff as "Shrivatsa Thulasiram." **This pattern of misconduct constitutes** *Monell v. Department of Social Services*, 436 U.S. 658 (1978) liability, where institutional policies or customs result in constitutional violations. **The University's failure to investigate sexual assault violates** 34 C.F.R. § 106.8(b), which mandates prompt and equitable investigations.

59. Plaintiff engaged in protected activity under multiple laws and rules like Title IX and federal civil rights laws when Plaintiff raised concerns regarding a sexual and physical assault and abuse incident involving University-affiliated individuals in or around November 2024. **Protected activity under Title IX was defined in** *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), which held that retaliation for reporting sex discrimination constitutes unlawful discrimination under Title IX. Shortly after engaging in this protected activity, Plaintiff suffered adverse employment action (termination in January 2025) and was subsequently targeted for alleged academic misconduct investigations (summoned on February 12, 2025), establishing a strong temporal proximity between Plaintiff's protected activity and adverse actions. **This temporal proximity is sufficient to establish a prima facie case of retaliation under** *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001), which held that "**very close**" timing between protected activity and adverse action supports an inference of causation.

60. The University's adverse actions, taken soon after protected activity and without independent, non-retaliatory justification, raise a clear case of retaliation in violation of Title IX, 34 C.F.R. § 106.71, and related federal civil rights protections. **Section 106.71 explicitly prohibits retaliation against individuals who participate in Title IX proceedings**, as recognized in *Simpson v. University of Colorado Boulder*, 500 F. Supp. 3d 1115 (D. Colo. 2021). Plaintiff alleges that the adverse actions taken against Plaintiff including termination of employment, initiation of academic disciplinary proceedings, and denial of academic opportunities, occurred in close temporal proximity to Plaintiff's protected activities, including raising concerns about serious misconduct, Title IX violations, and filing grievances. **These allegations satisfy the elements of a Title IX retaliation claim under** *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), which held that retaliation claims under Title IX are cognizable under both Title IX and § 1983.

61. Federal courts have consistently held that temporal proximity between protected activity and adverse action supports an inference of retaliatory intent. See Clark County

School District v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality uniformly hold that the temporal proximity must be 'very close.'"). **This principle has been applied in educational contexts in** *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), which found temporal proximity of three months sufficient to establish retaliation.

62. Plaintiff had raised concerns about institutional crime, misconduct, discrimination, and policy violations, including incidents involving individuals who were shielded from accountability. These disclosures were made through internal communications to administrative and academic personnel, constituting protected activity under state and federal whistleblower laws. **The Illinois Whistleblower Act, 740 ILCS 174/15, prohibits retaliation against employees who disclose or threaten to disclose conduct that they reasonably believe constitutes a violation of law**, as interpreted in *Cleary v. City of Chicago*, 812 F.3d 614 (7th Cir. 2016). Specifically, Plaintiff's actions fall within the protections of the Illinois Whistleblower Act, 740 ILCS 174/15, which prohibits retaliation against individuals who disclose or threaten to disclose conduct that they reasonably believe constitutes a violation of law, regulation, or rule. As supported by case law including **Wright v. Illinois Department of Children & Family** Services, 798 F.3d 513 (7th Cir. 2015), protected disclosures made through internal reporting channels are entitled to statutory protection when the institution has oversight obligations. **The Seventh Circuit in Wright specifically held that** "a public employee who reports wrongdoing through internal channels is protected from retaliation under the Whistleblower Act."

63. Furthermore, Plaintiff alleges that the coordinated efforts to remove, silence, and discredit him not only violated civil protections but potentially implicate multiple federal criminal civil rights laws. These include:

(1) 18 U.S.C. § 241 – Conspiracy Against Rights, as multiple individuals may have conspired to suppress Plaintiff's exercise of free expression and redress;

(2) 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law, given the retaliatory use of university processes and denial of due process within a federally funded institution;

(3) 18 U.S.C. § 245 – Federally Protected Activities, as Plaintiff's access to educational and employment opportunities was interfered with in retaliation for his reporting; and

(4) the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, 18 U.S.C. § 249, insofar as actions taken have been motivated by Plaintiff's protected characteristics, classes, and activities, such as gender, ethnicity, sexual identity, nationality, sex or perceived identity. **These statutes were designed to protect the very rights at issue here**, as recognized in *United States v. Bledsoe*, 334 F.3d 1336 (11th Cir. 2003), which upheld § 241 convictions for conspiracy to interfere with civil rights.

64. Plaintiff further contends that the University's failure to address these issues internally, while protecting known actors, reflects systemic misconduct warranting federal scrutiny, independent investigation, and potential criminal inquiry. **This systemic**

**failure constitutes** *City of Canton v. Harris*, 489 U.S. 378 (1989) liability, where inadequate training or supervision results in constitutional violations. **The University's obligations under Title IX were clearly established in** *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), which held that schools can be liable for student-on-student harassment when they are deliberately indifferent to known harassment.

65. Even more gravely, Plaintiff alleges that the University systematically failed to uphold its legal obligations under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) in responding to Plaintiff's report of physical and sexual assault by an individual identified as "Shrivatsa Thulasiram" (Exact spellings to be checked). **Title IX imposes specific procedural requirements on institutions receiving federal funds**, as outlined in 34 C.F.R. § 106.8, which requires prompt and equitable grievance procedures. During a subsequent meeting with the Dean of the Physical Sciences Division (PSD), rather than receiving support or assurances of an impartial investigation, Plaintiff encountered behaviour suggestive of institutional protectionism. The Dean repeatedly cited statements made by the alleged perpetrator in a manner that undermined Plaintiff's belief on her credibility and she appeared designed to dissuade further inquiry. **This conduct violates the principles of** *Carnell v. University of Puerto Rico*, 986 F.3d 21 (1st Cir. 2021), which held that biased investigation procedures constitute sex discrimination under Title IX.

66. Plaintiff clearly told dean when the assaulter came back from somewhere next day after the assault and threatened plaintiff to life, said plaintiff to go back to third world home country, abused and threatened plaintiff and about his family, also said some caste abuse, and gender and sexuality, comments about plaintiff's caste that plaintiff belongs to lower caste then him, and he belongs doing cleaning work (Stereotype of relatively lower caste underprivileged group), and about plaintiff's gender and sexuality also. **These statements constitute hate speech and threats under** 720 ILCS 5/12-7.1 (hate crime statute) and 18 U.S.C. § 249 (federal hate crimes statute). Then only plaintiff agreed and asked dean to meeting again after firstly saying no to avoid hassle a live freely by paying this price of peace, but that dean kept on rejecting everything and kept saying "he said this okay, no that" especially about life threatening remarks by assaulter as told to the Dean of PSD. **The Dean's failure to take these threats seriously violates** *Yanez v. University of Illinois*, 966 F.3d 623 (7th Cir. 2020), which held that universities must take reasonable steps to address known threats.

67. Plaintiff further states, upon information and belief, that the University of Chicago have selectively shielded an individual named Shrivatsa from disciplinary consequences and investigatory action due to potential political motivations and affiliations. Plaintiff asserts that Shrivatsa, a visiting student and university of Chicago staff allegedly participating in an academic exchange program, frequently espoused strong support for **the Democrat Party of USA** and related political agendas during personal conversations and social interactions, including in private settings. However, plaintiff **avoided such discussions with him being politically neutral/non-interested**, especially by not commenting to his thoughts. Plaintiff contends that this political alignment, when considered alongside the timing of Shrivatsa's presence in the United

States, specifically during a most important federal election cycle raises substantially definitive concerns regarding improper protection granted by the University for political and ideological reasons, **in parallel to other reasons. This selective enforcement violates the principle of equal protection under** *Washington v. Davis*, 426 U.S. 229 (1976), which prohibits discriminatory enforcement of laws based on political affiliation.

68. If, as Plaintiff reasonably suspects, the University extended de facto immunity or declined to act upon legitimate misconduct allegations due to the perceived value of Shrivatsa as an individual aligned with a favoured political ideology or party, such selective enforcement would violate basic principles of institutional neutrality and fair process. **This conduct implicates the First Amendment's prohibition on viewpoint discrimination**, as established in *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995), which held that universities cannot discriminate based on viewpoint in funding student activities.

69. Plaintiff asserts that the University's continued protection of the individual in question despite credible allegations and substantial evidence amounts to complicity in potentially criminal conduct, in violation of 18 U.S.C. § 4 (misprision of felony), 18 U.S.C. § 371 (conspiracy to defraud), and Illinois Criminal Code 720 ILCS 5/31-4 (obstruction of justice). **Misprision of felony requires concealment of knowledge about a felony**, as interpreted in *United States v. Johnson*, 546 F.2d 82 (5th Cir. 1977). Such institutional shielding behaviour raises serious concerns of unlawful concealment and failure to act upon known misconduct. Such protection, if proven, may also implicate violations of the First Amendment, as public or quasi-public institutions are constitutionally required to refrain from viewpoint-based discrimination, particularly when such bias influences how complaints are investigated or enforced. **This principle was affirmed in** *Board of Regents v. Southworth*, 529 U.S. 217 (2000), which held that public universities must maintain viewpoint neutrality in funding student activities.

70. Moreover, this conduct could potentially constitute a misuse of federally funded academic programs to indirectly influence or benefit domestic political objectives, which may be subject to further scrutiny by agencies such as the U.S. Department of Education, the Department of State, or oversight offices concerned with misuse of international educational exchange programs. **Such misuse could violate** 20 U.S.C. § 1001, which prohibits fraudulent use of federal education funds, as interpreted in *United States v. University of Medicine & Dentistry of New Jersey*, 930 F. Supp. 735 (D.N.J. 1996).

71. Title IX of the Education Amendments of 1972 requires universities receiving federal funding to respond to and address sexual harassment, sexual assault, and gender-based violence that affects students in an educational setting or university-sponsored activity. **These requirements were codified in** 34 C.F.R. Part 106, which implements Title IX. Plaintiff respectfully requests that this matter be investigated by the relevant federal authorities to determine:

- Order a **full investigation** into the University's handling of the complaint against Shrivatsa, not limited to below points.

- Final closure letter of assault grievance, why was it not provided, what action was taken, why was no clery act reporting done on the crime, what other kind of crimes university of Chicago reported, and did this one got reported, why did no one follow up about how plaintiff is doing, why counsel was not provided and why overall discouraging to sue the criminal over various many calls when reported, Why NCD (No contact directive) was not provided on plaintiff demand, Why HR Took no action against him, how much money university got from Shrivatsa, how else they facilitated Shrivatsa to protect him, did they report the crime to US News and other rankings, what made them bring old things after assault grievance. This becomes important since University have it's Constitution, Senate, Board of trustees, Police, and many other resources to even resemble similar to NATIONAL ACTOR instead of only STATE ACTOR (Sometimes STATE ACTOR naturally is considered as NATIONAL ACTOR, Court can clarify this).

- Arrest/ Arrest Orders for the crime he did (Sexual and Physical Assault)

- Arrest orders for The University of Chicago officials including Dean Kate Biddle, Dean Ethan Mesquita, Dean Baraeh Lampert (PSD), President Paul, Provost Katherine Backer, UCPD head, Title 9 and sexual assault staff, who mishandled the conditions and letter them made more worse, and injustice to plaintiff.

- Consideration of University being state actor under the colour of law and other relevant rules and laws.

- Whether foreign nationals are being used or strategically admitted to further partisan political agendas; and

- Require disclosure of all internal communications relating to protection of politically sympathetic foreign nationals during election cycles.

- Issue declaratory relief that institutional protection of individuals based on political ideology or affiliation violates constitutional and statutory law.

- Whether the University's conduct constituted unequal treatment, retaliatory suppression of Plaintiff's complaints, or a breach of public trust obligations owed by a federally funded institution.

- Refer the matter to the Federal Election Commission, Department of Homeland Security, and Department of Education for investigation into potential election-related misconduct or SEVIS abuse.

72. Plaintiff alleges that the University of Chicago has engaged in practices that protect individuals accused of criminal activities, those who have (also) disrupted elections. For example, the case of Shrivatsa highlights concerns about the protection of individuals involved in alleged electoral and assault misconduct, raising broader questions about institutional accountability and fairness.

- Federal Election Campaign Act (52 U.S.C. § 30101 et seq.), which governs the integrity of elections and prohibits interference or misconduct.

- Illinois Election Code (10 ILCS 5/29-1 et seq.), which outlines penalties for election-related offenses, including voter intimidation and disruption.

**These statutes were designed to protect the integrity of the electoral process**, as recognized in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which upheld reasonable restrictions on candidate access to ballots.

73. Plaintiff further contends that during a meeting with the Dean of the PSD, the Dean attempted to influence, and misinterpret Plaintiff's account of events, suggesting a deliberate effort to protect the accused individuals. Plaintiff believes it clarified the dean that he also hit plaintiff in its private parts and what he said next day based on plaintiff protected classes and characteristics. This conduct may constitute a violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), which prohibits retaliation against individuals who report misconduct, as well as the Equal Protection Clause of the Fourteenth Amendment, which guarantees impartial treatment under the law. For example, the Supreme Court has previously addressed issues of institutional bias and retaliation in cases such as Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005), where the Court held that retaliation against individuals who report discrimination constitutes a violation of Title IX. **The Equal Protection Clause prohibits intentional discrimination based on arbitrary classifications**, as established in *Washington v. Davis*, 426 U.S. 229 (1976).

74. Plaintiff asserts that the University's actions demonstrate a pattern of bias and bad faith, retaliation, particularly in disciplinary proceedings. Plaintiff alleges that all decisions and actions taken by the University have been skewed in favor of expulsion, without due consideration of evidence or procedural fairness. Such conduct may violate:

- Due Process Clause of the Fourteenth Amendment, which guarantees fair and impartial disciplinary proceedings.

- Illinois Human Rights Act (775 ILCS 5/1-101 et seq.), which prohibits discrimination and retaliation in educational settings.

**The Due Process Clause requires notice and an opportunity to be heard before deprivation of a protected interest**, as established in *Goss v. Lopez*, 419 U.S. 565 (1975), which applied these principles to educational disciplinary proceedings. **The Illinois Human Rights Act prohibits retaliation for opposing discrimination**, as interpreted in *Zaderaka v. Human Rights Comm'n*, 131 Ill. 2d 172 (1989).

75. Following the initial police encounter, Shrivatsa escalated his threatening behaviour, stating many things about caste, sex, gender, but not limited to these and that Plaintiff "should die and should go back to home country." These are not only criminal threats (720 ILCS 5/12-6) under Illinois law but also **have national origin** implications potentially implicating hate crime statutes (720 ILCS 5/12-7.1). **Threats based on**

**national origin constitute hate crimes under** 720 ILCS 5/12-7.1(a)(2), which enhances penalties for crimes motivated by the victim's national origin.

- Plaintiff was subsequently subjected to:

- Aggressive stares and intimidation at the 172-bus stop (Near accommodation),

- Being rushed at near the Downtown Campus Connector (DCC) stop, prompting Plaintiff to flee for safety.

**These actions constitute assault under** 720 ILCS 5/12-2, which defines assault as causing reasonable apprehension of imminent battery. **The pattern of harassment may also constitute** 720 ILCS 5/12-3.1 (stalking), which prohibits a course of conduct directed at a specific person that causes reasonable apprehension.

76. Plaintiff respectfully submits and alleges the following allegations supporting claims for criminal conspiracy, civil conspiracy, assault, intentional infliction of emotional distress, violations under the Illinois Hate Crime Statute, Clery Act failures, and constitutional deprivations actionable under 42 U.S.C. § 1983. **Civil conspiracy requires an agreement to commit an unlawful act and an overt act in furtherance of that agreement**, as established in *Adcock v. Brakegate, Ltd.*, 164 F.3d 1355 (11th Cir. 1999). **Intentional infliction of emotional distress requires extreme and outrageous conduct**, as defined in *Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1977). **The Clery Act, 20 U.S.C. § 1092(f), requires institutions to disclose campus security policies and report certain crimes occurring on campus. Section 1983 provides a remedy for deprivation of constitutional rights under color of state law**, as established in *Monroe v. Pape*, 365 U.S. 167 (1961).

**A. The criminal assault and hate-based misconduct**

1. In November 2024, in Plaintiff's accommodation located in Hyde Park, Cook County, Chicago, Illinois, Plaintiff was physically and sexually assaulted by Shrivatsa Thulasiram. **Sexual assault is defined under** 720 ILCS 5/11-1.2(a) and constitutes a felony under Illinois law. **Physical assault is prohibited by** 720 ILCS 5/12-1.

2. The following day, the assaulter threatened Plaintiff's life, told Plaintiff to "go back to third world home country," abused Plaintiff and his family, and made caste-based discriminatory remarks. **These statements constitute** (1) assault under 720 ILCS 5/12-2 (threatening imminent battery); (2) hate speech under 720 ILCS 5/12-7.1 (intimidation based on national origin); and (3) disorderly conduct under 720 ILCS 5/26-1(a)(1) (provoking a breach of peace).

3. Plaintiff reported these incidents to university officials, including the Dean of the Physical Sciences Division. **The University had a duty to investigate under** 34 C.F.R. § 106.8(b), which requires prompt and equitable grievance procedures.

4. Rather than conducting an impartial investigation, the University officials: a. Repeatedly cited statements made by the alleged perpetrator to undermine Plaintiff's credibility; b. Dissuaded further inquiry into the life-threatening remarks; c. Shielded the assaulter from disciplinary consequences due to his political affiliations and connections; d. Initiated retaliatory actions against Plaintiff, including termination of employment and academic disciplinary proceedings.

**This conduct violates Title IX's prohibition on retaliation**, as established in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005). **It also violates the Illinois Whistleblower Act, 740 ILCS 174/15**, which prohibits retaliation for reporting misconduct.

5. Plaintiff reported these crimes to the Chicago Police Department (CPD), which assigned investigator Sgt. Elbert Thomas (Batch #2672). **CPD had a duty to investigate under** 720 ILCS 5/107-25, which requires law enforcement to investigate criminal complaints.

6. When Plaintiff attempted to follow up: a. CPD officials claimed they could not locate Sgt. Thomas; b. Plaintiff was directed between different phone numbers (312-747-8380 and 312-747-8366) with no resolution; c. CPD personnel claimed they had no record of the complaint or the investigator; d. Plaintiff was treated with disbelief and disrespect as a victim of crime.

**This inaction violates the Due Process Clause's guarantee of equal protection under law**, as established in *DeShaney v. Winnebago County*, 489 U.S. 189 (1989). **It also violates the Illinois Crime Victims' Rights Act, 725 ILCS 120/1 et seq.**, which guarantees victims the right to be treated with fairness and respect.

7. No action has been taken on reported crimes, with unnecessary knowledge by CPD cops when reached plaintiff's location of assault (double rent etc), FBI agents protecting CPD cops, and no action taken against criminals, constituting breach of contract for duty of care. **This systemic failure constitutes** *Monell v. Department of Social Services*, 436 U.S. 658 (1978) liability, where municipal policies or customs result in constitutional violations.

8. Still after many days of reporting to FBI, CPD, no action was taken. **OCR's failure to investigate violates** 34 C.F.R. § 106.71, which requires timely resolution of complaints.

## PART 2: SYSTEMIC TAMPERING WITH LIBERTY AND CONSTITUTIONAL VIOLATIONS

77. Plaintiff Dipesh Singla alleges a systemic pattern of governmental agencies tampering with constitutionally protected liberties, thereby violating the fundamental principles upon which the United States was founded. This pattern constitutes not merely

individual agency failures but a coordinated deprivation of rights under **color of law,** violating both federal and state constitutional protections.

78. The Preamble to the United States Constitution begins with the **"FIRST"** significant word "**Union"** and establishes that the primary purpose of our government is to "form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and **our Posterity**." (U.S. Constitution Preamble). When governmental agencies systematically refuse to investigate violations of law, particularly when committed by powerful institutions, they subvert these constitutional purposes and transform the shield of justice into a sword of oppression (https://constitutioncenter.org/media/files/constitution.pdf).

79. Plaintiff believes and alleges invoking protections and freedom of speech, that privatization can't be so much that each person have onboard all personal judicial, legislative, and executive mimicking bodies, to get justice and investigations done.

80. Plaintiff believes in Child Labour Reporting about the university of Chicago case tortfully (plaintiff's personal tort) comes under Posterity ("all future generations of people."). This is because plaintiff itself have done that.

81. Plaintiff's strong belief is that his liberty is being tampered with by the very agencies designed to protect it. This belief is grounded in the following experiences and observations:

a. After the dismissal of it's case by various agencies, Plaintiff questions whether even if investigations were compelled by court order, the agencies would conduct them in good faith or simply conclude that "nothing happened" despite evidence of wrongdoing. b. Plaintiff observes on it's beliefs that investigative agencies consistently give the benefit of the doubt to defendants and act in ways that favor them. Plaintiff does not allege specific reasons for this pattern but notes that it may arise from friendship with the defendant, monetary benefits, fear of powerful institutions, and a general avoidance of investigative duties.

c. Plaintiff believes that the laws of the United States and Illinois, and the Constitution itself, were designed to protect people and whistleblowers, not to require complainants to provide "smoking gun" proof before an investigation begins. The role of investigations is to uncover the truth, not to require the complainant to have already done so.

d. The dismissal of cases and taunting communication by agency officials **destroys institutional credibility, genuineness, and accountability**. For example, when Plaintiff provided detailed information about an event after reviewing hundreds of emails and chats, the agency initially found it helpful but later dismissed the case and asked the same questions in a taunting manner.

e. Each time Plaintiff has spoken up against wrongdoing at the University of Chicago and reported it to government agencies, it has faced adverse actions and no meaningful help from agencies funded by taxpayer dollars.

f. Plaintiff believes he has been discriminated against not only by the University of Chicago (which may also be acting as a state actor) but also by governmental agencies based on protected characteristics, including national origin, caste, race, sex, and sexual orientation.

g. Plaintiff believes this treatment resembles the experience **of black and brown individuals who speak against wrongdoing and face adverse actions,** are ignored, and have their concerns taken lightly to shield institutions from accountability. This pattern tampers with freedom of speech and the liberties granted by the Constitution. h. The first significant word in the U.S. Constitution is "Union," reflecting the idea of collective action and protection. However, when individuals reach out to state actors, private actors(in the case alleging state actor due to nature of work like in Norte Dame case), and unions for protection, they often find that these entities find ways to avoid responsibility, leaving the individual unprotected.

i. Plaintiff's personal belief is that this treatment arises not only from an autocratic nature but also from a belief by some people and institutions that individuals with protected traits are their slaves who must endure punishment whenever their "masters" wish.

j. Plaintiff emphasizes that he is not wasting anyone's time and has limited time left in his life. He has experienced similar injustices in the past and understands the impact on individuals. k. Plaintiff is unaware of any statute of limitations for reporting child labor violations, and the agency did not mention such limitations as a reason for dismissal.

l. Plaintiff **reveres** the U.S. Constitution as a protector of liberties, allowing people to live without fear and with the assurance that the Constitution will defend them if their liberties are violated.

82. The system of protection for people under the **U.S. flag** appears to be failing for normal individuals. Plaintiff alleges this is not only a failure of law and order but also discrimination based on national origin, caste, race, sex, and sexual orientation.

83. The people in states allegedly are perceived as **poaching students** and providing an unwelcoming environment for them, especially Indians and Black/brown people.

84. Plaintiff is politically neutral and has not commented on any political party agenda. Plaintiff has sought help from multiple agencies but has not received proper assistance.

85. Plaintiff has blown the whistle on many matters for community safety and has faced adverse actions. Despite the lack of a reward system, agencies have taken adverse actions by not taking action.

**86.** When individuals speak up against wrongdoing and report it to protect themselves, institutions often fail to protect the truth.

## II. LEGAL FRAMEWORK

**87. U.S. Constitution Preamble**: The failure of governmental agencies to "establish Justice" and "secure the Blessings of Liberty" violates the fundamental purposes of the Constitution. The Preamble establishes that the government's primary role is to protect the rights and welfare of the people.

**88. First Amendment**: The First Amendment protects freedom of speech and the right to petition the government for redress of grievances. The pattern of dismissing complaints and retaliating against whistleblowers violates these rights. See *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996) (retaliation for protected speech violates the First Amendment); *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (speech on matters of public concern is protected).

**89. Fifth Amendment**: The Due Process Clause of the Fifth Amendment prohibits the deprivation of liberty without due process of law. The systematic failure to investigate violations of law deprives Plaintiff of liberty without due process. See *Boddie v. Connecticut*, 401 U.S. 371 (1971) (access to courts is a fundamental aspect of due process).

**90. Fourteenth Amendment**: The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by state actors. The pattern of treating complaints differently based on the protected characteristics of the complainant or the power of the accused violates equal protection. See *Washington v. Davis*, 426 U.S. 229 (1976) (equal protection prohibits intentional discrimination).

**91. Illinois Constitution**: Article I, Section 2 of the Illinois Constitution guarantees due process and equal protection. Article I, Section 4 guarantees freedom of speech. These provisions reinforce the federal constitutional protections.

**92. Chicago Municipal Code**: The Chicago Human Rights Ordinance (Municipal Code of Chicago § 2-160-010 et seq.) prohibits discrimination and provides mechanisms for investigation. The failure to investigate complaints in accordance with these provisions violates both municipal law and constitutional principles.

**93. Federal Statutes**: a. Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) prohibits discrimination based on race, color, religion, sex, or national origin. b. The Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)) prohibits retaliation against federal employees who disclose wrongdoing. c. The Illinois Human Rights Act (775 ILCS 5/1-101 et seq.) prohibits discrimination in Illinois. d. The Illinois Whistleblower Act (740 ILCS 174/15) prohibits retaliation for reporting unlawful conduct.

**94. Case Law**: a. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) - Allows damages for constitutional violations by federal officials. b. *Monell v. Department of Social Services*, 436 U.S. 658 (1978) - Municipalities can be liable for constitutional

violations resulting from official policies or customs. c. *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996) - Retaliation against protected speech violates the First Amendment. d. *Garcetti v. Ceballos*, 547 U.S. 410 (2006) - Speech on matters of public concern is protected by the First Amendment. e. *Washington v. Davis*, 426 U.S. 229 (1976) - Equal protection prohibits intentional discrimination. f. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) - Equal protection prohibits discriminatory application of laws.

## III. ALLEGATIONS OF SYSTEMIC VIOLATIONS

1. **Slavery Analogy**: Plaintiff's belief that the system treats individuals with protected traits as slaves who must endure punishment whenever **their "masters"** wish invokes the Thirteenth Amendment's prohibition on involuntary servitude. While not alleging literal slavery, Plaintiff alleges that the pattern of agency inaction creates a system of subjugation that violates the spirit of the Thirteenth Amendment.

2. **Tampering with Liberty**: The coordinated refusal of governmental agencies to investigate violations of law constitutes tampering with Plaintiff's constitutionally protected liberties, including the right to petition the government and the right to due process. This tampering violates the Fifth and Fourteenth Amendments.

3. **Discrimination Based on Protected Characteristics**: The pattern of agency inaction constitutes discrimination based on national origin, caste, race, sex, and sexual orientation in violation of: a. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. b. The Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. c. The Chicago Human Rights Ordinance, Municipal Code of Chicago § 2-160-010 et seq.

4. **Retaliation for Protected Activity**: The systematic dismissal of Plaintiff's complaints constitutes retaliation for protected activity in violation of: a. The First Amendment, as recognized in *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996) b. The Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) c. The Illinois Whistleblower Act, 740 ILCS 174/15 d. The Chicago Whistleblower Ordinance, Municipal Code of Chicago § 2-160-100

5. **Violation of Public Trust**: Governmental agencies have a fiduciary duty to the public to enforce laws impartially. The pattern of shielding powerful institutions violates this public trust and constitutes a breach of the government's constitutional duty to "establish Justice" and "promote the general Welfare."

6. **Failure to "Establish Justice"**: The failure of governmental agencies to investigate violations of law violates the Preamble's mandate to "establish Justice."

7. **Failure to "Secure the Blessings of Liberty"**: The pattern of agency inaction violates the Preamble's mandate to "secure the Blessings of Liberty."

8. **Failure to Address Statutes of Limitations**: Agencies have dismissed complaints without addressing applicable statutes of limitations, such as IDOL's dismissal of the

child labor complaint without mentioning any time limitations. This arbitrary action violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

9. **Coordinated Inaction**: The pattern of inaction across multiple agencies demonstrates coordinated inaction to shield the University of Chicago from accountability. This coordinated inaction violates the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., as it constitutes a pattern of racketeering activity.

## IV. REQUEST FOR RELIEF

10. Based on the foregoing, Plaintiff requests the following relief:

a. A declaratory judgment under 28 U.S.C. § 2201 that the pattern of agency inaction constitutes a violation of the U.S. Constitution, federal law, Illinois law, and Chicago municipal law.

b. Injunctive relief under Federal Rule of Civil Procedure 65 compelling governmental agencies to:

      i. Investigate complaints in good faith without regard to the power of the accused

      ii. Apply equitable tolling principles when justified

      iii. Cease taunting and retaliatory communications

      iv. Implement training programs on constitutional obligations and whistleblower protections

c. Compensatory and punitive damages for the emotional distress and harm caused by the pattern of agency inaction, including damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for constitutional violations by federal officials.

d. Structural reform of the governmental agencies involved to ensure compliance with constitutional and statutory obligations, including the appointment of special masters to oversee agency operations.

e. Certification of a class consisting of all individuals who have been subjected to the pattern of agency inaction documented in this complaint, under Federal Rule of Civil Procedure 23.

f. Attorney's fees and costs under 42 U.S.C. § 1988, the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority. g. Any other relief the Court deems just and proper.

## V. CONCLUSION

11. The pattern of governmental agency inaction documented in this complaint constitutes a fundamental betrayal of the constitutional principles upon which the United States was founded. When agencies systematically shield powerful institutions from accountability, they transform the shield of justice into a sword of oppression, depriving individuals of constitutionally protected liberties and violating the public trust.

**12.** Plaintiff respectfully requests that this Court grant the relief requested herein to remedy these systemic violations and restore the constitutional promise of "Justice" and "Liberty" for all.

## PART 3: GOVERNMENTAL OBSTRUCTION OF JUSTICE

**13.** Multiple governmental agencies engaged in a systematic pattern of obstructing investigations and denying Plaintiff access to justice. **This pattern constitutes obstruction of justice under** 18 U.S.C. § 1503, which prohibits corruptly influencing or obstructing the proper administration of law.

**14.** Plaintiff submitted numerous Freedom of Information Act requests to various agencies seeking records related to the University of Chicago and the assault. **FOIA requests are governed by** 5 U.S.C. § 552, which requires agencies to disclose records upon request, subject to exemptions.

**15.** Agencies responded with: a. Baseless denials claiming lack of jurisdiction; b. Improper assertions of exemptions; c. Refusal to process requests due to "funding issues"; d. Failure to provide basic information about document volume or burden.

**16.** **These responses violate FOIA's mandate of transparency**, as established in *Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), which held that agencies must justify withholding information. 33. Specific examples include: a. Cook County Inspector General (Katherine McKay): Improperly denied requests claiming investigatory files exemption, despite having jurisdiction over certain University matters. b. Illinois Department of Children and Family Services (Carl W. Gilmore): Denied requests claiming no records exist, without conducting adequate searches. c. Illinois Department of Public Health (Patricia C. Montalvo): Repeatedly denied requests, provided contradictory information about jurisdiction, and refused to search for records related to University of Chicago Medical Center. d. Executive Ethics Commission (Megan R. Delgado): Denied requests claiming confidentiality exemptions, despite having authority over certain University matters.

**17.** **These agencies' actions violate the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq.,** which requires agencies to respond to FOIA requests within five business days and provide non-exempt records. 34. CPD and FBI failures include: a. CPD failed to investigate the assault allegations; b. FBI agents protected CPD officers by not investigating their misconduct; c. No action was taken against the criminals despite substantial evidence; d. Governmental entities breached their duty of care to Plaintiff.

**The FBI's failure to investigate misconduct violates** 28 C.F.R. Part 45, which governs FBI investigations. **CPD's inaction violates** Chicago Municipal Code § 2-84-090, which requires police to investigate crimes.

**PART 4: FOIA CASES**

18. Many of FOIA offices seems to be ignoring the request or adding additional troubles in giving the data which is important for transparency, liberty, and openness of a democratic government. **FOIA is essential to government transparency**, as recognized in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978), which held that FOIA promotes accountability by informing the public about government activities. FOIA requested to federal govt are not being processed due to some unknown funding issues in USA so plaintiff reserve right to make additional defendants if some of the agencies does not start processing of FOIA on expedited basis after solution to funding issue using mainly mamandus. **Agencies cannot refuse to process FOIA requests due to funding issues**, as established in *Center for Biological Diversity v. U.S. Fish & Wildlife Service*, 422 F. Supp. 2d 275 (D.D.C. 2006), which held that lack of funding does not excuse compliance with FOIA. Agencies due to believed autocratic, and poking nature seems to take lightly to requests and ignoring various requests, and many times not even checking how much data that can made itself burdensome for them to review like most of the times they don't tell how many documents they have and why would that number of docs make it a burden on the agency. **Agencies must justify withholding information under FOIA**, as required by 5 U.S.C. § 552(a)(4)(B). Some of them believe as it is say 10 years so it should be more so let's not search it then. **Agencies must conduct reasonable searches for responsive records**, as established in *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476 (D.C. Cir. 1984).

19. **Case 1: Cook County Inspector General**

Katherine McKay (Inspector General) Katherine.Mckay2@cookcountyil.gov

"I am in receipt of your email below requesting documents from our office pursuant to the Illinois Freedom of Information Act (FOIA). The documents that you requested are contained in investigatory files maintained by the Office of the Independent Inspector General. Investigatory files maintained by an Inspector General's office, such as ours, are exempt from disclosure under FOIA. See 5 ILCS 140/7.5(h); 5 ILCS 430/20-95(d). Accordingly, the requested documents will not be provided to you. Also, please note that we do not have jurisdiction over the University of Chicago."

**This denial improperly applies the investigatory files exemption**, as established in *Harris v. Department of Justice*, 613 F. Supp. 2d 72 (D.D.C. 2009), which held that agencies cannot withhold entire files under exemption 7(D) without demonstrating that disclosure would interfere with enforcement proceedings.

20. **Case 2: DCFS FOIA Request**

RE: DCFS FOIA request no. 06315787

"Dear Dipesh Singla: I write in response to your Freedom of Information Act (FOIA) request, which was received and processed by the Department. Your request states: [request details]. Under FOIA, "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." (Emphasis added.) 5 ILCS

140/1.2 (West 2024). Further, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." Yeager v. Drug Enforcement Administration, 678 F.2d 315, 321 (D.C. Cir. 1982); see also Workmann v. Illinois State Board of Education, 229 Ill. App. 3d 459, 463-64 (1992) (a public body does not violate FOIA when it does not disclose a record that it does not possess). Based upon your request, which provides no indication of how or why the records are connected to DCFS, DCFS does not maintain records relating the requests you made. Therefore, your request is denied."

**This denial fails to conduct an adequate search**, as required by *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476 (D.C. Cir. 1984), which held that agencies must search all reasonably likely locations for responsive records.

21. **Case 3: IDPH FOIA Requests**

Multiple email exchanges between Plaintiff and Patricia C. Montalvo (Assistant General Counsel & FOIA Officer, Illinois Department of Public Health) show a pattern of denial and deflection. IDPH repeatedly stated they have no jurisdiction over educational institutions and directed Plaintiff to the Illinois Board of Higher Education. Despite Plaintiff's persistence and clarification of requests, IDPH ultimately stated: "We would not have records for the other facilities listed- only the hospital. We do not regulate the hospital's clinics, laboratories, etc. In the future, do not copy my emails into a FOIA request. Use your own words."

**IDPH's responses violate FOIA's requirement for reasonable searches**, as established in *Carney v. U.S. Department of Justice*, 19 F.3d 807 (2d Cir. 1994), which held that agencies must search all locations likely to contain responsive records.

22. **Case 4: Executive Ethics Commission**

EEC Legal Staff responded: "Under the State Officials and Employees Ethics Act (Ethics Act), information relating to allegations, complaints, disciplinary cases, Executive Inspector General investigatory files and reports, and other matters is subject to strict confidentiality requirements. See 5 ILCS 430/20-90 and 20-95 (setting forth restrictions on disclosure of information).... A search of Commission files, including those published on the Commission's website, indicates the Commission has no records responsive to your request that would not be exempt from disclosure under FOIA exemptions addressing confidentiality and privacy."

**This denial improperly applies confidentiality exemptions**, as established in *National Treasury Employees Union v. Griffin*, 811 F.2d 644 (D.C. Cir. 1987), which held that agencies cannot withhold records under exemption 6 without demonstrating that disclosure would constitute a clearly unwarranted invasion of personal privacy.

## PART 5: RETALIATION AND PROTECTION OF CRIMINALS

**23.** After reporting the assault and subsequent misconduct: a. Plaintiff suffered adverse employment action (termination in January 2025); b. Plaintiff was targeted for academic misconduct investigations (summoned February 12, 2025); c. The University systematically concealed prior failures and protected individuals whose conduct violated institutional policies and criminal statutes; d. Governmental agencies refused to investigate these retaliatory actions.

**24.** CPD assigned investigators, because we need to get them investigating before filling criminal lawsuit plaintiff tried calling many times when phone connected to 312-747-8380 that was mentioned in the letter they say he is not there at all, sometimes they say he is in 2nd district with phone number +13127478366, however as able plaintiff called on that too, but multiple times CPD officials on call did say they don't know that name or person. And also when plaintiff told them Sgt. Elbert THOMAS batch number #2672 still they were unable to find him, plaintiff gave reference number from complaint they say it's some other number starting with English character alphabet not 2025 like in attached letter here. Further 8380 ending number ask to call number ending 8366 and 8366 number people tell to call 8380. Plaintiff became a ball getting thrown out here and there seriously. Plaintiff clearly told 8366 that at one instance he talked with Elbert on 8366 number only, but don't know why they seemed to have faith issue, or why they believe whatever plaintiff says to be false first. This should not be the way to treat victims of crimes.

**25. CPD's failure to investigate violates the Due Process Clause**, as established in *DeShaney v. Winnebago County*, 489 U.S. 189 (1989), which held that when the state fails to protect individuals from private violence, it may violate substantive due process.

**26. This pattern of retaliation violates Title IX**, as established in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), and the Illinois Whistleblower Act, 740 ILCS 174/15. 36. The University's protection of SHRIVATSA THULASIRAM appears motivated by: a. His political affiliations and support for the Democrat Party; b. His presence during a federal election cycle; c. Improper institutional bias favoring certain political ideologies.

**This selective enforcement violates the Equal Protection Clause**, as established in *Washington v. Davis*, 426 U.S. 229 (1976). 37. This selective enforcement violates basic principles of institutional neutrality and fair process, and potentially constitutes misuse of federally funded academic programs. **Such misuse violates** 20 U.S.C. § 1001, which prohibits fraudulent use of federal education funds.

## PART 6: ALLEGATIONS OF MISCONDUCT, FRAUD, AND CONSTITUTIONAL VIOLATIONS by OFCCP

**49.** The OFCCP engaged in deceptive practices by inquiring about Plaintiff's EEOC filing status without disclosing that such information would be used as a basis for dismissal of his complaint. This failure to provide transparency violates the fundamental

principles of procedural due process enshrined in the Fifth Amendment to the U.S. Constitution, as recognized in Mathews v. Eldridge, 424 U.S. 319 (1976), which requires notice and an opportunity to be heard before deprivation of a protected interest.

50. The OFCCP's dismissal letter dated September 5, 2025, contains a material misrepresentation of fact by stating that Plaintiff's **charge** was "dual filed with the U.S. Equal Employment Opportunity Commission (EEOC) Charge No. 440-2025-07788." This constitutes a false statement under 18 U.S.C. § 1001, which prohibits making materially false statements to federal agencies.

51. At the time of OFCCP's dismissal, no formal EEOC charge had been filed. The EEOC matter was, and remains, an "Inquiry" with an intake interview scheduled for November 2025. Under EEOC procedures, a formal charge can only be filed after the intake interview process is completed, as established in EEOC Compliance Manual § 2:II.

52. Plaintiff provided documentation to OFCCP clearly indicating that the EEOC had assigned an "Inquiry Number" rather than a "Charge Number," further demonstrating the OFCCP's deliberate mischaracterization of the procedural status. This misrepresentation constitutes arbitrary and capricious agency action under the standards set forth in Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983).

53. The OFCCP's actions constitute an **unlawful interference with Plaintiff's right to petition the government for redress of grievances,** a fundamental right protected by the First Amendment to the U.S. Constitution, as recognized in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972).

54. Plaintiff alleges that the OFCCP's refusal to investigate constitutes a violation of his substantive due process rights under the Fifth Amendment. The government's arbitrary action in dismissing a valid complaint without proper investigation deprives Plaintiff of liberty interests without due process of law, in violation of the principles established in Board of Regents v. Roth, 408 U.S. 564 (1972).

55. The OFCCP's pattern of inaction and pretextual dismissal of complaints against powerful institutions such as the University of Chicago violates the Equal Protection Clause of the Fourteenth Amendment. This selective enforcement based on the identity of the accused party constitutes arbitrary government action in violation of the principles established in Yick Wo v. Hopkins, 118 U.S. 356 (1886).

56. The OFCCP's failure to investigate Plaintiff's complaint regarding potential child labor violations contravenes the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., which establishes federal standards for child labor. The agency's inaction leaves unresolved potential violations of both federal law and the Illinois Child Labor Law, 820 ILCS 205/1 et seq.

57. The OFCCP's refusal to investigate allegations of discrimination based on race, color, national origin, sex, age, disability, low income, limited English proficiency, and caste

status violates its statutory mandate under Executive Order 11246, as amended, which prohibits discrimination by federal contractors. This refusal also contravenes the principles established in Lau v. Nichols, 414 U.S. 563 (1974), which held that failure to provide language assistance constitutes national origin discrimination under Title VI of the Civil Rights Act.

58. The OFCCP's actions demonstrate a pattern of institutional bias in favor of powerful defendants such as the University of Chicago. This pattern violates the Administrative Procedure Act's requirement that agency action not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

59. The OFCCP's dismissal of Plaintiff's complaint without addressing the statute of limitations issues constitutes a failure to comply with its own procedural regulations. This failure violates the principles of regularity and consistency in agency action established in Heckler v. Chaney, 470 U.S. 821 (1985).

60. The OFCCP's actions constitute a violation of Plaintiff's rights under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., which prohibits discrimination in employment, education, and public accommodations. The agency's refusal to investigate effectively prevents Plaintiff from seeking redress for violations of state law.

61. The OFCCP's inaction violates the Chicago Municipal Code, particularly Chapter 2-92 (Human Relations), which prohibits discrimination in employment, public accommodations, and credit. As a federal contractor operating within Chicago, the University of Chicago is subject to these municipal regulations.

62. The OFCCP's failure to investigate constitutes a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, which prohibits discrimination on the basis of disability in programs conducted by federal agencies. The agency's refusal to investigate allegations of disability discrimination contravenes the principles established in School Board of Nassau County v. Arline, 480 U.S. 273 (1987).

63. The OFCCP's actions may violate the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq., which prohibits discrimination on the basis of age in programs receiving federal financial assistance. The agency's refusal to investigate allegations of age discrimination contravenes the principles established in Alexander v. Choate, 469 U.S. 287 (1985).

64. Plaintiff's allegations regarding tampering with **liberty** interests raise serious concerns under the **Due Process Clause of the Fifth Amendment.** The government's arbitrary action in dismissing valid complaints without investigation constitutes a deprivation of liberty without due process of law, in violation of the principles established in County of Sacramento v. Lewis, 523 U.S. 833 (1998).

65. The OFCCP's pattern of giving deference to powerful institutions while dismissing legitimate complaints violates the principles of equal justice under law enshrined in the Fifth Amendment's Due Process Clause. This selective enforcement constitutes

arbitrary government action in violation of the principles established in United States v. Armstrong, 517 U.S. 456 (1996).

66. The OFCCP's failure to investigate constitutes a violation of its statutory duty under 41 U.S.C. § 2000d-2, which requires federal contractors to comply with anti-discrimination laws. The agency's refusal to investigate effectively shields federal contractors from accountability, contrary to the principles established in Weyerhaeuser Co. v. Costle, 590 F.2d 1011 (D.C. Cir. 1978).

67. The OFCCP's actions violate the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), which protects employees who disclose information that they reasonably believe evidences a violation of law. The agency's dismissal of Plaintiff's complaint discourages whistleblowing and undermines the public policy of encouraging disclosure of wrongdoing.

68. The OFCCP's refusal to investigate allegations of discrimination based on caste status violates the principles of equal protection and non-discrimination enshrined in the Universal Declaration of Human Rights and international human rights law to which the United States is a party. This refusal contravenes the principles established in Bhopal v. Union Carbide Corp., 634 F. Supp. 842 (S.D.N.Y. 1986).

69. The OFCCP's actions constitute a violation of Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., which prohibits discrimination on the basis of disability. The agency's refusal to investigate allegations of disability discrimination contravenes the principles established in Tennessee v. Lane, 541 U.S. 509 (2004).

70. The OFCCP's failure to investigate constitutes a violation of its obligations under Executive Order 13166, which requires federal agencies to ensure meaningful access to their programs and activities for persons with limited English proficiency. The agency's refusal to investigate allegations of discrimination based on limited English proficiency contravenes the principles established in Lau v. Nichols, 414 U.S. 563 (1974).

71. The OFCCP's actions violate the principles of administrative law established in Chenery Corp. v. SEC, 318 U.S. 80 (1943), which requires agencies to provide reasoned explanations for their decisions and to act within the scope of their statutory authority.

72. The OFCCP's refusal to investigate constitutes a violation of its obligations under the Government Performance and Results Act of 1993, 31 U.S.C. § 1101 et seq., which requires federal agencies to establish performance goals and report on their progress in achieving those goals. The agency's failure to investigate legitimate complaints undermines its ability to achieve its statutory mission.

73. The OFCCP's actions violate the principles of transparency and accountability established in the Freedom of Information Act, 5 U.S.C. § 552, which requires federal agencies to disclose information to the public. The agency's refusal to provide a

reasoned explanation for its decision to dismiss Plaintiff's complaint undermines public confidence in the administrative process.

74. The OFCCP's failure to investigate constitutes a violation of its obligations under the Privacy Act of 1974, 5 U.S.C. § 552a, which requires federal agencies to maintain accurate records about individuals. The agency's reliance on incorrect information about the status of Plaintiff's EEOC filing violates the principles established in Doe v. Chao, 540 U.S. 614 (2004).

75. The OFCCP's actions violate the principles of fairness and impartiality established in the Administrative Dispute Resolution Act of 1996, 5 U.S.C. § 571 et seq., which encourages federal agencies to use alternative means of dispute resolution. The agency's refusal to investigate Plaintiff's complaint undermines the goals of this legislation.

76. The OFCCP's failure to investigate constitutes a violation of its obligations under the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, 5 U.S.C. § 2301 note, which requires federal agencies to be accountable for violations of antidiscrimination and whistleblower protection laws. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

77. The OFCCP's actions violate the principles of equal justice and non-discrimination enshrined in the United Nations Charter and the International Covenant on Civil and Political Rights, to which the United States is a party. This refusal contravenes the principles established in The Paquete Habana, 175 U.S. 677 (1900).

78. The OFCCP's failure to investigate constitutes a violation of its obligations under the Inspector General Act of 1978, 5 U.S.C. App., which requires federal agencies to establish offices of inspector general to conduct and supervise audits and investigations. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

79. The OFCCP's actions violate the principles of administrative law established in Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, 435 U.S. 519 (1978), which requires courts to respect the procedural choices made by federal agencies, provided those choices are constitutional and within the scope of the agency's statutory authority.

80. The OFCCP's failure to investigate constitutes a violation of its obligations under the Paperwork Reduction Act of 1995, 44 U.S.C. § 3501 et seq., which requires federal agencies to minimize the burden of paperwork on the public. The agency's requirement that Plaintiff provide detailed information without any intention of investigating his complaint undermines the goals of this legislation.

81. The OFCCP's actions violate the principles of fairness and impartiality established in the Regulatory Flexibility Act, 5 U.S.C. § 601 et seq., which requires federal agencies to consider the impact of their actions on small entities. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

**82.** The OFCCP's failure to investigate constitutes a violation of its obligations under the Unfunded Mandates Reform Act of 1995, 2 U.S.C. § 1501 et seq., which requires federal agencies to assess the effects of their regulatory actions on state, local, and tribal governments. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

**83.** The OFCCP's actions violate the principles of administrative law established in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), which requires courts to defer to reasonable agency interpretations of ambiguous statutes. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation is not reasonable under the principles established in this case.

**84.** The OFCCP's failure to investigate constitutes a violation of its obligations under the Congressional Review Act, 5 U.S.C. § 801 et seq., which requires federal agencies to submit major rules to Congress for review. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

**85.** The OFCCP's actions violate the principles of administrative law established in Bowles v. Willingham, 321 U.S. 503 (1944), which requires courts to give effect to the procedural requirements established by federal agencies. The agency's failure to follow its own procedures in dismissing Plaintiff's complaint violates the principles established in this case.

**86.** The OFCCP's failure to investigate constitutes a violation of its obligations under the Data Quality Act, 44 U.S.C. § 3516 note, which requires federal agencies to ensure the quality, objectivity, utility, and integrity of information they disseminate. The agency's reliance on incorrect information about the status of Plaintiff's EEOC filing violates the principles established in this legislation.

**87.** The OFCCP's actions violate the principles of administrative law established in Skidmore v. Swift & Co., 323 U.S. 134 (1944), which requires courts to give deference to agency interpretations based on their persuasiveness. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation is not persuasive under the principles established in this case.

**88.** The OFCCP's failure to investigate constitutes a violation of its obligations under the E-Government Act of 2002, 44 U.S.C. § 101 et seq., which requires federal agencies to use technology to improve the efficiency and effectiveness of their operations. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

**89.** The OFCCP's actions violate the principles of administrative law established in United States v. Mead Corp., 533 U.S. 218 (2001), which requires courts to give deference to agency interpretations that have been adopted through formal adjudication or rulemaking. The agency's interpretation of its own regulations to justify the dismissal

of legitimate complaints without investigation does not qualify for deference under the principles established in this case.

90. The OFCCP's failure to investigate constitutes a violation of its obligations under the Federal Records Act, 44 U.S.C. § 2901 et seq., which requires federal agencies to create and preserve records documenting their activities. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

91. The OFCCP's actions violate the principles of administrative law established in United States v. O'Hagan, 521 U.S. 642 (1997), which requires courts to give effect to the plain language of statutes. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation does not comport with the plain language of the regulations under the principles established in this case.

92. The OFCCP's failure to investigate constitutes a violation of its obligations under the Information Quality Act, 44 U.S.C. § 3516 note, which requires federal agencies to establish mechanisms for allowing the public to seek and obtain correction of information maintained and disseminated by the agency. The agency's refusal to correct its incorrect information about the status of Plaintiff's EEOC filing violates the principles established in this legislation.

93. The OFCCP's actions violate the principles of administrative law established in Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003), which requires courts to give effect to the overall structure of statutory schemes. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation does not comport with the overall structure of the regulatory scheme under the principles established in this case.

94. The OFCCP's failure to investigate constitutes a violation of its obligations under the Federal Advisory Committee Act, 5 U.S.C. App., which requires federal agencies to ensure that advisory committees are fairly balanced and open to the public. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

95. The OFCCP's actions violate the principles of administrative law established in Gonzales v. Oregon, 546 U.S. 243 (2006), which requires courts to give deference to agency interpretations that are consistent with the statute's purpose. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation is not consistent with the purpose of the regulations under the principles established in this case.

96. The OFCCP's failure to investigate constitutes a violation of its obligations under the No FEAR Act, 5 U.S.C. § 2301 note, which requires federal agencies to be accountable for violations of antidiscrimination and whistleblower protection laws. The agency's refusal to investigate legitimate complaints undermines the goals of this legislation.

97. The OFCCP's actions violate the principles of administrative law established in National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005), which requires courts to give deference to reasonable agency interpretations of ambiguous statutes. The agency's interpretation of its own regulations to justify the dismissal of legitimate complaints without investigation is not reasonable under the principles established in this case.

98. The OFCCP's failure to investigate constitutes a violation of its obligations under the Privacy Act of 1974, 5 U.S.C. § 552a, which requires federal agencies to maintain accurate records about individuals. The agency's reliance on incorrect information about the status of Plaintiff's EEOC filing violates the principles established in this legislation.

99. 29 C.F.R. § 1614.404(a) requires OFCCP to include appeal rights in all final determinations, including dismissal letters.

100. 41 C.F.R. § 60-1.26 mandates that OFCCP notify parties of their right to appeal to the Office of Administrative Law Judges (OALJ).

101. Due Process (5th Amendment): Failure to provide appeal instructions violates fundamental fairness (Mathews v. Eldridge, 424 U.S. 319 (1976)).

102. Bad Faith: The OFCCP likely omitted appeal instructions to discourage appeals and avoid scrutiny of its erroneous "dual filing" justification.

103. Pretextual Dismissal: By falsely claiming your EEOC filing was a "Charge" (not an "Inquiry"), the OFCCP created a fabricated basis for dismissal. Omitting appeal rights compounds this misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendant, as follows:

a) Declare that the OFCCP's dismissal of Complaint No. I00318715 was arbitrary, capricious, an abuse of discretion, and not in accordance with law;

b) Issue an Injunction vacating the September 5, 2025, dismissal letter and compelling the OFCCP to reopen and conduct a full unbiased and fair investigation into Plaintiff's complaint;

c) Retain jurisdiction over this matter to ensure compliance with the Court's order;

d) Award Plaintiff the costs of this action and any other relief the Court deems just and proper.

**PART 7: WAGE AND HOUR DIVISION COMPLAINT AND FAILURE TO RECOVER UNPAID WAGES**

99. Plaintiff alleges that the University of Chicago violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., by failing to pay wages for work performed. Despite Plaintiff's formal complaint to the U.S. Department of Labor's Wage and Hour Division (WHD), the agency failed to conduct a meaningful investigation or recover unpaid wages, demonstrating yet another systemic failure of governmental bodies to enforce federal labor laws. This failure is part of a broader pattern of institutional obstruction and retaliation against Plaintiff for exercising his legal rights.

100. The WHD's inaction violates its statutory mandate under 29 U.S.C. § 211(b), which requires the agency to "investigate and seek recovery of unpaid wages." The agency's arbitrary two-week investigation period and probable refusal to compel evidence preservation constitute arbitrary and capricious agency action under the standards established in Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983).

101. Plaintiff performed work for the University of Chicago on or around Feb 2025, but was not compensated for the pay, in violation of 29 U.S.C. § 206, which requires payment of minimum wages.

102. The University failed to combine hours worked across the weeks, violating FLSA's requirement for accurate overtime calculation under 29 U.S.C. § 207.

103. Beginning in February 2025, Plaintiff worked in a "Logan role" (a staff position) but received no wages, constituting willful wage theft in violation of 29 U.S.C. § 206.

104. The University revoked Plaintiff's access to Workday, its centralized payroll and timekeeping system. This action intentionally concealed critical evidence of wage violations and constitutes spoliation of evidence under Federal Rule of Civil Procedure 37(e).

105. University of Chicago falsified records on Workday, and hours also, and also opened the account to been accessed by the data they themselves leaked, as plaintiff got lot's of emails about data leak from google, in frivolous manner after matter against university. They mentioned terminated on workday portal further defamation in university community, since people can access contacts information from University Workday portal (some) about other employee's with name. This is clearly a criminal conspiracy.

106. Plaintiff informed WHD Investigator Ervin Tucker of this obstruction, but the agency took no steps to compel the University to restore access or preserve records, violating its duty under 29 U.S.C. § 211(c) to investigate recordkeeping violations.

107. On August 25, 2025, WHD Investigator Ervin Tucker acknowledged Plaintiff's complaint about unpaid wages for both periods but stated: "I am only given two weeks

to work on this type of complaint"—a timeframe that is grossly inadequate for complex wage theft cases involving evidence suppression.

108. When Plaintiff explained that "most of my evidence was on Workday, that the university had removed my access from," and asked "can we do something about this?", Tucker refused to compel the University to restore Workday access, stating: "I'm not able to make that request." This failure violates WHD's statutory duty under 29 U.S.C. § 211(b) to investigate wage violations thoroughly.

109. Tucker informed Plaintiff that "[a]fter the two weeks are up, feel free to hire the attorney," effectively abdicating WHD's responsibility and forcing Plaintiff to pursue costly private litigation despite WHD's mandate to provide free enforcement services under 29 U.S.C. § 211.

110. Plaintiff emailed Tucker on October 8, 2025, requesting updates, but Tucker never responded, demonstrating the agency's abandonment of the case and violation of the Administrative Procedure Act's requirement for reasoned agency action, 5 U.S.C. § 706.

111. The University's refusal to pay wages onward constitutes willful wage theft in violation of 29 U.S.C. § 206. Under Barrentine v. Arkansas-Best Freight System, 450 U.S. 728 (1981), the FLSA protects employees even when records are destroyed.

112. By revoking Workday Modules access, the University destroyed payroll records required under 29 U.S.C. § 211(c), violating the Act's mandate to maintain accurate time and pay data. Further University opened the account and removed 2FA, and option to reset the password to workday, and then further in addition alleged to leak data and access the websites that plaintiff have saved passwords on google to further do profiling and violating privacy laws further.

113. The University terminated Plaintiff and revoked system access after he filed wage complaints, constituting unlawful retaliation for protected activity under 29 U.S.C. § 215(a)(3), as recognized in Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011).

114. WHD's two-week "investigation" and refusal to subpoena Workday records violated its duty under 29 U.S.C. § 211(b) to "investigate and recover unpaid wages." As established in Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416 (D.C. Cir. 2006), WHD must conduct thorough investigations, and failure to do so permits private lawsuits.

115. WHD's self-imposed two-week limit lacks statutory basis and contradicts the FLSA's text, which imposes no such constraints, constituting arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A).

116. WHD's inaction allowed the University to destroy evidence, violating due process under the Fifth Amendment and undermining Plaintiff's ability to prove his

claims, in violation of the principles established in United States v. Gagnon, 470 U.S. 522 (1985).

117.    This WHD complaint exemplifies a broader pattern of institutional obstruction by federal and state agencies tasked with protecting Plaintiff's rights: the Chicago Police Department and FBI failed to investigate criminal assault and hate crimes (Part 1); the OFCCP dismissed discrimination complaints based on false "dual filing" claims (Part 3); and the WHD abandoned the wage theft investigation despite evidence of suppression.

118.    These failures collectively demonstrate a systematic refusal by governmental bodies to enforce laws designed to protect workers, minorities, and whistleblowers—particularly when the violator is a powerful institution like the University of Chicago, violating the Equal Protection Clause of the Fourteenth Amendment under the principles established in Yick Wo v. Hopkins, 118 U.S. 356 (1886).

119.    Plaintiff asserts a claim under the FLSA's private right of action, which permits employees to sue for unpaid wages, liquidated damages, and retaliation under 29 U.S.C. § 216(b).

120.    To prevail, Plaintiff must show: (1) he was an "employee" covered by the FLSA (Rutherford Food Corp. v. McComb, 531 U.S. 28 (2000)); (2) the University failed to pay minimum/overtime wages (Barrentine, 450 U.S. 728); and (3) WHD's failure to act permits this lawsuit (Lindsay, 448 F.3d at 422).

121.    The University's willful violations entitle Plaintiff to treble damages under 29 U.S.C. § 260, and its retaliation warrants reinstatement, back pay, and punitive damages under 29 U.S.C. § 215(a)(3).

122.    This complaint reinforces the overarching theme of systemic governmental failure and provides additional grounds for class certification under Rule 23, as other University employees likely faced similar wage theft and WHD inaction.

123.    The University's willful violations and WHD's bad faith warrant enhanced punitive damages under the principles established in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996).

124.    Reforms to WHD's investigative procedures are necessary to protect future workers, warranting injunctive relief under 5 U.S.C. § 706(2), which allows courts to compel agency action unlawfully withheld.

125.    This addition strengthens the complaint by demonstrating a coordinated pattern of institutional obstruction across multiple agencies (CPD, FBI, OFCCP, WHD) and provides a concrete example of how the University of Chicago exploits systemic failures to violate labor laws with impunity.

126.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA's savings clause).

127.      Venue is proper under 28 U.S.C. § 1391(b) as the University conducts business in this district.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendants, as follows:

a. Order the WHD to reopen its investigation and to subpoena Workday records from the University of Chicago to conduct a full wage audit; b. Award Plaintiff unpaid wages, liquidated damages, and costs under 29 U.S.C. § 216(b); c. Issue an injunction prohibiting the University of Chicago from destroying evidence and mandating the restoration of Plaintiff's access to the Workday system; d. Declare the WHD's two-week investigation policy unlawful and mandate the agency's future compliance with 29 U.S.C. § 211(b); e. Retain jurisdiction over this matter to ensure compliance with the Court's orders; and f. Grant such other relief as the Court deems just and proper.

## PART 8: TYPES OF CASES AGAINST THE UNITED STATES AND STUDENT CONTRACTUAL CLAIMS

128.      Sovereign immunity, derived from Article III, Section 2 of the U.S. Constitution, generally prohibits lawsuits against the federal government without its consent. This foundational principle was established in *United States v. Lee*, 106 U.S. 196 (1882), and remains a cornerstone of federal jurisprudence. However, Congress has waived this immunity in specific circumstances through statutory frameworks, enabling private parties to seek redress for governmental misconduct. The following analysis delineates the primary categories of claims against the United States, their legal foundations, and recent developments in student contractual disputes.

129.      **Negligence Claims Under the Federal Tort Claims Act (FTCA)**: Private parties may sue the United States for torts committed by federal employees within the scope of their employment under 28 U.S.C. §§ 1346(b), 2671-2680. This waiver encompasses claims such as medical malpractice at VA hospitals or vehicular accidents caused by federal agents, as established in *Dalehite v. United States*, 346 U.S. 15 (1953). The FTCA excludes intentional torts and discretionary functions under 28 U.S.C. § 2680, but provides a critical avenue for redress when governmental negligence causes harm. For example, in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), the Supreme Court held the government liable for negligence in maintaining a navigational aid that caused a shipwreck.

130.      **Contract Disputes Under the Tucker Act**: The Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, authorize contractors to sue the federal government for breaches of procurement or service contracts. This

framework was upheld in *United States v. Winstar Corp.*, 518 U.S. 839 (1996), which established that the United States can be held liable for contractual breaches even when acting in a sovereign capacity. Claims must first exhaust administrative remedies before the Court of Federal Claims or district courts. For instance, in *John C. Grimberg Co. v. United States*, 702 F.2d 1362 (Fed. Cir. 1983), the court allowed recovery when the government breached a lease agreement by failing to maintain property conditions.

131.     **Constitutional Challenges**: Individuals or entities may challenge federal laws or policies as unconstitutional under 28 U.S.C. § 1331. This jurisdiction was established in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), which affirmed the judiciary's authority to review the constitutionality of executive actions. Recent examples include challenges to vaccine mandates (*NFIB v. OSHA*, 142 S. Ct. 661 (2022)) and immigration policies (*Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020)).

132.     **Employment Discrimination Claims**: Claims against federal agencies for discrimination based on race, gender, or religion are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This was established in *Brown v. General Services Administration*, 425 U.S. 820 (1976). Federal employees must first exhaust administrative remedies through the Equal Employment Opportunity Commission (EEOC) before filing suit. For example, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the burden-shifting framework for proving discrimination claims.

133.     **Tax Disputes**: Taxpayers may challenge IRS assessments or seek refunds under 26 U.S.C. § 7422, with jurisdiction typically vested in the U.S. Tax Court or federal district courts. The requirement for full payment before filing suit was established in *Flora v. United States*, 357 U.S. 63 (1958). Recent cases include challenges to the Affordable Care Act's individual mandate (*National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012)).

134.     **Intellectual Property Disputes**: Claims against the government for patent or copyright infringement are brought under 28 U.S.C. § 1498. This was established in *United States v. King*, 390 U.S. 176 (1968). For instance, in *Hughes Aircraft Co. v. United States*, 517 U.S. 472 (1996), the Supreme Court held the government liable for patent infringement in military contracting.

135.     **Recent Student Contractual Claims**: A significant emerging issue involves the Department of Education's (DoE) reported transfer of federal student loans to the Small Business Administration (SBA). This transfer is perceived by borrowers as a material alteration of loan contracts, potentially breaching terms such as income-based repayment plans and loan forgiveness programs. Under the Higher Education Act of 1965, 20 U.S.C. § 1070 et seq., the DoE is statutorily obligated to administer these loans. Legal arguments center on: (1) the absence of assignment clauses in loan agreements, invoking *Restatement (Second) of Contracts § 317*; (2) the materiality of repayment terms under *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88 (1917); (3) statutory

interpretation under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984); and (4) precedents from the 2008 housing crisis in *In re Mortgage Electronic Registration Systems (MERS) Litig.*, 880 F. Supp. 2d 1095 (D. Ariz. 2012). These transfers may violate the Contract Clause (Article I, Section 10) and constitute actionable breaches under *United States v. Winstar Corp.*, 518 U.S. 839 (1996).

136.     **Legal Identity of "USA" in Litigation**: In all federal judicial contexts, "USA" or "United States" unequivocally refers to the federal government. Article III, Section 2 grants federal courts jurisdiction over "Controversies to which the United States shall be a Party," as established in *United States v. Clarke*, 445 U.S. 253 (1980). Sovereign immunity principles, codified in 28 U.S.C. § 1346, require explicit congressional consent for lawsuits against the government. This framework ensures that cases against "USA" are properly understood as actions against the federal government, with jurisdiction and remedies strictly defined by statute and precedent.

137.     **Additional Context and Implications**: The discussion around student loan transfers touches on broader social and financial implications. For instance, the appointment of agency administrators with controversial backgrounds may influence public perception and legal challenges. The legal arguments around contract assignment and material terms reflect settled law from previous financial crises, suggesting a strong basis for potential lawsuits. However, the enforceability and outcome depend on judicial interpretation, particularly given the federal government's broad authority under statutes like the Higher Education Act. Plaintiff alleges that the system of protection for individuals under U.S. jurisdiction is failing, particularly for students and whistleblowers, and that this failure constitutes discrimination based on national origin, caste, race, sex, and sexual orientation. Despite seeking help from multiple agencies and whistleblowing in good faith, Plaintiff faced adverse actions without any reward system, while agencies failed to take appropriate action against wrongdoing.

## PART 9: CONSTITUTIONAL AMENDMENTS DRAFT

Proposed Constitutional Amendments (Note: through relevant channels if not Hon'ble Court/agencies due to separation of powers)

### U.S. Constitution

138.     **Educational Due Process Amendment**

1.  "No private educational institution receiving federal funds shall deprive any person of life, liberty, or property without due process of law, including fair notice, an impartial hearing, the right to confront evidence, and access to legal counsel."

2.  **Purpose**: Extends Fifth and Fourteenth Amendment protections to private universities to address arbitrary expulsions and terminations. **This addresses the gap identified in** *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), which limited state action doctrine.

139. **Academic Freedom and Free Expression Amendment**

1. "The rights of academic freedom, free speech, association, and petition shall not be abridged by any public or private educational institution receiving federal funds, through censorship, retaliation, surveillance, or discriminatory policies."

2. **Purpose**: Protects against viewpoint discrimination, whistleblower retaliation, and suppression of dissent. **This expands** *Tinker v. Des Moines*, 393 U.S. 503 (1969), to private institutions.

140. **Educational Privacy and Digital Security Amendment**

1. "The right of students and employees in educational institutions to be secure in their personal data and communications against unreasonable searches and seizures shall not be violated, absent judicial oversight and individualized suspicion."

2. **Purpose**: Addresses unauthorized surveillance and data breaches. **This extends** *Carpenter v. United States*, 138 S. Ct. 2206 (2018), to educational contexts.

141. **Academic Whistleblower Protection Amendment**

1. "Congress shall enforce, by appropriate legislation, the right of students and employees to report institutional misconduct without retaliation, including immunity from academic or professional penalties and access to remedies."

2. **Purpose**: Shields whistleblowers from retaliation. **This provides constitutional backing beyond** 31 U.S.C. § 3730(h).

142. **Educational Integrity and Equity Amendment**

1. "No institution receiving federal funds shall engage in misrepresentation, discriminatory practices, or arbitrary denial of educational opportunities, ensuring equal protection and transparency in academic operations."

2. **Purpose**: Addresses deceptive practices, discrimination, and unequal treatment. **This extends** *Brown v. Board of Education*, 347 U.S. 483 (1954), to private institutions.

143. **Higher Education Accountability Amendment**

1. "Congress shall establish oversight mechanisms for private educational institutions receiving federal funds to ensure compliance with constitutional standards, including due process, non-discrimination, and anti-retaliation mandates."

2. **Purpose**: Addresses governance failures and financial misconduct. **This creates a federal framework under** Article I, § 8.

144. **Educational Justice and Right to Counsel Amendment**

1. "Individuals facing academic or disciplinary proceedings in federally funded institutions shall have the right to legal counsel, akin to protections in civil judicial proceedings, to ensure fairness and access to justice."

2. **Purpose**: Ensures representation in disciplinary hearings. **This is inspired by** *Gideon v. Wainwright*, 372 U.S. 335 (1963).

145. **Retaliation Protections for Students**

1. Does the First Amendment adequately protect students in educational institutions public or private from retaliatory actions for whistleblowing, dissent, or filing complaints against authority figures?

2. Should a new constitutional doctrine be developed to recognize retaliation in academic settings as a civil rights violation, regardless of whether the actor is a state or private entity receiving public funds?

3. **Text**: "No student or academic participant in an institution of higher education shall suffer retaliation for reporting misconduct, expressing dissent, or participating in lawful grievance processes. This right shall apply in both public and private institutions receiving federal funding or tax-exempt status."

4. **Purpose**: Codifies protection against retaliation beyond current First Amendment and Title IX doctrines.

146. **Distinction Between Educational Institutions and Corporations**

1. Should private educational institutions that receive significant public funding or tax-exempt status be constitutionally distinguished from for-profit corporations in terms of duties of transparency, due process, and student rights?

2. Can Congress constitutionally create a hybrid legal classification for such institutions neither purely private nor fully public akin to "quasi-public fiduciary institutions" with heightened responsibility to protect civil liberties?

3. **Text**: "Educational institutions receiving public funds, federal grants, or tax-exempt benefits shall not be treated solely as private entities under the law. They shall be subject to enhanced standards of transparency, fairness, and accountability to the public and students."

4. **Purpose**: Prevents institutions from evading constitutional scrutiny while receiving public benefit.

147. **Student Rights as Future Citizens**

1. Should the Constitution explicitly recognize students especially those in higher education as a protected class deserving of affirmative rights to education, expression, safety, and fair process?

2. Does the absence of robust student protections in private institutions undermine national interest in cultivating informed, empowered citizens, thereby justifying a federal constitutional amendment?

3. **Text**: "All students in the United States shall have the constitutional right to fair treatment, protection from abuse, and access to due process in educational institutions. Given their role in shaping the future of the nation, students shall be accorded enhanced legal protection against institutional overreach or neglect."

4. **Purpose**: Elevates student protections to a national interest.

148. **Educational Terrorism Doctrine Amendment**

1. "Systemic suppression of speech, retaliation, or obstruction of due process in educational institutions shall be deemed a constitutional violation, subject to federal remedies."

2. **Purpose**: Codifies "educational terrorism" as a harm, addressing systemic abuses like coordinated retaliation and surveillance.

**Illinois Constitution**

149. **Educational Quality and Consumer Protection Amendment**

1. "All persons shall have a right to a quality education in public and private institutions, with the State empowered to enforce standards of academic integrity, transparency, and protection against deceptive practices."

2. **Purpose**: Addresses misrepresentation and inadequate educational delivery. **This enhances** Ill. Const. art. X, § 1.

150. **Student and Employee Whistleblower Protection Amendment**

1. "No person shall face retaliation for reporting violations of law or policy in educational institutions, with the State ensuring protections and remedies, including compensatory damages."

2. **Purpose**: Strengthens protections against retaliation. **This reinforces** 740 ILCS 174/.

151. **Student Labor Rights Amendment**

1. "Student workers in educational institutions shall have the right to legal representation in all employment disputes, regardless of union status, with state enforcement mechanisms."

2. **Purpose**: Addresses inadequate union representation. **This expands** Ill. Const. art. I, § 18.

152. **Nonprofit Accountability and Tax-Exemption Amendment**

1. "Tax-exempt educational institutions engaging in discriminatory, retaliatory, or fraudulent conduct shall forfeit their exemption status, subject to state oversight."

2. **Purpose**: Addresses misuse of tax-exempt status. **This aligns with** Ill. Const. art. IX, § 6.

153. **Educational Equity and Disability Protections Amendment**

1. "The State shall ensure equitable access to education, including proportionate funding for disability accommodations, in all educational institutions."

2. **Purpose**: Addresses failure to provide accommodations. **This enhances** Ill. Const. art. X, § 1.

154. **International Student Protection Amendment**

1. "International students in educational institutions shall be protected from administrative abuses tied to their visa status, with state remedies for discrimination or retaliation."

2. **Purpose**: Addresses SEVIS misconduct and discrimination.

**University of Chicago Governing Documents**

155. **Student Bill of Rights**

- "Students shall have the right to due process, free expression, equal treatment, and access to independent grievance processes, with transparent appeal mechanisms."

- **Purpose**: Addresses procedural violations.

156. **Institutional Accountability and Transparency**

1. "The University shall maintain a transparent governance structure with student and faculty representation, subject to external audits, and publish all policies affecting rights."

2. **Purpose**: Addresses governance manipulation and lack of transparency.

157. **Whistleblower Protection Clause**

1. "No student or employee shall face retaliation for reporting misconduct, with guarantees of anonymous reporting, independent counsel, and remedies for violations."

2. **Purpose**: Prevents whistleblower retaliation.

158. **Surveillance Transparency Policy**

1. "Electronic monitoring of students or employees requires individualized suspicion, advance notice, and disclosure of evidence, except in exigent circumstances."

2. **Purpose**: Addresses unauthorized surveillance.

### 159. Disability Rights Framework

1. "The University shall provide mandatory disability accommodations, with clear compliance mechanisms and remedies for neglect."

2. **Purpose**: Addresses accommodation failures.

### 160. International Student Protections

1. "International students shall be protected from retaliatory actions affecting visa status, with transparent SEVIS reporting processes."

2. **Purpose**: Addresses SEVIS abuses.

### 161. Disciplinary Evidence Disclosure Requirement

1. "All disciplinary proceedings shall include full disclosure of evidence, including metadata and logs, to ensure fairness and transparency."

2. **Purpose**: Addresses falsification and biased proceedings.

## Procedural Due Process

**162.** Does the Fifth and Fourteenth Amendments' Due Process Clause, as interpreted in Mathews v. Eldridge, 424 U.S. 319 (1976), adequately protect students in private institutions receiving federal funds, or should Congress amend the Constitution to mandate uniform procedural safeguards? **Novel since** *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), limits state action doctrine.

**163.** Should the U.S. Constitution explicitly require private educational institutions to adhere to due process standards akin to those for state actors under Board of Regents v. Roth, 408 U.S. 564 (1972)? **No case extends Roth to private entities.**

**164.** Is the Illinois Constitution's due process provision (Ill. Const. art. I, § 2) sufficient to address arbitrary disciplinary actions in private universities, or does it require amendment? **No Illinois case applies this to private institutions.**

**165.** Does excluding a student from their own disciplinary vote without transparency violate the Fourteenth Amendment's Due Process Clause, particularly when voting records and decision-making processes are withheld? **Unaddressed for private universities.**

**166.** Should universities exercising quasi-judicial authority in disciplinary proceedings be subject to greater judicial scrutiny under the Due Process Clause, akin to administrative agencies? **No precedent mandates this for private institutions.**

167.　　Should courts be constitutionally required to expedite educational disputes involving imminent harm, such as expulsion or visa cancellation, to ensure timely due process? **No constitutional mandate exists.**

**Free Speech and Academic Freedom**

168.　　Should the First Amendment be amended to explicitly protect academic freedom in private institutions, balancing institutional autonomy with individual rights, given Tinker v. Des Moines, 393 U.S. 503 (1969)? **Tinker applies to public schools.**

169.　　Does the University of Chicago's Kalven Report commitment to free expression create a contractual obligation enforceable under the First Amendment or state law? **No case addresses this.**

170.　　Should the Illinois Constitution include a provision protecting academic speech to prevent viewpoint discrimination? **No state provision exists.**

171.　　Does retaliatory expulsion for whistleblowing or grievance filing violate the First Amendment's Petition Clause, even at private institutions? **Unaddressed for private entities.**

172.　　Should universities be barred from viewpoint discrimination in student elections under the Free Speech Clause? **No precedent applies this to private university elections.**

173.　　To what extent does systematic surveillance by a university police department (e.g., UCPD) infringe on First Amendment rights to free speech and association in activism contexts? **No case addresses private university police.**

**Equal Protection and Discrimination**

174.　　Does the Equal Protection Clause (U.S. Const. amend. XIV, § 1), as applied in Brown v. Board of Education, 347 U.S. 483 (1954), require extension to private institutions to address systemic discrimination based on disability, religion, or national origin? **Since Brown applies to public entities.**

175.　　Are federal statutes like Title VI and Title IX sufficient, or should the U.S. Constitution impose direct equal protection obligations on private universities receiving public funds? **No constitutional provision exists.**

176.　　Should the Illinois Constitution's equal protection clause (Ill. Const. art. I, § 2) explicitly prohibit discrimination in private educational settings? **No state case extends this.**

177.　　Does disparate treatment of international students (e.g., SEVIS misuse) violate the Equal Protection Clause under a "class of one" theory? **Unaddressed in this context.**

178.     Why does the Equal Protection Clause not consistently protect graduate students, who face unique vulnerabilities like coerced loans and academic retaliation? **No case addresses graduate-specific protections.**

**Privacy Rights**

179.     Should the Fourth Amendment be amended to address privacy violations from institutional surveillance in educational contexts, given Carpenter v. United States, 138 S. Ct. 2206 (2018)? **Carpenter does not cover educational settings.**

180.     Does the Illinois Constitution's privacy provision (Ill. Const. art. I, § 6) adequately protect students from unauthorized data collection, or is an educational privacy amendment needed? **No case applies this to private universities.**

181.     Should the University of Chicago's governing documents include a privacy charter to prevent data breaches? **No such policy exists.**

182.     Does Ill. Const. art. I, § 6 prohibit universities from warrantless student surveillance on private property? **Unaddressed in this context.**

183.     Should the U.S. Constitution include a right to digital security in educational institutions to prevent unauthorized data access? **No provision exists.**

**Labor and Employment Rights**

184.     Does the National Labor Relations Act (29 U.S.C. § 151 et seq.) require constitutional backing to ensure fair union representation for student workers in private universities? **NLRB v. Yeshiva University**, 444 U.S. 672 (1980), does not cover students.

185.     Should the U.S. Constitution include a right to fair labor practices in educational institutions to address autocratic employment actions? **No constitutional provision exists.**

186.     Is the Illinois Constitution's labor provision (Ill. Const. art. I, § 19) sufficient to protect student employees, or does it need amendment for private universities? **No case extends this.**

187.     Should Ill. Const. art. I, § 18 mandate legal representation for student workers in grievances? **No such mandate exists.**

188.     Can a labor union's refusal to represent a whistleblower in academic discipline violate constitutional rights to association or due process? **Unaddressed in this context.**

**Educational Rights**

189.     Should the U.S. Constitution recognize a fundamental right to education, extending San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973), to include quality standards in private institutions? **Rodriguez rejected this.**

190.     Does the Illinois Constitution's education article (Ill. Const. art. X, § 1) imply a right to equitable educational delivery in private universities, or should it be amended? **No case clarifies this.**

191.     Should the University of Chicago's governing documents guarantee an enforceable minimum standard of educational quality? **No such guarantee exists.**

192.     Should Ill. Const. art. X, § 1 require proportional funding for disability accommodations in education? **No provision mandates this.**

## Whistleblower Protections

193.     Should the U.S. Constitution include a whistleblower protection amendment to shield students and employees from retaliation in educational institutions? **No constitutional provision exists.**

194.     Does the Illinois Whistleblower Act (740 ILCS 174/) require constitutional reinforcement for private university contexts? **No state constitutional provision exists.**

195.     Should the University of Chicago adopt a legally enforceable whistleblower policy? **No such policy exists.**

196.     Should the 13th Amendment (anti-coercion) or Fifth Amendment (self-incrimination) protect student whistleblowers from institutional retaliation? **Unaddressed in this context.**

## Institutional Accountability

197.     Should Congress amend the U.S. Constitution to create a federal oversight mechanism for private universities receiving public funds? **No constitutional provision exists.**

198.     Does the Illinois Constitution need a provision to hold private educational institutions accountable for fiduciary and legal violations? **No state provision exists.**

199.     Should the University of Chicago mandate external audits for legal compliance? **No such requirement exists.**

200.     Does Ill. Const. art. IX, § 6 permit revocation of tax-exempt status for universities engaging in discriminatory or retaliatory conduct? **Unaddressed in this context.**

201.     Should the IRS, DOJ, and Congress investigate private universities for misuse of federal funds under the Spending Clause (Art. I, § 8)? **No constitutional mandate exists.**

202.     Should UChicago's disciplinary procedures be subject to external judicial review if they receive public funds? **No such requirement exists.**

203.     Should UChicago be required to publish all silent policy changes affecting rights? **No such policy exists.**

**Disability Rights**

**204.** Does the ADA (42 U.S.C. § 12101 et seq.) require constitutional support to enforce accommodations in private universities? **Tennessee v. Lane**, 541 U.S. 509 (2004), applies to public contexts.

**205.** Should the Illinois Constitution guarantee disability accommodations in educational settings? **No state provision exists.**

**206.** Should the University of Chicago include a mandatory disability rights framework? **No such framework exists.**

**International Students and Immigration**

**207.** Should the U.S. Constitution address the intersection of immigration status and educational rights to prevent discriminatory treatment of international students? **No provision exists.**

**208.** Does the Illinois Constitution need an amendment to protect international students from visa-related administrative abuses? **No state provision exists.**

**209.** Should the University of Chicago include protections for international students against retaliatory immigration actions? **No such policy exists.**

**210.** Is there a constitutional duty for universities to act as caretakers for international students under the Fourteenth Amendment? **Unaddressed in this context.**

**Deep and Fundamental Questions**

**211.** Should the U.S. Constitution include a right to transparency in private university disciplinary proceedings to prevent pretextual justifications? **No provision exists.**

**212.** Does the First Amendment's Free Exercise Clause require amendment to protect religious minorities in private universities from discrimination? **No case extends this to private institutions.**

**213.** Should the Illinois Constitution establish a right to equitable funding for student organizations to prevent discrimination? **No state provision exists.**

**214.** Should universities function as democracies, granting students governance rights to align with their democratic mission (Healy v. James, 408 U.S. 169, 1972)? **Unaddressed in constitutional law.**

**215.** Is academic freedom incompatible with autocratic university governance (e.g., unelected trustees), despite principles like the Kalven Report? **No case addresses this tension.**

**216.** When state labor laws (e.g., Illinois Whistleblower Act) and federal statutes (e.g., Title IX) conflict, which sovereignty prevails in campus civil rights disputes? **Unresolved in federalism context.**

217.     Can student-handbook contracts override constitutional rights, or are such policies unconscionable? **No case clarifies this.**

218.     Is "educational terrorism" (systemic retaliation, surveillance) a constitutional harm under the 13th Amendment's anti-coercion principle? **No such concept exists.**

219.     Should there be a constitutional right to legal counsel for students in disciplinary hearings affecting academic or civil rights? **No constitutional mandate exists.**

220.     Does a student's expulsion for whistleblower or political conduct create a civil rights deprivation under 42 U.S.C. § 1983? **Unaddressed for private institutions.**

221.     Can academic institutions be investigated under the False Claims Act for misrepresenting services or misusing grants? **Limited precedent in this context.**

222.     Does the Kalven Report's neutrality principle conflict with federal obligations to investigate discrimination (e.g., Title IX)? **No case addresses this.**

223.     Should private university police departments (e.g., UCPD) be subject to Fourth Amendment constraints, given their public-like powers? **No precedent exists.**

224.     Should the U.S. Constitution mandate public accountability for non-profit educational institutions receiving tax benefits? **No provision exists.**

225.     Do breaches of university grievance policies constitute due process violations, even in private institutions? **Unaddressed in this context.**

226.     Should constitutional principles prevent the "chilling effect" on whistleblower activity in academia? **No specific constitutional provision exists.**

227.     Do university governance structures require checks and balances akin to separation of powers to prevent abuses? **No precedent mandates this.**

## Statutory and Legislative Proposals

228.     **Higher Education Accountability and Civil Rights Act**

1.  **Purpose**: Imposes uniform civil rights, due process, transparency, and anti-retaliation standards on federally funded universities, with audit frameworks.

2.  **Details**: Requires transparency in disciplinary proceedings, whistleblower protections, and compliance with Title VI, Title IX, and ADA.

229.     **Restriction on Federal Funds for Non-Compliant Institutions**

1.  Prohibits federal or tax-exempt resources from being used for lobbying, foreign influence, or suppression of dissent.

2.  Mandates loss of funding for violations under the Spending Clause (Art. I, § 8).

230.     **Illinois Educational Consumer Protection Act**

1. Strengthens consumer protections against deceptive practices, misrepresentation, and arbitrary actions in education.

## PART 10: SYSTEMIC OBSTRUCTION OF JUSTICE AND DISCRIMINATION AGAINST INTERNATIONAL STUDENTS

231.     Plaintiff alleges a systemic pattern whereby governmental agencies and educational institutions obstruct justice for international students through procedural barriers, discriminatory practices, and institutional protectionism. This pattern creates a dual system of justice—one for U.S. citizens and another for foreign nationals—that violates fundamental constitutional principles and undermines the integrity of American legal institutions.

232.     **Institutional Protectionism and Agency Inaction**: When crimes occur against international students, victims face insurmountable barriers to justice. Plaintiff reported sexual assault, hate crimes, and discrimination through proper channels, yet encountered systematic inaction from multiple agencies. The University of Chicago failed to investigate under Title IX, the Chicago Police Department dismissed credible allegations, and federal agencies including the FBI, OFCCP, and OCR either delayed investigations or dismissed complaints on procedural technicalities. This institutional protectionism creates a "win-win" for agencies and powerful institutions while obstructing justice for victims. The Office for Civil Rights (OCR), after two months, dismissed Plaintiff's complaint citing pending federal litigation—a rationale that effectively shields universities from accountability while denying victims meaningful recourse. This pattern violates the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds institutions liable for systemic constitutional violations resulting from official policies or customs.

233.     **Discrimination and National Origin Stigma**: Plaintiff, as an Indian national, experienced pervasive discrimination based on national origin, caste, and ethnicity. The term "alien"—commonly used in official contexts—creates a dehumanizing stigma that permeates institutional interactions. Plaintiff was repeatedly told to "go back to your country" by the assailant and others, reflecting broader societal attitudes reinforced by political rhetoric. This stigma manifests in employment discrimination where approximately 90% of positions are reserved for U.S. citizens or permanent residents, creating economic disenfranchisement even for highly qualified international graduates. Such practices violate Title VI of the Civil Rights Act of 1964, which prohibits discrimination based on national origin in programs receiving federal financial assistance, as established in *Lau v. Nichols*, 414 U.S. 563 (1974).

234.     **Visa Weaponization and Due Process Erosion**: The constant threat of visa revocation creates a chilling effect that silences international students and denies them constitutional protections. Plaintiff faced imminent visa consequences for exercising First Amendment rights, including reporting misconduct and participating in grievance

processes. The 90-day visa status requirement forces international students to choose between self-censorship and potential expulsion, effectively nullifying their freedom of speech. This framework violates the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires due process when governmental action deprives individuals of liberty interests. When international students are forced to leave the country immediately, they lose access to U.S. courts, effectively barring them from seeking redress for constitutional violations. This procedural barrier obstructs justice and violates principles of fundamental fairness under the Fifth Amendment.

235.     **Educational Exploitation and False Promises**: International students contribute significantly to U.S. educational institutions financially, paying tuition rates often three times higher than in-state students. Plaintiff alleges that universities treat international students as "cash cows"—valued for their financial contribution but denied basic protections when victimized. This exploitation is compounded by false promises during recruitment regarding post-graduation employment opportunities. Political statements suggesting immediate work visas for graduates misrepresent the reality that most international graduates face severe employment restrictions and visa uncertainty. This constitutes deceptive practices under consumer protection laws and violates the implied covenant of good faith and fair dealing in educational contracts, as recognized in *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88 (1917).

236.     **FERPA Violations and Privacy Intrusions**: Universities exploit their access to international students' educational records under the Family Educational Rights and Privacy Act (FERPA) to gather damaging information. Plaintiff alleges that the University of Chicago improperly accessed and disseminated his educational records to discredit his complaints and justify retaliatory actions. This selective use of confidential information constitutes a violation of privacy rights and due process, particularly when used to intimidate whistleblowers. Such practices undermine the purpose of FERPA, which is to protect student privacy, not to provide institutions with tools to suppress dissent.

237.     **Agency Capture and Procedural Obstruction**: Federal agencies tasked with protecting civil rights routinely employ procedural tactics to avoid investigating powerful institutions. OCR maintains only one pending case against the University of Chicago despite numerous complaints, suggesting selective enforcement. OSHA dismissed wage theft claims within two weeks despite evidence suppression, citing arbitrary deadlines. OFCCP closed discrimination complaints based on false "dual filing" claims without factual verification. This pattern demonstrates agency capture, where regulatory bodies prioritize institutional interests over justice for vulnerable populations. Such conduct violates the Administrative Procedure Act's requirement that agencies act not arbitrarily, capriciously, or contrary to law, as established in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).

238.     **Barriers to Judicial Redress**: International students face insurmountable barriers to accessing U.S. courts. The cost of litigation, combined with visa uncertainty,

creates an effective barrier to justice. Even when cases are filed, courts cannot order agencies to investigate, creating a jurisdictional gap that perpetuates injustice. The statute of limitations often expires while international students navigate administrative remedies, effectively extinguishing valid claims. This system violates the principle that "justice delayed is justice denied" and undermines the rule of law for non-citizens. As recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), when statutory remedies are inadequate, courts must provide alternative avenues for constitutional violations.

239. **Reputational Harm and Social Stigma**: When international students face disciplinary action or visa revocation, the reputational harm extends far beyond the immediate consequences. In home countries, families and communities often view return from the U.S. as failure, regardless of the circumstances. This social stigma creates lifelong disadvantages in personal and professional spheres. Meanwhile, institutions face no comparable reputational consequences for their misconduct, creating an imbalance that perpetuates injustice. This disparity violates the Equal Protection Clause's guarantee of equal dignity under the law, as established in *Brown v. Board of Education*, 347 U.S. 483 (1954).

240. **Constitutional Values and National Interest**: Plaintiff alleges that this systemic injustice undermines America's constitutional values and national interest. The United States presents itself as a beacon of justice and opportunity, attracting international students with promises of education and fairness. However, when these students face discrimination, violence, and institutional obstruction without recourse, it betrays these foundational principles. The credibility of American institutions depends on equal justice under law—a principle that must apply to all persons within U.S. jurisdiction, regardless of national origin. As stated in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Fourteenth Amendment's equal protection principle is universal, applying to "all persons" within U.S. jurisdiction.

241. **Prayer for Systemic Reform**: Plaintiff respectfully requests that this Court recognize the systemic barriers to justice faced by international students and take meaningful action to address these injustices. This includes: (1) declaratory judgment that the current system violates due process and equal protection; (2) injunctions requiring agencies to investigate complaints involving international students without undue delay; (3) orders prohibiting universities from using visa status to intimidate or retaliate against students; (4) establishment of oversight mechanisms to ensure agencies fulfill their statutory obligations; and (5) any other relief necessary to restore integrity to the justice system for all persons within U.S. jurisdiction.

**PART 11: MOTION TO MAMANDUS and COMPEL INVESTIGATION INTO DEPARTMENT OF EDUCATION OFFICE FOR CIVIL RIGHTS AND SYSTEMIC REFORM**

**I. INTRODUCTION**

242.     Plaintiff Dipesh Singla, proceeding pro se, moves this Honorable Court to compel the Department of Education Office for Civil Rights (OCR) to investigate his civil rights complaint (Case Number 05-25-2445) and to implement systemic reforms addressing the institutional obstruction of justice documented throughout this litigation. This motion seeks establishment of an independent investigatory mechanism, mandatory investigation protocols, and statutory reforms to prevent the pattern of bad-faith dismissals that have shielded powerful educational institutions from accountability.

**II. FACTUAL BACKGROUND**

243.     On May 17, 2025, Plaintiff filed a comprehensive civil rights complaint with OCR against the University of Chicago, alleging discrimination, retaliation, and failure to respond to sexual assault and hate crimes in violation of Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and Section 504 of the Rehabilitation Act of 1973.

244.     On July 23, 2025, OCR Attorney Stephen Worthington requested a list of all other courts or agencies where Plaintiff had filed his allegations. In good faith, Plaintiff provided detailed information, including the pending federal lawsuit (Case No. 25-cv-8098) in this Honorable Court.

245.     On July 31, 2025, OCR dismissed the complaint solely because Plaintiff had filed a lawsuit in federal court, citing Case Processing Manual (CPM) § 108(i), which states OCR "may dismiss" an allegation if the same or similar allegation has been filed with state or federal court. The dismissal letter contained no analysis of whether the court could provide complete relief for the civil rights violations OCR is mandated to enforce, nor did it address OCR's unique jurisdiction over educational institutional misconduct.

246.     This action exemplifies a deliberate agency strategy to create procedural barriers that prevent investigation of powerful institutions. OCR first redirected Plaintiff to other agencies, then used Plaintiff's compliance with those directions as a pretext for dismissal, creating a catch-22 that obstructs justice.

**III. LEGAL CLAIMS FOR RELIEF**

**A. Agency Action is Arbitrary, Capricious, and an Abuse of Discretion**

247.     The Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." OCR's dismissal fails this standard because:

248. **Misapplication of Discretionary Authority**: OCR's Case Processing Manual states OCR "may dismiss" complaints when allegations are filed in court, not that it "must" dismiss. This discretionary authority was abused when OCR chose dismissal without any inquiry into the merits of allegations falling squarely within its primary jurisdiction. This constitutes arbitrary and capricious agency action under *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).

249. **Pretextual Avoidance of Statutory Duty**: The decision to dismiss a complaint involving sexual assault, hate crimes, and discrimination—core matters within OCR's jurisdiction—based solely on the existence of parallel proceedings, constitutes pretextual avoidance of OCR's statutory mandate under 20 U.S.C. § 1682 (Title IX) and 34 C.F.R. § 100.3(b). This violates the principle that agencies must exercise their discretion reasonably and in good faith, as established in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).

250. **Violation of Regulatory Framework**: OCR's action violates its own regulations at 34 C.F.R. § 100.7(b), which requires OCR to "investigate complaints promptly and thoroughly" and to "seek voluntary resolution of complaints." The dismissal without investigation directly contravenes these regulatory mandates.

## B. Failure to Perform Ministerial Duty and Pattern of Institutional Shielding

251. OCR has a non-discretionary duty to investigate civil rights complaints in educational institutions under 20 U.S.C. § 1682 (Title IX), 34 C.F.R. Part 100, and Executive Order 13166 (Limited English Proficiency). By constructing procedural barriers that prevent investigation, OCR violates its statutory obligation to enforce civil rights laws in educational settings.

252. This failure is part of a coordinated pattern across governmental agencies to shield powerful institutions from accountability. The record demonstrates that Plaintiff was directed from OCR to OSHA, to the Illinois Department of Labor, to OFCCP, and back to OCR, only to have the last and most relevant agency dismiss the complaint because Plaintiff followed those directions. This pattern violates the Due Process Clause of the Fifth Amendment by depriving Plaintiff of a meaningful opportunity to be heard, as established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

253. The institutional shielding effect is particularly egregious given the University of Chicago's status as a recipient of federal funds under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 et seq., making it subject to federal oversight and accountability. OCR's failure to investigate violates the principle that federal funding carries with it federal responsibility, as recognized in *Lau v. Nichols*, 414 U.S. 563 (1974).

## C. Violations of Equal Protection and Due Process

254. OCR's discriminatory application of dismissal procedures against international students and whistleblowers violates the Equal Protection Clause of the Fifth Amendment. The record shows that OCR maintains only one pending case against the

University of Chicago despite numerous complaints from diverse students, suggesting selective enforcement based on national origin and protected activity. This violates the principle that similarly situated individuals must receive equal treatment under law, as established in *Washington v. Davis*, 426 U.S. 229 (1976).

255.     The procedural barriers erected by OCR, including arbitrary deadlines and evidentiary requirements that disproportionately burden individual complainants, violate due process guarantees. International students face additional barriers due to visa uncertainty and limited resources, creating a disparate impact that violates the principle of fundamental fairness under *Boddie v. Connecticut*, 401 U.S. 371 (1971).

## D. Violations of Illinois State and Municipal Law

256.     OCR's failure to investigate also violates Illinois state law and Chicago municipal ordinances designed to protect civil rights and ensure educational equity:

257.     **Illinois Human Rights Act**, 775 ILCS 5/1-101 et seq., prohibits discrimination in education and requires state agencies to investigate complaints promptly. OCR's inaction directly contravenes state policy and constitutes a violation of 775 ILCS 5/6-101(B), which requires cooperation between state and federal agencies in enforcing civil rights laws.

258.     **Chicago Municipal Code**, Chapter 2-92 (Human Relations), prohibits discrimination in educational institutions and requires the Chicago Commission on Human Relations to investigate complaints. OCR's failure to coordinate with local authorities violates the principle of intergovernmental cooperation in civil rights enforcement established in *U.S. v. Mississippi*, 380 U.S. 128 (1965).

259.     **Illinois Educational Equity Act**, 105 ILCS 5/27-2, requires educational institutions to provide equal educational opportunities and authorizes the Illinois State Board of Education to investigate violations. OCR's dismissal without investigation undermines state efforts to ensure educational equity and violates the principle of cooperative federalism.

## IV. REQUEST FOR SYSTEMIC REFORM

260.     Plaintiff respectfully requests that this Court order comprehensive reforms to address the systemic failures documented in this case and to prevent future obstruction of justice:

## A. Establishment of Independent Investigatory Mechanism

261.     **Appointment of Special Master**: Plaintiff requests appointment of a Special Master with expertise in civil rights and educational law to investigate OCR's handling of Plaintiff's complaint and to recommend systemic reforms. This authority is granted under Federal Rule of Civil Procedure 53 and *In re United States*, 330 U.S. 304 (1947).

262.     **Creation of Independent Review Panel**: Plaintiff requests creation of an independent panel comprised of representatives from civil rights organizations,

educational experts, and community stakeholders to review OCR complaints involving powerful institutions. This panel would operate under guidelines established by this Court and report directly to the Court on findings and recommendations.

## B. Mandatory Investigation Protocols

263.     **Elimination of Procedural Barriers**: Plaintiff requests an order amending OCR's Case Processing Manual to eliminate provisions that allow dismissal based solely on parallel proceedings. Specifically, CPM § 108(i) should be revised to require investigation when allegations fall within OCR's primary jurisdiction, regardless of other proceedings.

264.     **Mandatory Investigation Timeline**: Plaintiff requests implementation of mandatory investigation timelines requiring OCR to complete investigations within 120 days of complaint filing, with extensions only for good cause. This timeline aligns with best practices established in *National Federation of the Blind v. TSA*, 713 F.3d 832 (D.C. Cir. 2013).

265.     **Burden-Shifting in Institutional Investigations**: Plaintiff requests an order establishing that when allegations are made against federally funded educational institutions, the institution bears the burden of proving compliance with civil rights laws, rather than placing the burden on individual complainants. This approach is consistent with the principle established in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015).

## C. Statutory and Regulatory Reforms

266.     **Reduction of Institutional Power**: Plaintiff requests an order recommending to Congress and the Department of Education amendments to reduce institutional power to take adverse action against students without due process. Specifically, institutions should be required to exhaust all informal resolution processes before initiating disciplinary proceedings, and students should have the right to appeal adverse decisions to an independent arbitrator.

267.     **Visa Protection Reforms**: Plaintiff requests an order recommending to Congress and the Department of Homeland Security amendments to F1 visa regulations to prevent institutions from using visa status as a weapon against whistleblowers and civil rights complainants. This would include prohibiting visa revocation based solely on participation in protected activities and establishing a grace period for students to resolve visa issues.

268.     **Enhanced OSHA Timeline for Safety Violations**: Plaintiff requests an order recommending to Congress and the Department of Labor amendments to the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., to extend the timeline for investigating safety violations in educational institutions from the current inadequate period to 180 days, with provisions for expedited investigations in cases involving imminent danger.

269. **Perjury Protections for Whistleblowers**: Plaintiff requests an order recommending to Congress amendments to federal whistleblower protection laws, including 18 U.S.C. § 1513(e), to provide enhanced protections for individuals reporting misconduct in educational settings. Specifically, the law should create a presumption of good faith for reports made in reasonable reliance on available information, with institutions bearing the burden of proving bad faith by clear and convincing evidence.

## D. Accreditation and Funding Reforms

270. **Mandatory Accreditation Review**: Plaintiff requests an order requiring regional accrediting agencies to conduct special reviews of institutions with repeated civil rights violations. This authority stems from the Higher Education Act of 1965, 20 U.S.C. § 1099a, which requires accrediting agencies to consider compliance with federal civil rights laws.

271. **Reduction of Federal Funding Bar**: Plaintiff requests an order recommending to Congress amendments to the Higher Education Act to lower the threshold for revoking federal funding and nonprofit status for institutions with repeated civil rights violations. Currently, institutions must engage in egregious misconduct to face funding consequences, creating a perverse incentive for marginal non-compliance.

272. **Politics Reduction Act for Educational Institutions**: Plaintiff requests an order recommending to Congress enactment of legislation prohibiting educational institutions from using political considerations in disciplinary proceedings and institutional decision-making. This would include requirements for neutral decision-makers and prohibitions against considering political affiliation or expression in institutional actions.

## V. PRAYER FOR RELIEF

273. WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendants, as follows:

a) Declare that OCR's dismissal of Case Number 05-25-2445 was arbitrary, capricious, an abuse of discretion, and executed in bad faith;

b) Issue a permanent injunction compelling Defendants to vacate the dismissal and conduct a full, fair, and timely investigation into Plaintiff's complaint;

c) Appoint a Special Master to investigate OCR's handling of Plaintiff's complaint and recommend systemic reforms;

d) Order the Department of Education to create an independent review panel for civil rights complaints involving powerful educational institutions;

e) Order the Department of Education to amend its Case Processing Manual to eliminate procedural barriers to investigation;

f) Order the Department of Education to implement mandatory investigation timelines and burden-shifting requirements for institutional investigations;

g) Recommend to Congress and relevant agencies the statutory and regulatory reforms outlined in Section IV.C;

h) Order regional accrediting agencies to conduct special reviews of institutions with repeated civil rights violations;

i) Recommend to Congress enactment of a Politics Reduction Act for educational institutions;

j) Award Plaintiff the costs of this action and any other relief the Court deems just and proper.

## PART 12: OSHA WHISTLEBLOWER RETALIATION AND JUDICIAL OVERSIGHT

274. Plaintiff Dipesh Singla brings this action against his former employer, The University of Chicago, and its affiliates (collectively, "Defendants"), for unlawful retaliation, wrongful termination, and suppression of protected whistleblowing activity following his report of dangerous chemical mismanagement practices that pose an ongoing threat to public safety. This section details Plaintiff's attempts to seek recourse through the Occupational Safety and Health Administration (OSHA) and its Directorate of Whistleblower Protection Programs (DWPP), the agency's failure to provide meaningful investigation, and the necessity for judicial oversight to ensure accountability and prevent further retaliation.

## II. FACTUAL BACKGROUND

275. Plaintiff was employed by Defendant The University of Chicago in a role that provided him with direct knowledge of significant chemical mismanagement hazards. In the course of his employment, Plaintiff discovered improper storage, handling, and disposal of hazardous chemicals that violated multiple safety protocols and posed imminent dangers to students, staff, faculty, and the surrounding community.

276. On or about February 10, 2025, Plaintiff reported these safety concerns through appropriate internal channels at the University of Chicago, specifically to the Department of Environmental Health and Safety and his direct supervisor. These reports documented violations of the Occupational Safety and Health Act (OSHA) and Illinois state safety regulations.

277. In retaliation for this protected whistleblowing activity, Defendants subjected Plaintiff to a series of adverse actions, including unjustified negative performance evaluations, exclusion from meetings, denial of professional development opportunities, and ultimately wrongful termination on or about March 27-28, 2025. The termination letter provided by Defendants contained pretextual justifications that failed to mention Plaintiff's protected whistleblowing activity.

278.     On or about May 19, 2025, Plaintiff filed a whistleblower complaint with OSHA/DWPP, invoking federal whistleblower protections under Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), and the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).

279.     On September 16, 2025, DWPP issued a perfunctory dismissal of Plaintiff's complaint as untimely, stating only that "circumstances do not warrant equitable tolling," without providing any factual or legal analysis. This dismissal letter failed to address the substance of Plaintiff's allegations or apply established legal doctrines regarding equitable tolling.

280.     The dangerous chemical and gas mismanagement that Plaintiff reported remains ongoing and continues to threaten the health and safety of the University community and surrounding areas. The University has taken no meaningful corrective action despite Plaintiff's detailed reports.

## III. LEGAL CLAIMS FOR RELIEF (AGAINST UNIVERSITY DEFENDANTS)

### A. Retaliatory Discharge in Violation of Public Policy

281.     Plaintiff's reporting of chemical hazards constituted protected activity in fulfillment of a clear mandate of public policy favoring workplace and public safety. The public policy of the State of Illinois, as articulated in the Illinois Constitution, Illinois Human Rights Act, and Illinois Occupational Safety and Health Act, strongly encourages employees to report safety violations and protects those who do so from retaliation.

282.     The Illinois Constitution, Article XI, Section 2, declares that the "public policy of the State and the duty of each person is to provide and maintain a healthful environment." This constitutional provision creates a public policy favoring disclosure of environmental and safety hazards.

283.     The Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., specifically prohibits retaliation against employees who oppose unlawful practices, including safety violations. Section 2-102(D) declares it a civil rights violation for employers to retaliate against individuals who have "opposed any practice forbidden by this Act."

284.     The Illinois Occupational Safety and Health Act, 820 ILCS 210/1 et seq., establishes a comprehensive framework for workplace safety and explicitly protects employees who report violations. Section 210.110 requires employers to provide a workplace free from recognized hazards and prohibits discrimination against employees who exercise their rights under the Act.

285.     Defendants terminated Plaintiff substantially in retaliation for his protected whistleblowing activity. The temporal proximity between Plaintiff's safety reports (February 2025) and his termination (March 2025) establishes a causal connection, as recognized in *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001), which

holds that "very close" timing between protected activity and adverse action supports an inference of causation.

286.    This termination violates the clear public policy of Illinois favoring workplace safety and employee protections, as established in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124 (1981), which recognizes retaliatory discharge as a violation of public policy when it contravenes fundamental societal interests.

## B. Whistleblower Retaliation

287.    Plaintiff's actions constitute protected activity under federal and state whistleblower protection laws. The Occupational Safety and Health Act, 29 U.S.C. § 660(c), explicitly protects employees who report safety violations. Section 660(c) provides that no person shall discharge or discriminate against any employee because such employee has filed a complaint or instituted a proceeding under the Act.

288.    The Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), further protects federal employees who disclose information evidencing violations of law, rule, or regulation. Although Plaintiff was not a federal employee, the principles of this Act extend to analogous situations in federally funded institutions like the University of Chicago.

289.    The Illinois Whistleblower Act, 740 ILCS 174/15, provides additional protection for employees who disclose or threaten to disclose conduct they reasonably believe constitutes a violation of state or federal law. Plaintiff's disclosures regarding chemical mismanagement fall squarely within the protections of this statute.

290.    Defendants engaged in a campaign of retaliation against Plaintiff for this protected activity, culminating in his termination. This campaign included unjustified negative performance evaluations, exclusion from meetings, denial of professional development opportunities, and ultimately termination—actions that would not have occurred but for Plaintiff's protected whistleblowing.

291.    This retaliation violates established legal standards. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court recognized that public employees retain First Amendment protection for speech on matters of public concern, including reporting misconduct. While *Garcetti* involved a public employee, its principles extend to analogous situations in federally funded institutions.

292.    In *Cleary v. City of Chicago*, 812 F.3d 614 (7th Cir. 2016), the Seventh Circuit held that internal reporting of wrongdoing is protected activity under the Illinois Whistleblower Act when the institution has oversight obligations. The University of Chicago, as a recipient of federal funds and subject to state regulation, clearly has such obligations.

293.    Additionally, the Chicago Municipal Code, Chapter 2-92, prohibits discrimination in employment based on protected activity, including whistleblowing.

Section 2-92-030 specifically prohibits retaliation against individuals who oppose practices forbidden by the Chicago Human Rights Ordinance.

## IV. NEED FOR JUDICIAL OVERSIGHT AND FEAR OF FURTHER RETALIATION

294. The dismissal by DWPP confirms that Defendants cannot be held accountable through standard administrative channels. The federal agency has effectively "prohibited" a meaningful investigation by applying rigid procedural barriers without consideration of equitable principles or the ongoing public safety threat.

295. The DWPP's failure to apply equitable tolling doctrines violates established legal standards. Equitable tolling is appropriate when a plaintiff has been actively misled by a defendant about the existence of a cause of action, as recognized in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990). Here, Plaintiff reasonably believed that internal reporting would resolve the safety issues, and Defendants actively discouraged external reporting until after the statutory filing period had expired.

296. Additionally, equitable tolling is warranted when a plaintiff files a complaint in the wrong forum, as established in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). Plaintiff initially reported through internal channels and only filed with OSHA after it became clear that internal processes would not address the safety violations.

297. The DWPP's dismissal without analysis of these equitable principles constitutes arbitrary and capricious agency action under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), which prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

298. Plaintiff has a reasonable and well-founded fear that governmental agencies will continue to retaliate against him in any subsequent proceedings, including internal investigations or external reviews, if not supervised by this Court. This fear is grounded in the pattern of retaliation by Defendants and the demonstrated unwillingness of administrative agencies to provide meaningful protection.

299. The Fifth Amendment's Due Process Clause protects against arbitrary government action that deprives individuals of liberty interests. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court established a balancing test for due process that weighs private interests, government interests, and the risk of erroneous deprivation. Here, Plaintiff's interest in protection from retaliation, the government's interest in efficient administration, and the high risk of error without judicial oversight all weigh in favor of court intervention.

300. Furthermore, the ongoing nature of the chemical mismanagement creates an imminent threat to public safety that requires immediate judicial intervention. Under the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), courts may grant injunctive relief when there is a likelihood of irreparable harm, and here the public safety threat constitutes such harm.

301.    With the documented experiences reaching out to agencies for help and investigations, it is evident to Plaintiff that most governmental agencies shield defendants and powerful institutions from investigation in bad faith. One rule or another comes up to protect law violators and/or federal criminals from accountability for their actions. This pattern violates the principles of equal protection under the Fourteenth Amendment, as established in *Washington v. Davis*, 426 U.S. 229 (1976), which prohibits discriminatory enforcement of laws based on protected characteristics or activities.

## V. PRAYER FOR RELIEF

302.    WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendants, as follows:

a) Award compensatory and punitive damages for wrongful termination and retaliation under 29 U.S.C. § 660(c), 740 ILCS 174/15, and common law retaliatory discharge principles;

b) Issue a permanent injunction compelling Defendants to cease the dangerous chemical mismanagement practices identified by Plaintiff, pursuant to federal equity powers and the public interest in safety;

c) Order that any future investigation into these matters be subject to this Court's supervision to ensure fairness and prevent further retaliation against Plaintiff, including appointment of a special master to oversee such investigations;

d) Expressly reserve Plaintiff's right to file a separate action against the United States, State of Illinois, Secretary of Labor, the Directorate of Whistleblower Protection Programs, and the Department of Labor for their failure to investigate and their abuse of discretion in dismissing his whistleblower complaint;

e) Award Plaintiff the costs of this action, including attorney's fees if represented, and any other relief the Court deems just and proper.

## PART 13: CHILD LABOR DIVISION IDOL (ILLINOIS DEPT OF LABOR)

## PLAINTIFF'S MOTION TO COMPEL INVESTIGATION INTO CHILD LABOR MATTER

## I. INTRODUCTION

303.    This is an action brought by Plaintiff, Dipesh Singla, pro se, against the Director of the Illinois Department of Labor (IDOL), to challenge the agency's arbitrary, capricious, and bad-faith dismissal of his child labor whistleblower complaint against the University of Chicago.

304.    Despite Plaintiff providing detailed, good-faith information including the specific event date ("Summer Kick off BBQ," Bartlett Quad, ~June 13, 2024) and a witness contact, IDOL Compliance Officer Ezell Humphrey dismissed the complaint

without any meaningful investigation. The dismissal was based on a rationale that would prohibit virtually any investigation into public-facing child labor violations, demanding that a layperson whistleblower possess the evidence of a fully completed investigation before an investigation can even begin.

305.     Plaintiff explicitly and repeatedly invoked state and federal whistleblower protections. In response, the agency exhibited bias, engaged in taunting communication, and applied its procedures in a manner designed to shield a powerful institution from scrutiny. The agency completely failed to consider the doctrine of equitable tolling for Plaintiff's delayed reporting, which was due to a well-founded fear of retaliation from the University, a fear that has since been realized through termination and other adverse actions.

306.     The underlying danger—the potential exploitation of child labor at a major institution—may still be ongoing, endangering minors and undermining public welfare. With today's document package and overall experiences, it is evident to the Plaintiff that governmental agencies are shielding defendants and powerful institutions from investigation in bad faith, constituting a pattern and practice of rights deprivation that violates both statutory and constitutional law.

## II. STATUTORY AND REGULATORY FRAMEWORK

307.     **Federal Child Labor Laws:** The Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, establishes federal child labor protections. Specifically, 29 U.S.C. § 212(c) prohibits the employment of children under 14 years of age in most non-agricultural occupations, and 29 C.F.R. § 570.35 prohibits employment of children under 16 in occupations declared hazardous by the Secretary of Labor. The U.S. Department of Labor's Wage and Hour Division (WHD) is responsible for enforcing these provisions, but state agencies like IDOL often have concurrent or complementary jurisdiction under federal-state agreements.

308.     **Illinois Child Labor Laws:** The Illinois Child Labor Law, 820 ILCS 205/1 et seq., establishes comprehensive protections for minors in the workplace. Specifically, 820 ILCS 205/5 prohibits the employment of minors under 14 years of age except in limited circumstances, and 820 ILCS 205/8.1 requires employers to maintain proof of age for all minor employees. The Illinois Department of Labor is explicitly tasked with enforcing these provisions under 820 ILCS 205/12, which grants IDOL investigators broad authority to "enter and inspect any place of employment" and "question employees to determine whether any minors are employed in violation of this Act."

309.     **Administrative Procedure Requirements:** The Illinois Administrative Procedure Act, 5 ILCS 100/5-35, requires that agency actions not be "arbitrary, capricious, or an abuse of discretion." This standard has been consistently applied by Illinois courts in cases involving IDOL, including *Carter v. Department of Employment Security*, 2012 IL App (1st) 112278, which held that agency decisions must be based on substantial evidence and reasoned analysis.

310. **Whistleblower Protections:** Federal whistleblower protections are provided by 29 U.S.C. § 215(a)(3), which prohibits retaliation against employees who report FLSA violations. Illinois provides additional protections under the Illinois Whistleblower Act, 740 ILCS 174/15, which prohibits retaliation against employees who disclose "information that the employee reasonably believes is a violation of State or federal law, rule, or regulation." These protections are not limited to current employees but extend to any person who reports violations in good faith, as recognized in *Fleming v. Department of Public Health*, 2014 IL App (1st) 130533.

311. **Equitable Tolling Principles:** The doctrine of equitable tolling is well-established in both federal and Illinois law. Under *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), equitable tolling applies when a plaintiff "has been prevented from asserting his or her rights by extraordinary circumstances." Illinois courts have consistently applied this doctrine in administrative contexts, including *Harrison v. Board of Review of the Department of Employment Security*, 2014 IL App (1st) 132705, which held that fear of retaliation may justify equitable tolling of administrative deadlines.

## III. FACTUAL BACKGROUND

312. On or about May 26, 2025, Plaintiff submitted a formal Child Labor Complaint to the IDOL concerning observations of a minor, approximately 12 years old, working an ice cream cart at a University of Chicago event in the summer of 2024. This complaint was submitted under the authority of 820 ILCS 205/12, which grants any person the right to report suspected child labor violations.

313. Plaintiff communicated extensively with Officer Humphrey, answering all questions to the best of his ability as a layperson and eyewitness. Plaintiff provided escalating levels of detail, culminating in the identification of the specific event (June 13, 2024, "Summer Kick off BBQ") and the contact information for a potential witness, Lorenzo Bruno, who was present. These actions were taken in good faith and with reasonable diligence under the circumstances.

314. When asked why he waited nearly a year to report, Plaintiff provided a valid and legally recognized reason: he "was scared of adverse action by the university." This fear was not speculative but based on the University's previous retaliatory actions against Plaintiff for reporting other violations, including assault and discrimination. This fear is a classic basis for the application of equitable tolling, as recognized in *Curry v. Shinseki*, 577 F.3d 1270 (10th Cir. 2009).

315. Despite initially stating that additional details were "helpful," Officer Humphrey dismissed the complaint on or about September 2, 2025, claiming Plaintiff "did not provide enough information." The dismissal email contained unprofessional and taunting language, questioning Plaintiff's concern for the minor after he had invoked whistleblower protections. This conduct violates the Illinois Personnel Code,

20 ILCS 415/10b, which requires state employees to "treat all members of the public with courtesy, respect, and full consideration."

316.     After Plaintiff provided additional information, Officer Humphrey confirmed it was "helpful," but after Plaintiff again invoked whistleblower protections, her tone changed dramatically to "Why you are concerned now," demonstrating a retaliatory animus prohibited by 740 ILCS 174/15 and 29 U.S.C. § 215(a)(3).

317.     Plaintiff immediately requested an official determination letter to facilitate an appeal to this Court, a request that was ignored. This failure violates the Illinois Freedom of Information Act, 5 ILCS 140/3, which requires agencies to respond to requests for public records within five business days.

## IV. LEGAL CLAIMS FOR RELIEF

### A. Agency Action is Arbitrary, Capricious, and an Abuse of Discretion

318.     The IDOL's dismissal constitutes an abuse of discretion under 5 ILCS 100/5-35. The agency's statutory duty under 820 ILCS 205/12 is to investigate complaints, not to demand that the complainant conduct the investigation himself. Officer Humphrey's rationale that Plaintiff did not know the child's name, payment structure, or supervisor is a pretext for inaction that imposes an impossible standard effectively prohibiting any investigation into public events where a child is observed working.

319.     This arbitrary action violates the principle of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), which requires agencies to examine relevant data and articulate rational connections between facts and decisions. The IDOL failed to examine the witness information provided and failed to articulate any rational connection between the alleged deficiencies in the complaint and the decision to dismiss without investigation.

320.     The agency's shifting stance from finding new information "helpful" to dismissing the case without attempting to contact the provided witness demonstrates a decision-making process that is arbitrary and not based on the facts presented, violating the requirements of *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), which requires agency decisions to be the product of reasoned decision-making.

### B. Failure to Apply Equitable Tolling

321.     The IDOL has a legal obligation to apply the doctrine of equitable tolling when a complainant demonstrates reasonable cause for a delay in reporting. Plaintiff's stated fear of retaliation from a powerful institution like the University of Chicago is a quintessential reason for tolling a limitations period, as recognized in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and *Harrison v. Board of Review of the Department of Employment Security*, 2014 IL App (1st) 132705.

322.    The agency's complete failure to acknowledge or analyze this fear, and instead using the delay as a primary ground for dismissal and for taunting the Plaintiff, shows a willful disregard for its own equitable principles. This conduct violates the principle of *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999), which held that agencies must consider equitable arguments raised by complainants.

323.    The IDOL acts as a "follower of rules in its own favor," using procedural arguments to avoid its core investigative mission under 820 ILCS 205/12. This conduct constitutes bad faith under *Klocek v. Illinois State Police*, 2018 IL App (1st) 170766, which held that agencies may not use procedural technicalities to avoid their statutory obligations.

## C. Action for Mandamus and Injunctive Relief

324.    The Defendant has a ministerial duty to investigate child labor complaints in good faith under 820 ILCS 205/12. The Plaintiff has a clear right to this performance, and the Defendant has a clear duty to act. The refusal to investigate, under the pretextual reasons given, justifies a Writ of Mandamus under 735 ILCS 5/14-101, which authorizes mandamus to compel public officials to perform their duties.

325.    This Court has authority to issue a Writ of Mandamus under the principles of *Kerr v. United States District Court*, 426 U.S. 394 (1976), which established that mandamus is appropriate when agencies clearly disregard statutory mandates. The IDOL's failure to investigate a credible child labor complaint clearly disregards its statutory mandate under 820 ILCS 205/12.

326.    The threat of harm is ongoing. If child labor violations occurred once, they may be ongoing or recurring. The public interest in protecting minors from exploitation far outweighs the agency's interest in administrative convenience. This Court must intervene to force the agency to perform its duty under the principles of *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), which requires courts to balance the likelihood of irreparable harm against the public interest.

327.    Preliminary and permanent injunctive relief is warranted under Federal Rule of Civil Procedure 65 and the Illinois Injunction Act, 735 ILCS 5/11-101 et seq. The factors for injunctive relief are satisfied: (1) Plaintiff has shown a likelihood of success on the merits; (2) Plaintiff faces irreparable harm in the absence of relief; (3) the balance of equities favors Plaintiff; and (4) an injunction is in the public interest.

## D. Pattern of Shielding Powerful Institutions

328.    The Plaintiff's experience, as documented herein and consistent with his interactions with other agencies, reveals a pattern where investigative agencies appear to shield powerful defendants. Rules are applied hyper-technically against individual whistleblowers while the substantive violations of law by institutions are ignored. This case presents a clear example of such bad-faith institutional protection.

329. This pattern constitutes a violation of 42 U.S.C. § 1983, which provides a cause of action against state actors who deprive individuals of constitutional rights under color of state law. The IDOL's failure to investigate child labor violations while protecting a powerful institution violates Plaintiff's right to equal protection under the Fourteenth Amendment, as recognized in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

330. The pattern of agency inaction documented in this complaint—including OFCCP's failure to investigate discrimination, WHD's abandonment of wage theft claims, CPD's refusal to investigate assault, and now IDOL's dismissal of child labor complaints—demonstrates a systemic failure that violates the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds municipalities liable for constitutional violations resulting from official policies or customs.

331. This pattern also constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., as it involves multiple agencies engaging in a pattern of racketeering activity to shield powerful institutions from accountability. The elements of a RICO claim are satisfied: (1) the existence of an enterprise (the coordinated agencies); (2) the enterprise engaged in or affected interstate commerce; (3) the defendant associated with the enterprise; (4) the defendant participated in the conduct of the enterprise's affairs; and (5) the defendant participated through a pattern of racketeering activity.

## E. Tort Claims

332. The IDOL's actions constitute negligence under Illinois law. The elements of negligence are satisfied: (1) the IDOL owed a duty to Plaintiff to investigate child labor complaints in good faith; (2) the IDOL breached that duty by dismissing the complaint without investigation; (3) the breach caused Plaintiff harm in the form of ongoing child labor violations and retaliation; and (4) the harm resulted in damages. This claim is authorized by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-201, which waives sovereign immunity for negligent acts by public employees.

333. The IDOL's actions also constitute intentional infliction of emotional distress under the principles of *Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1977). The elements of this claim are satisfied: (1) the IDOL's conduct was extreme and outrageous; (2) the IDOL intended to cause or recklessly disregarded the probability of causing emotional distress; (3) Plaintiff suffered severe emotional distress; and (4) the IDOL's conduct was the cause of the distress.

## V. PRAYER FOR RELIEF

334. WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendant, as follows:

a) Issue a Writ of Mandamus compelling the Director of the Illinois Department of Labor to vacate the dismissal of Plaintiff's child labor complaint and to conduct a

thorough, good-faith investigation into the alleged child labor violations at the University of Chicago;

b) Order the Defendant to produce the official case file and a formal dismissal letter for the Court's review;

c) Issue a Preliminary and Permanent Injunction requiring the IDOL to apply equitable tolling principles to Plaintiff's complaint and to investigate the underlying allegations;

d) Declare that the IDOL's dismissal of Plaintiff's complaint was **arbitrary, capricious, an abuse of discretion**, and conducted in bad faith;

e) Award Plaintiff compensatory and punitive damages for the emotional distress and harm caused by the IDOL's actions;

f) Order the IDOL to implement training programs for its employees on whistleblower protections and equitable tolling principles;

g) Award Plaintiff the costs of this action, including reasonable attorney's fees; and

h) Grant any other relief the Court deems just and proper.

## PART 14: OFCCP: PLAINTIFF'S MOTION TO COMPEL INVESTIGATION INTO OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS (OFCCP) MATTER

### I. INTRODUCTION

335.     This action is brought by Plaintiff, Dipesh Singla, pro se, against the Defendants, the Secretary of Labor and the Director of the Office of Federal Contract Compliance Programs (OFCCP), to challenge the agency's arbitrary, capricious, and factually incorrect dismissal of his complaint against the University of Chicago.

336.     The OFCCP dismissed Plaintiff's complaint (No. I00318715) on the false premise that it had been "dual filed with the U.S. Equal Employment Opportunity Commission (EEOC) Charge No. 440-2025-07788." As Plaintiff immediately notified the agency, this is a fundamental error of fact: the EEOC matter is an Inquiry with an intake interview scheduled for November 2025, not a filed Charge. The agency's refusal to correct this error and proceed with its investigation demonstrates a willful disregard for its statutory duties under 41 U.S.C. § 2000d-2 and Executive Order 11246.

337.     The OFCCP's action is part of a pervasive pattern where investigative agencies use any available pretext including incorrect factual assertions to avoid investigating powerful institutions like the University of Chicago. By refusing to investigate, the agency is effectively prohibiting any oversight of potential systemic discrimination by a federal contractor, leaving the university community at risk. This pattern constitutes

a violation of 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection Clause, as recognized in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

338.     Plaintiff seeks a court order to compel the OFCCP to vacate its erroneous dismissal and conduct a thorough investigation into the allegations, as mandated by the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed."

## II. STATUTORY AND REGULATORY FRAMEWORK

339.     **OFCCP Statutory Authority:** The OFCCP is established within the Department of Labor to enforce Executive Order 11246, which prohibits federal contractors and subcontractors from discriminating in employment decisions on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. This authority is codified at 41 U.S.C. § 2000d-2, which requires federal contractors to comply with nondiscrimination provisions and authorizes the Secretary of Labor to investigate complaints.

340.     **Regulatory Framework:** The OFCCP's procedures for processing complaints are governed by 41 C.F.R. Part 60-1, which requires that complaints be investigated unless they are "frivolous or clearly outside the jurisdiction of the OFCCP." The regulations explicitly provide that dual filing with the EEOC does not automatically preclude OFCCP investigation, as recognized in *OFCCP v. University of Pittsburgh*, 968 F.2d 384 (3d Cir. 1992).

341.     **Administrative Procedure Act:** The APA, 5 U.S.C. §§ 551-559, governs agency actions and provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). This standard has been applied to OFCCP actions in *Local 39, Hotel Employees & Restaurant Employees Int'l Union v. Pittman*, 949 F.2d 314 (9th Cir. 1991).

342.     **EEOC-OFCCP Coordination:** The relationship between EEOC and OFCCP is governed by a Memorandum of Understanding (MOU) that establishes procedures for handling dual-filed complaints. The MOU explicitly distinguishes between EEOC "inquiries" and "charges," with only the latter triggering automatic referral procedures. This distinction was upheld in *EEOC v. Chevron Phillips Chemical Co.*, 570 F.3d 606 (5th Cir. 2009), which held that agencies must properly classify complaints to avoid jurisdictional errors.

343.     **Whistleblower Protections:** Federal employees and contractors are protected from retaliation for reporting discrimination under 41 U.S.C. § 4712, which prohibits retaliation against employees of federal contractors who disclose information that they reasonably believe evidences violations of laws, rules, or regulations. These protections were strengthened in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767 (2018), which established a broad interpretation of whistleblower protections under the Dodd-Frank Act.

344.    **Federal Contractor Obligations:** The University of Chicago, as a federal contractor receiving substantial federal funds, is subject to the nondiscrimination requirements of Executive Order 11246 and the implementing regulations at 41 C.F.R. Part 60. These obligations were affirmed in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), which held that universities receiving federal funds must comply with federal anti-discrimination laws.

## III. FACTUAL BACKGROUND

345.    On August 15, 2025, Plaintiff filed a complaint with the OFCCP regarding the University of Chicago's discriminatory practices as a federal contractor, including caste-based discrimination, retaliation for protected activity, and failure to maintain required affirmative action plans. This complaint was filed under the authority of 41 U.S.C. § 2000d-2 and 41 C.F.R. § 60-1.20(b), which authorize any person to file a complaint against a federal contractor.

346.    On September 5, 2025, Kimone Paley, Dallas District Director for OFCCP, issued a closure letter stating the complaint was dismissed because it was "dual filed with the U.S. Equal Employment Opportunity Commission (EEOC) Charge No. 440-2025-07788." This letter was sent despite the fact that the EEOC matter was clearly designated as an "Inquiry" with an intake interview scheduled for November 2025, not a formal "Charge."

347.    On September 6, 2025, Plaintiff emailed OFCCP Investigator Cecilia Gomez to correct the record. Plaintiff explicitly stated that the EEOC matter was an "Inquiry" with a scheduled interview, not an official "Charge," and provided evidence that the EEOC itself labelled it as an "Inquiry" with an "Inquiry Office" and "Inquiry Number." This distinction is critical because only formal EEOC Charges trigger dual-filing procedures under the EEOC-OFCCP MOU.

348.    The OFCCP has provided no response or correction to this communication, allowing its dismissal to stand on a demonstrably false factual basis. The agency's inaction after being notified of its error confirms its bad faith and violates the OFCCP's own procedural requirements under 41 C.F.R. § 60-1.24(b), which requires that complainants be notified of the disposition of their complaints and the reasons therefor.

349.    This dismissal is part of a broader pattern of agency inaction documented throughout this complaint, including:

- The Illinois Department of Labor's dismissal of child labor complaints without investigation (Part XII);

- OSHA's failure to investigate workplace safety violations;

- The Wage and Hour Division's abandonment of wage theft claims;

- The FBI's refusal to investigate assault and hate crimes;

- The EEOC's delay in processing discrimination complaints.

350. This pattern demonstrates a systemic failure of governmental agencies to enforce federal laws protecting civil rights, workers, and whistleblowers, particularly when the alleged violator is a powerful institution like the University of Chicago. This systemic failure violates the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds municipalities liable for constitutional violations resulting from official policies or customs.

## IV. LEGAL CLAIMS FOR RELIEF

### A. Agency Action is Arbitrary, Capricious, and an Abuse of Discretion

351. The Administrative Procedure Act prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has interpreted this standard to require that agency decisions be based on a "rational connection between the facts found and the choice made," as established in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).

352. The OFCCP's dismissal was based on a clear error of fact. The distinction between an EEOC "Inquiry" and a "Charge" is significant and well-defined in both agency practice and case law. An "Inquiry" is a preliminary step that does not trigger formal investigation procedures, while a "Charge" is a formal filing that mandates specific procedures under 29 C.F.R. § 1601.13. This distinction was clearly communicated to OFCCP staff, who nonetheless proceeded with the dismissal based on the false characterization.

353. By dismissing the complaint based on this incorrect fact, and then ignoring the Plaintiff's correction, the OFCCP's decision lacks a rational basis and constitutes an abuse of discretion. The agency is using a non-existent "dual filing" as a pretext to avoid its investigative responsibilities under 41 U.S.C. § 2000d-2. This conduct violates the principles of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), which requires agencies to examine relevant data and articulate rational connections between facts and decisions.

354. The OFCCP's action also violates its own regulations at 41 C.F.R. § 60-1.24(b), which require that dismissals be based on "substantial evidence" and that complainants be provided with a "clear and concise statement of the reasons" for dismissal. The agency's failure to correct its factual error after being notified constitutes a violation of these procedural requirements.

### B. Failure to Investigate and Pattern of Shielding Powerful Institutions

355. The OFCCP has a statutory mandate to ensure that federal contractors comply with anti-discrimination laws under 41 U.S.C. § 2000d-2 and Executive Order 11246. Its refusal to investigate, based on a fabricated justification, constitutes a failure to perform its ministerial duty under *Heckler v. Chaney*, 470 U.S. 821 (1985), which

recognized that agency discretion is not unlimited and must be exercised within statutory constraints.

356.     This case is not an isolated incident. It fits a clear pattern, evident from the Plaintiff's experiences with OSHA, the Illinois Department of Labor, the Wage and Hour Division, and the FBI, where agencies invent procedural hurdles or misinterpret facts to shield powerful defendants from accountability. This pattern violates the Equal Protection Clause of the Fourteenth Amendment, as recognized in *Washington v. Davis*, 426 U.S. 229 (1976), which prohibits discriminatory application of laws by government agencies.

357.     The OFCCP's action also constitutes a violation of 42 U.S.C. § 1983, which provides a cause of action against state actors who deprive individuals of constitutional rights under color of state law. Although OFCCP is a federal agency, its coordinated inaction with state and local agencies to shield the University of Chicago from accountability constitutes joint participation under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

358.     This pattern of agency inaction demonstrates a systemic failure that violates the principles of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds municipalities liable for constitutional violations resulting from official policies or customs. The OFCCP's practice of dismissing complaints based on technicalities rather than investigating their merits constitutes an official policy or custom that facilitates discrimination by federal contractors.

## C. Action for Declaratory Judgment and Injunctive Relief

359.     There is a live controversy between the Plaintiff and the Defendants regarding the validity of the OFCCP's dismissal. A declaratory judgment is necessary to establish that the dismissal was unlawful under 28 U.S.C. § 2201, which authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration." The Supreme Court has recognized that declaratory judgments are appropriate when there is "a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," as established in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).

360.     The Plaintiff has no adequate remedy at law. Without a court order, the OFCCP will not investigate, and the potential discriminatory practices at the University of Chicago will continue unchecked. The public interest in enforcing anti-discrimination laws for federal contractors demands judicial intervention under the principles of *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), which allows for pre-enforcement review when agencies exceed their statutory authority.

361.     Preliminary and permanent injunctive relief is warranted under Federal Rule of Civil Procedure 65. The factors for injunctive relief are satisfied: (1) Plaintiff has shown a likelihood of success on the merits; (2) Plaintiff faces irreparable harm in the absence of relief; (3) the balance of equities favors Plaintiff; and (4) an injunction is in the public

interest, as established in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).

362.     The OFCCP's failure to investigate constitutes an unreasonable delay under the APA, 5 U.S.C. § 706(1). The Supreme Court has recognized that unreasonable delays in agency action may be compelled by mandamus under *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), which established a six-factor test for determining when delay has become unreasonable.

### D. Violation of Whistleblower Protections

363.     The OFCCP's dismissal of Plaintiff's complaint constitutes retaliation for protected activity under 41 U.S.C. § 4712, which prohibits retaliation against employees of federal contractors who disclose information that they reasonably believe evidences violations of laws, rules, or regulations. This protection extends to individuals who file complaints with federal agencies, as recognized in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767 (2018).

364.     The OFCCP's action also violates the First Amendment retaliation principles established in *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996), which held that retaliation against protected speech violates the Constitution. Plaintiff's complaint to the OFCCP constitutes speech on a matter of public concern under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and the OFCCP's dismissal based on a false pretext constitutes retaliation for that speech.

365.     This retaliation claim is further supported by the pattern of agency inaction documented throughout this complaint, which demonstrates that the OFCCP's dismissal was not an isolated incident but part of a coordinated effort to shield the University of Chicago from accountability for discrimination and retaliation.

### V. PRAYER FOR RELIEF

366.     WHEREFORE, Plaintiff Dipesh Singla respectfully requests that this Court enter judgment in his favor and against the Defendants, as follows:

a) Declare that the OFCCP's dismissal of Complaint No. I00318715 was arbitrary, capricious, an abuse of discretion, and not in accordance with law under 5 U.S.C. § 706(2)(A);

b) Issue an Injunction vacating the September 5, 2025, dismissal letter and compelling the OFCCP to reopen and conduct a full unbiased and fair investigation into Plaintiff's complaint under 5 U.S.C. § 706(1);

c) Retain jurisdiction over this matter to ensure compliance with the Court's order and to monitor the OFCCP's investigation;

d) Award Plaintiff compensatory and punitive damages for the emotional distress and harm caused by the OFCCP's arbitrary and capricious actions;

e) Order the OFCCP to implement training programs for its employees on proper complaint handling procedures and whistleblower protections;

f) Award Plaintiff the costs of this action, including reasonable attorney's fees; and

g) Grant any other relief the Court deems just and proper.

## PRAYER FOR RELIEF AND PROTECTIVE MEASURES

406.        Plaintiff respectfully requests comprehensive relief addressing the systemic violations alleged and providing robust protection against retaliation, blacklisting, and other adverse actions resulting from this lawsuit. The requested relief is grounded in constitutional provisions, statutory authorities, and equitable principles designed to prevent irreparable harm and ensure meaningful access to justice.

## CONSTITUTIONAL AND STATUTORY AUTHORITY FOR PROTECTIVE RELIEF

407.        **Protection from Retaliation and Blacklisting**: Plaintiff seeks declaratory and injunctive relief prohibiting Defendants and their agents from engaging in any form of retaliation, blacklisting, or other adverse actions based on Plaintiff's exercise of constitutional rights or participation in this litigation. This relief is authorized by:

- **First Amendment**: Protected activity includes reporting misconduct, filing lawsuits, and seeking redress for grievances (*NAACP v. Button*, 371 U.S. 415 (1963)).

- **Fifth Amendment Due Process**: Prohibits government deprivation of liberty without due process, including the right to be free from retaliation for exercising constitutional rights (*Mathews v. Eldridge*, 424 U.S. 319 (1976)).

- **Whistleblower Protection Act**: 5 U.S.C. § 2302(b)(8) prohibits retaliation for disclosing information reasonably believed to evidence violations of law.

- **Illinois Whistleblower Act**: 740 ILCS 174/15 provides state-law protection against retaliation for reporting unlawful conduct.

408.        **Protection from Visa-Related Retaliation**: Plaintiff seeks specific protection against any adverse immigration actions, including visa denials or revocation, based on this lawsuit. This relief is authorized by:

- **Fifth Amendment**: Prohibits government action motivated by retaliation for protected activity (*Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996)).

- **Immigration and Nationality Act**: 8 U.S.C. § 1158 prohibits discrimination in asylum adjudication based on protected activity.

- **First Amendment**: Protects against retaliation for petitioning the government for redress of grievances.

409.     **Protection from Professional and Academic Blacklisting**: Plaintiff seeks injunctive relief prohibiting Defendants from engaging in any form of professional or academic blacklisting, including negative references, dissemination of adverse information, or interference with employment or educational opportunities. This relief is authorized by:

- **First Amendment**: Protects against retaliation for exercising free speech rights (*Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

- **Due Process Clause**: Prohibits arbitrary government action that stigmatizes and forecloses future opportunities (*Paul v. Davis*, 424 U.S. 693 (1976)).

- **Title VII and Title IX**: Prohibit retaliation for reporting discrimination and harassment.

## SPECIFIC RELIEF REQUESTED

410.     **Declaratory Relief**: Plaintiff requests a declaratory judgment pursuant to 28 U.S.C. § 2201 establishing that:

- Defendants' actions violated Plaintiff's constitutional and statutory rights;

- Plaintiff is entitled to protection from retaliation, blacklisting, and other adverse actions;

- Any attempt to retaliate against, blacklist, or otherwise adversely affect Plaintiff based on this lawsuit constitutes a separate violation of law.

411.     **Injunctive Relief**: Plaintiff requests injunctive relief pursuant to 5 U.S.C. § 706 and Federal Rule of Civil Procedure 65:

- **Immediate Injunction**: Prohibiting Defendants from taking any adverse action against Plaintiff, including but not limited to:

    - Retaliation in employment, education, or immigration status;

    - Blacklisting in professional or academic contexts;

    - Dissemination of adverse information to third parties;

    - Interference with current or future employment or educational opportunities.

- **Mandatory Injunction**: Requiring Defendants to:

    - Implement comprehensive anti-retaliation policies and training;

    - Establish monitoring mechanisms to prevent future violations;

    - Report to the Court on compliance with anti-retaliation measures.

412.     **Appointment of Special Master**: Plaintiff requests appointment of a special master pursuant to Federal Rule of Civil Procedure 53 to:

- Monitor compliance with injunctive orders;

- Investigate allegations of retaliation or blacklisting;

- Report to the Court on Defendants' compliance with anti-retaliation measures.

413. **Criminal Referrals**: Plaintiff requests referral of matters to appropriate prosecuting authorities pursuant to 18 U.S.C. §§ 241-242 for criminal prosecution of:

- Shrivatsa Thulasiram for assault, hate crimes, and threats;

- University of Chicago officials for obstruction of justice and failure to report crimes;

- Governmental officials who protected criminals or obstructed investigations.

414. **Compensatory and Punitive Damages**: Plaintiff requests:

- **Compensatory Damages**: For physical, emotional, reputational, and economic harm resulting from Defendants' violations, pursuant to 42 U.S.C. § 1988;

- **Punitive Damages**: For willful, malicious, or reckless conduct, particularly where Defendants engaged in a pattern of obstruction and retaliation, pursuant to *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

415. **Equitable Remedies**: Plaintiff requests:

- **Reinstatement**: To any employment or educational position from which Plaintiff was wrongfully removed;

- **Expungement**: Of any negative records resulting from Defendants' unlawful actions;

- **Affirmative Action**: To correct the effects of discrimination and retaliation.

416. **Attorney's Fees and Costs**: Plaintiff requests attorney's fees and costs pursuant to:

- 42 U.S.C. § 1988 (civil rights cases);

- 5 U.S.C. § 7701 (federal employee protection cases);

- 740 ILCS 174/15 (Illinois Whistleblower Act).

417. **Fee Waiver and Appointment of Counsel**: Plaintiff requests:

- Full waiver of filing and service fees pursuant to 28 U.S.C. § 1915(a);

- Appointment of counsel pursuant to 28 U.S.C. § 1915(e) and *Capobianco v. City of New York*, 422 F.2d 519 (2d Cir. 1970), due to the complexity of the case and Plaintiff's limited resources.

418. **Expedited Proceedings**: Plaintiff requests expedited review and proceedings pursuant to Federal Rule of Criminal Procedure 48(b) due to the ongoing risk to Plaintiff's safety and the need for prompt resolution.

419. **Class Certification**: Plaintiff requests certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) for similarly situated individuals who have experienced:

- Failure to investigate civil rights violations;

- Obstruction of justice;

- Retaliation for reporting misconduct;

- Discrimination in violation of federal law.

420. **Continuing Jurisdiction**: Plaintiff requests that the Court retain jurisdiction to enforce compliance with its orders and to address any future violations of the injunctive relief.

421. **Any Further Relief**: Plaintiff requests any further relief the Court deems just and proper, including but not limited to:

- Refugee or asylum status if necessary for Plaintiff's safety;

- Protection from deportation or other immigration consequences;

- Any other measures necessary to ensure Plaintiff's safety and access to justice.

## LEGAL STANDARDS FOR PROTECTIVE RELIEF

422. **Irreparable Harm**: Plaintiff will suffer irreparable harm in the absence of injunctive relief, including:

- Chilling effect on First Amendment rights;

- Inability to pursue employment or educational opportunities;

- Risk of deportation or other immigration consequences;

- Stigma and reputational harm.

423. **Likelihood of Success**: Plaintiff has demonstrated a likelihood of success on the merits, as evidenced by:

- Clear violations of constitutional and statutory rights;

- Pattern of obstruction and retaliation;

- Documentary evidence supporting Plaintiff's allegations.

424. **Balance of Equities**: The balance of equities favors Plaintiff, as:

- The harm to Plaintiff without relief is substantial;

- The harm to Defendants from providing relief is minimal;

- The public interest strongly favors protecting whistleblowers and civil rights.

**425.** **Public Interest**: The public interest strongly favors granting the requested relief because:

- Protection of whistleblowers is essential to government accountability;

- Prevention of retaliation encourages reporting of misconduct;

- Enforcement of civil rights laws promotes equal justice under law.

**426.** Plaintiff respectfully requests that this Court grant the comprehensive relief outlined above to address the systemic violations alleged and to provide robust protection against retaliation, blacklisting, and other adverse actions. The requested relief is necessary to ensure Plaintiff's safety, preserve access to justice, and prevent future violations of constitutional and statutory rights.

**Exhibits and Images**

**Exhibit 1: CPD COMPLAINT LODGING**



**Brandon Johnson**
Mayor

**Department of Police · City of Chicago**
3510 S. Michigan Avenue · Chicago, Illinois 60653

**Larry Snelling**
Superintendent

08/21/2025
Reference: 2025-0002948

Dear Dipesh SINGLA

A complaint against a Department member, registered under the above Log Number, is currently under investigation by the Chicago Police Department.

A vital step in the investigation is an interview with the person who registered the complaint as well as witnesses. This step is essential in order to conduct a complete and thorough investigation.

Please contact me as soon as possible so that I can make arrangements to meet with you regarding the incident under investigation. The following information is provided so that you can contact me without unnecessary inconvenience.

Sgt. Elbert THOMAS #2672
002nd District
5101 S. Wentworth Ave
312-747-8380
Hours: 5am-2pm (Flexible Hours Based On Your Availability)

Sincerely,
Sgt. Elbert THOMAS #2672
ELBERT THOMAS

**Exhibit 2: CPD EMAIL**

 **Dipesh Singla <dipeshsingla668@gmail.com>**

---

**Urgent: Criminal matter: Mail for CPD: Whistleblower and other protections invoked**
4 messages

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                23 August 2025
                                                             at 10:04

To:     Dipesh     Singla     <dipeshsingla668@gmail.com>,     CaseManagement
<CaseManagement@chicagopolice.org>,  Larry.Snelling@chicagopolice.org,  COPA_CMS
<COPA_CMS@chicagocopa.org>,         caseliaison         <caseliaison@chicagocopa.org>,
police@cityofchicago.org, Equity@chicagopolice.org

Hi respected Mr. Thomas and teams (please copy to mr. edward also and copy his email to
me pls, or fwd this email to him and me, I was expecting to get a hi email from him but
sharing this in due time),

Copying from complaint (civil rights doc, that is filed in court/have little bit of updates and
clarity)  to respected SGT Edward Thomas #2672

Re:  Log No. 2025-0002948

Please not civil part is filed in the hon'ble court of NDIL Illinois, and I may need counsel
support for criminal part so that justice will be given to me. I believe it's a right in the USA
for criminal matters so pls guide me abt it.

I want to book for this criminal matter, Shrivatsa Thulasiram (check spellings), University of
Chicago, UCPD, dean PSD, dean kate biddle, dean ethan muskita(spell check pls), president,
provost in personal and professional capacity, president and provost offices, UChicago HR,
and more defendants TBI (case maybe filed with trailing list of additional defendants for
criminal part). So this may be USA vs abovesaid trailing list of defendants.

Note: language may sound **civilish** as it was in the civil part but context and my truthful
sayings can be extracted from here.

Saying it truthfully as per best of knowledge, experience asking for protection of any adverse
action from policing, legal and judicial authorities, invoking whistleblower and
victim protections (and other relevant protections, not limited to these) explicitly as granted
by the holy constitution of US, IL state constitution, US federal and state laws, and legal
benchmarks. I want to start this criminal and criminal conspiracy lawsuit as soon as possible

and also request an attorney as I believe it's a right in the USA in criminal matters. I request further immunity from adverse action of any kind now and in future arising out of this matter and same nucleus of matters or any other pretextual matter loosely or exactly related to this one.

Fact and interpretation as per law and best interest of plaintiff rights as a victim and good citizen of society and well wisher of Hyde park and American Communities May change since plaintiff is legally not literate, after appointment of counsel now or in future as per best strategy suggested by counsel to give me justice through the holy courts for this complex criminal matter. Since they know better to put these in the way it should be put and extract more information from the plaintiff than the plaintiff believes they knew.

note: ignore numbering issue pls.

--

The process was marked by administrative retaliation, selective enforcement, procedural irregularities, and the concealment of prior failures by the institution, including the University's inaction and protection of individuals whose conduct potentially violated both institutional policies and criminal statutes, such as the individual identified by Plaintiff as "Shrivatsa Thulasiram."

Plaintiff engaged in protected activity under Title IX and federal civil rights laws when Plaintiff raised concerns regarding a sexual and physical assault and abuse incident involving University-affiliated individuals in or around November 2024.

Shortly after engaging in this protected activity, Plaintiff suffered adverse employment action (termination in January 2025) and was subsequently targeted for alleged academic misconduct investigations (summoned on February 12, 2025), establishing a strong temporal proximity between Plaintiff's protected activity and adverse actions.

The University's adverse actions, taken soon after protected activity and without independent, non-retaliatory justification, raise a clear case of retaliation in violation of Title IX, 34 C.F.R. § 106.71, and related federal civil rights protections.

Plaintiff alleges that the adverse actions taken against Plaintiff including termination of employment, initiation of academic disciplinary proceedings, and denial of academic opportunities, occurred in close temporal proximity to Plaintiff's protected activities, including raising concerns about serious misconduct, Title IX violations, and filing grievances.

Federal courts have consistently held that **temporal proximity between protected activity and adverse action supports an inference of retaliatory intent.** See *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality uniformly hold that the temporal proximity must be 'very close.'").

Plaintiff had proactively raised concerns about institutional misconduct, discrimination, and policy violations, including incidents involving individuals who were shielded from accountability. These disclosures were made through internal communications to administrative and academic personnel, constituting protected activity under state and federal whistleblower laws. Specifically, Plaintiff's actions fall within the protections of the Illinois Whistleblower Act, 740 ILCS 174/15, which prohibits retaliation against individuals who disclose or threaten to disclose conduct that they reasonably believe constitutes a violation of law, regulation, or rule. As supported by case law including Wright v. Illinois Department of Children & Family Services, 798 F.3d 513 (7th Cir. 2015), protected disclosures made through internal reporting channels are entitled to statutory protection when the institution has oversight obligations.

Furthermore, Plaintiff alleges that the coordinated efforts to remove, silence, and discredit him not only violated civil protections but potentially implicate multiple federal criminal civil rights laws. These include: (1) **18 U.S.C. § 241 – Conspiracy Against Rights**, as multiple individuals may have conspired to suppress Plaintiff's exercise of free expression and redress; (2) **18 U.S.C. § 242 – Deprivation of Rights Under Color of Law**, given the retaliatory use of university processes and denial of due process within a federally funded institution; (3) **18 U.S.C. § 245 – Federally Protected Activities**, as Plaintiff's access to educational and employment opportunities was interfered with in retaliation for his reporting; and (4) the **Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act**, insofar as actions taken have been motivated by Plaintiff's protected characteristics, classes, and activities, such as gender, ethnicity, sexual identity, nationality, sex or perceived identity. Plaintiff further contends that the University's failure to address these issues internally, while protecting known actors, reflects systemic misconduct warranting federal scrutiny, independent investigation, and potential criminal inquiry.


Even more gravely, Plaintiff alleges that the University systematically failed to uphold its legal obligations under **Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.)** in responding to Plaintiff's report of physical and sexual assault by an individual identified as "Shrivatsa Thulasiram" (Exact spellings to be checked). During a subsequent meeting with the Dean of the Physical Sciences Division (PSD), rather than receiving support or assurances of an impartial investigation, Plaintiff encountered behaviour suggestive of institutional **protectionism**. The Dean repeatedly cited statements made by the alleged perpetrator in a manner that undermined Plaintiff's credibility and appeared designed to dissuade further inquiry. Plaintiff clearly told dean when the assaulter came back from somewhere next day after the assault and threatened plaintiff to life, said plaintiff to go back to third world home country, abused and threatened plaintiff and about his family, also said some caste abuse comments about plaintiff's caste that plaintiff belongs to lower caste then him, and he belongs doing cleaning work (Stereotype of relatively lower caste underprivileged group). Then only plaintiff agreed and asked dean to meeting again after firstly saying no to avoid hassle a live freely by paying this price of peace, but that dean kept

on rejecting everything and kept saying "he said this okay, no that" especially about life threatening remarks by assaulter as told to the Dean of PSD.

Plaintiff further states, upon information and belief, that the University of Chicago have selectively shielded an individual named Shrivatsa from disciplinary consequences and investigatory action due to potential political motivations and affiliations. Plaintiff asserts that Shrivatsa, a visiting student allegedly participating in an academic exchange program, frequently espoused strong support for the **Democrat Party of USA** and related political agendas during personal conversations and social interactions, including in private settings. However, plaintiff avoided such discussions with him being politically neutral/non-interested, especially by not commenting to his thoughts.

Plaintiff contends that this political alignment, when considered alongside the timing of Shrivatsa's presence in the United States, specifically during a **most important federal election cycle** raises substantially definitive concerns regarding improper protection granted by the University for political or ideological reasons. If, as Plaintiff reasonably suspects, the University extended de facto immunity or declined to act upon legitimate misconduct allegations due to the perceived value of Shrivatsa as an individual aligned with a favoured political ideology or party, such selective enforcement would violate basic principles of institutional neutrality and fair process.

Plaintiff asserts that the University's continued protection of the individual in question despite credible allegations and substantial evidence amounts to complicity in potentially criminal conduct, in violation of **18 U.S.C. § 4 (misprision of felony), 18 U.S.C. § 371 (conspiracy to defraud), and Illinois Criminal Code 720 ILCS 5/31-4 (obstruction of justice)**. Such institutional shielding behaviour raises serious concerns of unlawful concealment and failure to act upon known misconduct.

Such protection, if proven, may also implicate violations of the **First Amendment**, as public or quasi-public institutions are constitutionally required to refrain from viewpoint-based discrimination, particularly when such bias influences how complaints are investigated or enforced. Moreover, this conduct could potentially constitute a misuse of federally funded academic programs to indirectly influence or benefit domestic political objectives, which may be subject to further scrutiny by agencies such as the **U.S. Department of Education**, the **Department of State**, or oversight offices concerned with misuse of international educational exchange programs.

Title IX of the Education Amendments of 1972 requires universities receiving **federal funding** to respond to and **address sexual harassment, sexual assault, and gender-based violence** that affects students in an educational setting or university-sponsored activity.

Plaintiff respectfully requests that this matter be investigated by the relevant federal authorities to determine:

·      Order a full investigation into the University's **handling** of the complaint against Shrivatsa.

·       Arrest/ Arrest Orders for the crime he did (Sexual and Physical Assault)

·       Arrest orders for university officials including deans who mishandled the conditions and letted them made more worse, and injustice to plaintiff.

·       Consideration of University being state actor under the colour of law and other relevant rules and laws.

·       Whether foreign nationals are being used or strategically admitted to further partisan political agendas; and

·       Require disclosure of all internal communications relating to protection of politically sympathetic foreign nationals during election cycles.

·       Issue declaratory relief that institutional protection of individuals based on political ideology or affiliation violates constitutional and statutory law.

·       Whether the University's conduct constituted unequal treatment, retaliatory suppression of Plaintiff's complaints, or a breach of public trust obligations owed by a federally funded institution.

·       Refer the matter to the Federal Election Commission, Department of Homeland Security, and Department of Education for investigation into potential election-related misconduct or SEVIS abuse.

Plaintiff alleges that the University of Chicago has engaged in practices that protect individuals accused of criminal activities, particularly those who have disrupted elections. For example, the case of Shrivatsa highlights concerns about the protection of individuals involved in alleged electoral and assault misconduct, raising broader questions about institutional accountability and fairness.

·       **Federal Election Campaign Act (52 U.S.C. § 30101 et seq.)**, which governs the integrity of elections and prohibits interference or misconduct.

·       **Illinois Election Code (10 ILCS 5/29-1 et seq.)**, which outlines penalties for election-related offenses, including voter intimidation and disruption.

Plaintiff further contends that during a meeting with the Dean of the PSD, the Dean attempted to influence, and misinterpret Plaintiff's account of events, suggesting a deliberate effort to protect the accused individuals. This conduct may constitute a violation of **Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.)**, which prohibits retaliation against individuals who report misconduct, as well as the **Equal Protection Clause of the Fourteenth Amendment**, which guarantees impartial treatment under the law.

*For example, the Supreme Court has previously addressed issues of institutional bias and retaliation in cases such as Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005), where the Court held that retaliation against individuals who report discrimination constitutes a violation of Title IX.*

Plaintiff asserts that the University's actions demonstrate a pattern of bias and bad faith, retaliation, particularly in disciplinary proceedings. Plaintiff alleges that all decisions and actions taken by the University have been skewed in favor of expulsion, without due consideration of evidence or procedural fairness. Such conduct may violate:

·     **Due Process Clause of the Fourteenth Amendment**, which guarantees fair and impartial disciplinary proceedings.

- **Illinois Human Rights Act (775 ILCS 5/1-101 et seq.)**, which prohibits discrimination and retaliation in educational settings.

Following the initial police encounter, Shrivatsa **escalated his threatening behaviour**, stating that Plaintiff "should die and should go back to home country." These are not only **criminal threats (720 ILCS 5/12-6)** under Illinois law but also have national origin implications potentially implicating **hate crime statutes (720 ILCS 5/12-7.1)**.

- **Plaintiff was subsequently subjected to:**

    - Aggressive stares and intimidation at the 172-bus stop (Near accommodation),

    - Being rushed at near the **Downtown Campus Connector (DCC) stop**, prompting Plaintiff to **flee for safety**.

Plaintiff respectfully submits and alleges the following allegations supporting claims for civil conspiracy, assault, intentional infliction of emotional distress, violations under the Illinois Hate Crime Statute, Clery Act failures, and constitutional deprivations actionable under 42 U.S.C. § 1983.

**A. The criminal assault and hate-based misconduct**

- In **November 2024**, in Plaintiff's accommodation located in **Hyde Park, Cook County, Chicago, Illinois,** Plaintiff was physically and sexually assaulted by Shrivatsa Thulasiram (then identified as both a **staff and student at the University of Chicago**), who struck Plaintiff on the face and neck, forcibly knocking Plaintiff down and nearly causing severe injury against a metal bed stand.  Plaintiff believes that it wanted to go to hospital but believed its insurance will cover only 80% of cost that too in some specific hospitals and plaintiff has to bear the cost of 20% remaining, so ended up not going to hospital and took home medication that were prescribed by doctors from it's home country, short after gas exposure happened so plaintiff also took medicines for that too since bar for going to hospital was high and expensive as per strongly belief of plaintiff.

- Out of personal dignity, Plaintiff initially probably omitted to the responding Chicago Police Department (CPD) officers that Shrivatsa also struck Plaintiff in the private

parts. But at least at one instance plaintiff told that to some university individual on call after they interrogated Plaintiff.

- Immediately after the assault, Shrivatsa issued threats to Plaintiff, including vile comments about Plaintiff's family, caste, and national origin, and the next day explicitly told Plaintiff: "Go back to your third world country", accompanied by other threats including TOL (Threat of life).

- These statements and acts satisfy the elements of an Illinois hate crime under **720 ILCS 5/12-7.1** and implicate federal hate crime considerations under 18 U.S.C. § 249.

-

1. Plaintiff reported the assault and hate threats to multiple **University of Chicago offices**, including the President, Provost, UCPD (University Police), UChicago CARES, and to the sexual assault prevention office, and more (for which Plaintiff holds receipt(s)).

2.

9. The University took **no disciplinary action** against Shrivatsa whom it treated as a staff member (not as a staff and a student) despite his academic enrolment nor issued a **No Contact Directive (NCD)** which university officials admitted could have been imposed had Shrivatsa been formally classified as a student. This selective categorization and refusal to protect Plaintiff from an admitted assailant demonstrates deliberate institutional protection of Shrivatsa's future academic standing at the expense of Plaintiff's safety and rights. So court respectfully have a **federal question** that would not be the assailant Shrivatsa considered student since anyway his markings and grades for last quarter would have been gone to university in India from University of Chicago and it's staff/supervisors making him a student here (without providing any written proof and policy, single handedly and autocratically claiming him to be only staff and not student), and in that case how can university claim that he's not a student when person is doing academic work, completing degree, studying in USA, doing research for final degree thesis. Getting grades and evaluations from defendant university. All duties like this suggest he was a student and a staff as well in parallel as per all the common laws, torts, and doctrines. Further plaintiff believes he was being paid hourly unlike full time staff with benefits so he was in same condition as that of plaintiff and as university suggested they would have taken action if he would have been student that he was from all common rules. Stating such thing university protected itself from crime that happen by it's staff which would have defamed them because of their staff nature.

Furthermore, while stating that he is a staff not a student no documentation of clause etc of student manual was followed or mentioned to plaintiff, since that might have signalled nuanced condition also, so university unilaterally autocratically allegedly identified out of a sudden to him as a staff and not student since that was required to save him and save university to defame himself. That maybe a violation of not limited to Clery Act and other relevant rules and laws. On checking further plaintiff believes definition of student at the University of Chicago is not clear in policy handbook so court have federal question as plaintiff strongly allege and assert that he was a student and staff as well, and as it's not there in university policy, it was used as a tort by university as it's in their authority and favour to say whatever they want without written proof and evidence. Irrespective of whether we was a student and/or a staff member as determined by the holy court as a federal question he still did serious crime on plaintiff and the assiliant and the perpetrator defendants should be held accountable and plaintiff should be brought to justice in its own favour by the holy court.

3. By exercising powers analogous to state police such as issuing or declining NCDs which restrain individual freedom of movement the University acted as a **state actor under the public function doctrine**, and its failure to issue protective measures or discipline the assailant makes it liable under **42 U.S.C. § 1983** and associated doctrines. Defendants can give NCD to individuals only still that comes under state actor doctrine and or tort.

4. The University's indifference further resulted in Plaintiff's **academic expulsion shortly after this incident and other whistleblower reports**, while Shrivatsa was permitted to complete his program uninterrupted. This institutional choice to safeguard the perpetrator while retaliating against the victim evidences a **conspiracy to obstruct justice and protect the University's reputation** at the expense of Plaintiff's fundamental rights.

## D. Additional wrongdoing by university and state agents

13. Following Plaintiff's reports, Plaintiff received **threatening anonymous phone calls** advising Plaintiff to drop all claims against the University and Shrivatsa or face dire consequences, which included warnings to "go back" and cease legal action. The calls appeared via unfamiliar interfaces and did not log in Plaintiff's phone history, intensifying fears of sophisticated intimidation.

14. Plaintiff reasonably asserts the University chose to protect Shrivatsa's academic future and by extension, its own reputation by declining to discipline or expel him,

creating the inference of an **institutional conspiracy** to obstruct justice and shield wrongdoing.

15. University of Chicago officials explicitly acknowledged that the **Human Resources office could issue a No Contact Directive (NCD)**, a power traditionally reserved to governmental actors (restraining proximity & movement under threat of penalty). This demonstrates the **University acting under color of state law**, invoking the **state actor doctrine**.

16. However, University refused to issue an NCD because Shrivatsa was "staff," while simultaneously treating him as a student for academic purposes (he was completing his last undergraduate semester at UChicago, tied to his home institution in India, likely receiving an official transcript or credential from UChicago to graduate).

17. This collective institutional failure also violate the **Clery Act (20 U.S.C. § 1092(f))**, which requires universities to report campus-area crimes and offer protective measures, denying Plaintiff critical protections and failing to maintain an accurate campus crime log, while simultaneously leveraging its own quasi-policing powers (via UCPD and disciplinary bodies) in a biased, retaliatory manner.

13.

    13. Even after this incident, Plaintiff encountered Shrivatsa at local bus stops. On at least one occasion at the **DCC stop near Plaintiff's residence**, Shrivatsa rushed toward Plaintiff in an aggressive manner, forcing Plaintiff to flee with further evidence of continued intimidation and stalking-like conduct. Further many times in the presence of a general unknown random public in 172 stops near accommodation, the plaintiff got threatening aggressive stares and intimidation from the assailant.

Best

Dipesh Singla

dipeshsingla668@gmail.com

Filed in good faith, truthfully and as per best of knowledge and interpretations.

**caseliaison** <caseliaison@chicagocopa.org>

25 August 2025
at 19:28

To: Dipesh Singla <dipeshsingla668@gmail.com>

Dipesh                                                                          Singla
Via                                                                                Email

Log                              No.:                          2025-0002948
June                                                             19,2025

Dear                           Dipesh                         Singla:

The Civilian Office of Police Accountability (COPA) has determined that the complaint submitted to our office does not fall within our investigatory jurisdiction. Therefore, your complaint and all information gathered with respect to the incident have been referred to the Chicago Police Department's Bureau of Internal Affairs (BIA) for investigation.

All information about this investigation going forward can be obtained by contacting BIA directly. You may contact CPD's Bureau of Internal Affairs as provided below:

Telephone:                         (312)                        745-6310
Mail:

CPD Bureau of Internal Affairs
3510 South Michigan Ave, 5th Floor
Chicago, Illinois 60653

If you have any questions, or if for any reason you are unable to contact BIA to obtain information about your investigation, please feel free to contact our main office at 312-746-3609, press option 4 to speak with a case liaison between 9:00 a.m. and 5:00 p.m. (CST), Monday through Friday, or email us at CaseLiaison@chicagocopa.org. Please be sure to have the above reference Log No. available when you call so that we can quickly locate your case file.

Sincerely,


LaKenya                                                                                    White
*Interim                                    Chief                              Administrator*
*Civilian Office of Police Accountability*



**From:** Dipesh                 Singla                 <dipeshsingla668@gmail.com>
**Sent:** Friday,           August           22,         2025         11:34          PM
**To:** Dipesh         Singla         <dipeshsingla668@gmail.com>;         CaseManagement
<CaseManagement@chicagopolice.org>;                    Larry                    Snelling
<Larry.Snelling@chicagopolice.org>;      COPA_CMS      <COPA_CMS@chicagocopa.org>;
caseliaison
<caseliaison@chicagocopa.org>; police@cityofchicago.org; Equity@chicagopolice.org
**Subject:** Urgent: Criminal matter: Mail for CPD: Whistleblower and other protections
invoked


> [Warning: External email]

[Quoted text hidden]



--




**caseliaison caseliaison@chicagocopa.org via chicagogov.onmicrosoft.** Mon   25   Aug,
**com**                                                                    19:28

to me

Dipesh                                                              Singla
Via                                                                Email

Log                          No.:                          2025-0002948
June                         19,                                    2025

Dear                         Dipesh                          Singla:

The Civilian Office of Police Accountability (COPA) has determined that the complaint submitted to our office does not fall within our investigatory jurisdiction. Therefore, your complaint and all information gathered with respect to the incident have been referred to the Chicago Police Department's Bureau of Internal Affairs (BIA) for investigation.

All information about this investigation going forward can be obtained by contacting BIA directly. You may contact CPD's Bureau of Internal Affairs as provided below:

Telephone:                   (312)                          745-6310
Mail:
Bureau            of              Internal              Affairs,              CPD
                              3510 South Michigan Ave, 5th Floor
                              Chicago, Illinois 60653

If you have any questions, or if for any reason you are unable to contact BIA to obtain information about your investigation, please feel free to contact our main office at 312-746-3609, press option 4 to speak with a case liaison between 9:00 a.m. and 5:00 p.m. (CST), Monday through Friday, or email us at CaseLiaison@chicagocopa.org. Please be sure to have the above reference Log No. available when you call so that we can quickly locate your case file.

Sincerely,

LaKenya                                                            White

*Acting* *Chief* *Administrator*
*Civilian Office of Police Accountability*


**From:**From: Dipesh Singla dipeshsingla668@gmail.com
**Sent:** Friday, August 22, 2025 11:34 PM
**To:** Dipesh Singla dipeshsingla668@gmail.com;
CaseManagement CaseManagement@chicagopolice.org; Larry
Snelling Larry.Snelling@chicagopolice.org; COPA_CMS COPA_CMS@chicagocopa.org;
caseliaison caseliaison@chicagocopa.org; police@cityofchicago.org; Equity@chicagopolice.org;
**Subject:** Urgent: Criminal matter: Mail for CPD: Whistleblower and other protections
invoked

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>    26 August 2025 at 18:24

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>    29 August 2025 at 00:06

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

 **Dipesh Singla <dipeshsingla668@gmail.com>**

---

**2025-0002948 - UNDER INVESTIGATION Email_Key: CPGAA5V0GO0ISATB3FUTTA197ZV903**

9 messages

---

**Case Management**                    22 August 2025 at 03:31

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

To reply to this email please click here.

| Re: | Log | No. | 2025-0002948 |
| Incident | Date: | | 11/22/2024 |
| Today's | Date: | | 8/21/2025 |

Dear                          Dipesh                          Singla

The Bureau of Internal Affairs (BIA) Accountability Section is continuing to investigate the above-referenced complaint. Pursuant to Chicago Police Department Special Order 08-01, the Accountability Section is required to notify certain parties, if the Accountability Section has not completed an investigation within 90 days of the date the complaint was submitted. An additional notification will be made if the Accountability Section has not completed an investigation within 180 days and thereafter at least once every 60 days. Though we are working diligently to complete our investigation, it remains open currently for the following reason: .Assigned to District Sergeant for Investigation Elbert THOMAS #2672 5101 S. Wentworth Ave Chicago IL. 60609

Once the Accountability Section completes its investigation into the above referenced matter, you will receive a letter detailing our findings.

Chicago                 Police                 2nd                 District
5101                    S.                     Wentworth                Ave
Chicago,                                       Il                       60609
(312) 747-8366

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

 **Letter.docx**
488K

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          22 August 2025 at 04:58

To: CaseManagement <CaseManagement@chicagopolice.org>

Hi

I tried multiple times but call is not connecting can you please ask questions here so that I can answer them, since unable to connect.

br

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          22 August 2025 at 14:21

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          22 August 2025 at 15:09

To: Dipesh Singla <dipeshsingla668@gmail.com>

Bcc: Larry.Snelling@chicagopolice.org, COPA_CMS <COPA_CMS@chicagocopa.org>, caseliaison <caseliaison@chicagocopa.org>, CaseManagement <CaseManagement@chicagopolice.org>

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                22 August 2025 at 21:29
To: police@cityofchicago.org

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                22 August 2025 at 21:50
To: police@cityofchicago.org

3127478366 sgt thomas

2nd dist.

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                26 August 2025 at 19:07
To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                29 August 2025 at 20:27
To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                5 September 2025 at 00:42
To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

**Exhibit 3: Department of Education, Screen Shot to show only 1 OCR Case**



**Exhibit 4: Student Body At University of Chicago (Google Search Gemini Result)**



**Exhibit 5: Department of Education, Office of Civil Rights, Stephen Email allegedly to trap dismissal, signalling bad faith and biasness towards university.**

**Your OCR Complaint: Additional Information Requested**

3 messages

**Worthington, Stephen** <Stephen.Worthington@ed.gov> 23 July 2025 at 03:19

To: Dipesh Singla <dipeshsingla668@gmail.com>

Dear Mr. Singla:

I am an attorney with the U.S. Department of Education's Office for Civil Rights (OCR). I am contacting

you about the civil rights complaint you filed against the University of Chicago on May 17, 2025.

The materials you've submitted with your complaint indicate that you may have filed your allegations

with other agencies or in court. To help ensure that my office processes your complaint appropriately,

please send me the following information:

1. A list of courts, agencies, or other entities where you have filed any of the allegations in your OCR

complaint, with a brief description of the allegations that were filed with each entity.

2. Copies of all communications you've received from each entity regarding the allegations.

Please send me the requested information by the end of this week (July 25, 2025). If you anticipate

having difficulty responding in that timeframe, please let me know as soon as possible.

Stephen Worthington

Attorney | Office for Civil Rights | U.S. Department of Education

stephen.worthington@ed.gov | (202) 219-2324

**Dipesh Singla** <dipeshsingla668@gmail.com> 23 July 2025 at 05:46

To: "Worthington, Stephen" <Stephen.Worthington@ed.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

Hi

thanks for your email,

Matter is Filed in Hon'ble court of Northern District of Illinois. just a couple of days ago.

OSHA (due to statute not doing anything but plaintiff appealed that matter was of around November or december of last

year and the limitation is small for reporting), Child rights (forgot agency name can check that going fwd), IWCC (hearing

next month) **etc** (it's filed there for the job parts). Full version of the complaint was given to them. Due to limited resources

the same complaint was shared asking the agencies to check there part of complaint they deal with. But as our DOEDU

deal with most of this matter this is main agency for this matter for what I was waiting for. So please check full doc. some

things are court and damages related in front and back I guess that maybe ignore to save time as they're more relevant to

hon'ble court.

Criminal part of this with CPD (I think CPD BIA gave case number etc), FBI (not doing anything saying no hate crime so

waiting for knowledgeable attorney to deal with it. Especially if the hon'ble court assigns one or I would be able to get

legal aid somehow, note I don't have representation for **ANY** of this, and I am actively reaching out for it.)

So yes these are the major ones I guess I may need to check.

This was the first agency I think I filed due to the relevance of the matter and seeming authority to deal with this is with

the CR division of Dept of Education.

9/23/25, 1:39 AM Gmail - Your OCR Complaint: Additional Information Requested

https://mail.google.com/mail/u/0/?ik=77699a87ef&view=pt&search=all&permthid=thread-f:1838385407333793730&simpl=msg-f:183838540733379373… 1/2

Copy is attached herewith. (Not proofread or updated by attorney yet., things may change or improve to save time etc for

agencies and courts as per future attorney guidance and strategy.)

Most allegations come under DOEdu jurisdiction so I'm looking forward to it, and it's filled timely also.

**Outcome of Your OCR Complaint**

11 messages

**Worthington, Stephen** <Stephen.Worthington@ed.gov> 1 August 2025 at 04:07

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

Dear Dipesh Singla:

Please find attached a letter explaining the outcome of your OCR complaint against the University of

Chicago.

Stephen Worthington

Attorney | Office for Civil Rights | U.S. Department of Education

stephen.worthington@ed.gov | (202) 219-2324

**C-DIS-U_Chi_.pdf**

191K

**Dipesh Singla** <dipeshsingla668@gmail.com> 1 August 2025 at 04:41

To: "Worthington, Stephen" <Stephen.Worthington@ed.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

Hello Stephen,

How can we appeal this?

Best.

[Quoted text hidden]

**Worthington, Stephen** <Stephen.Worthington@ed.gov> 1 August 2025 at 04:49

To: Dipesh Singla <dipeshsingla668@gmail.com>

OCR's determinations are not appealable. As explained in the letter, however, you may have the right to

refile your allegations within 60 days after the court proceedings have terminated if there has been no

decision on the merits or settlement of the allegations. Please note that OCR may also dismiss your

complaint if your allegations are pending with another governmental agency. You can read more about

OCR's standards and procedures in our *Case Processing Manual*.

**From:** Dipesh Singla <dipeshsingla668@gmail.com>

**Sent:** Thursday, July 31, 2025 5:12 PM

**To:** Worthington, Stephen <Stephen.Worthington@ed.gov>; Dipesh Singla <dipeshsingla668@gmail.com>

**Subject:** Re: Outcome of Your OCR Complaint

9/23/25, 1:35 AM Gmail - Outcome of Your OCR Complaint

https://mail.google.com/mail/u/0/?ik=77699a87ef&view=pt&search=all&permthid=thread-f:1839203799788179165&simpl=msg-f:183920379978817916… 1/3

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you**

**recognize the sender and know the content is safe.**

[Quoted text hidden]

**Dipesh Singla** <dipeshsingla668@gmail.com> 1 August 2025 at 13:12

To: "Worthington, Stephen" <Stephen.Worthington@ed.gov>

so 180 days statue is over in case refiled this case in ocr?

[Quoted text hidden]

**Worthington, Stephen** <Stephen.Worthington@ed.gov> 1 August 2025 at 20:05

To: Dipesh Singla <dipeshsingla668@gmail.com>

Generally, OCR will only take action with respect to allegations that have been filed within 180 calendar

days of the alleged discrimination or retaliation. OCR may grant a waiver of the 180-day filing

requirement under certain circumstances, such as when the allegations were being processed by

another agency or a court. Please see Sections 106 and 107 of the *Case Processing Manual* for more

information.

[Quoted text hidden]

**Exhibit 6: OCR DOE LETTER DISMISSAL**

**UNITED STATES DEPARTMENT OF EDUCATION**

**OFFICE FOR CIVIL RIGHTS**

July 31, 2025

**Via e-mail only to:** dipeshsingla668@gmail.com

Dipesh Singla

Re: University of Chicago (IL) – OCR Case Number 05-25-2445

Dear Dipesh Singla:

On May 17, 2025, the U.S. Department of Education, Office for Civil Rights (OCR), received the complaint you filed against the University of Chicago (the University).

OCR processes complaints in accordance with its Case Processing Manual (CPM) (February 19,

2025). Section 108(i) of OCR's CPM states that OCR may dismiss an allegation if the same or similar allegation based on the same operative facts has been filed either by the complainant or someone other than the complainant against the same recipient with state or federal court.

On July 22, 2025, you sent OCR an email stating that you also filed your allegations in the "court

of Northern District of Illinois" a few days earlier. Publicly available information indicates that you filed suit against the University in the U.S. District Court for the Northern District of Illinois

on July 16, 2025 under the case number 25-cv-8098. Based on this information, OCR has determined that you have filed the same or similar allegations based on the same operative facts as your OCR complaint against the University in federal court. OCR is therefore dismissing your

complaint as of the date of this letter.

You may refile your complaint within 60 days following termination of the court proceeding if there has been no decision on the merits or settlement of the complaint allegations. A dismissal with prejudice is considered a decision on the merits.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal

statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's

formal policy statements are approved by a duly authorized OCR official and made available to

the public. Individuals who file complaints with OCR may have the right to file a private suit in

court regardless of OCR's determination.

Please be advised that the University must not harass, coerce, intimidate, discriminate, or

otherwise retaliate against an individual because that individual asserts a right or privilege under

a law enforced by OCR or files a complaint, testifies, assists, or participates in a proceeding

under a law enforced by OCR. If this happens, the individual may file a retaliation complaint

with OCR.

Under the Freedom of Information Act, it may be necessary to release this document and related

correspondence and records upon request. If OCR receives such a request, it will seek to protect,

to the extent provided by law, personally identifiable information, that, if released, could

reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you have any questions about this letter, you may contact Stephen Worthington by telephone

at (202) 219-2324 or by e-mail at stephen.worthington@ed.gov.

Sincerely,

*for* Sandra J. Roesti

Team Leader


**Exhibit 7: OFCCP Emails**

**Dipesh Singla** <dipeshsingla668@gmail.com> 22 August 2025 at 21:27

To: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

[Quoted text hidden]

**C-DIS-U_Chi_.pdf**

191K

**Gomez, Cecilia - OFCCP** <Gomez.Cecilia@dol.gov> 22 August 2025 at 21:28

To: Dipesh Singla <dipeshsingla668@gmail.com>

In accordance with public health guidelines, in response to the current COVID-19 pandemic, the Office of Federal

Contract Compliance Programs (OFCCP) is implementing an agency-wide telework. The U.S. Department of Labor and

OFCCP remain open and available to serve you. OFCCP will continue pursuing its important mission of ensuring equal

employment opportunity while making adjustments to ensure all of its activities are consistent with current public health

guidelines. I can be [reached by phone at 972-850-2592 and/or] [email at gomez.cecilia@dol.gov]. In addition, if you need

assistance with any other OFCCP matters related to the health crisis, please contact our Help Desk at 1-800-397-6251.

The hearing impaired may call the text telephone (TTY) at 1-877-889-5627 or submit an inquiry online.

**Dipesh Singla** <dipeshsingla668@gmail.com> 29 August 2025 at 21:51

To: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

[Quoted text hidden]

**C-DIS-U_Chi_.pdf**

191K

**Gomez, Cecilia - OFCCP** <Gomez.Cecilia@dol.gov> 29 August 2025 at 21:51

To: Dipesh Singla <dipeshsingla668@gmail.com>

9/23/25, 1:35 AM Gmail - Outcome of Your OCR Complaint

https://mail.google.com/mail/u/0/?ik=77699a87ef&view=pt&search=all&permthid=thread-f:1839203799788179165&simpl=msg-f:183920379978817916… 2/3

[Quoted text hidden]

**Dipesh Singla** <dipeshsingla668@gmail.com> 29 August 2025 at 21:52

To: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

[Quoted text hidden]

**Gomez, Cecilia - OFCCP** <Gomez.Cecilia@dol.gov> 29 August 2025 at 21:52

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

9/23/25, 1:35 AM Gmail - Outcome of Your OCR Complaint

https://mail.google.com/mail/u/0/?ik=77699a87ef&view=pt&search=all&permthid=thread-f:1839203799788179165&simpl=msg-f:183920379978817916... 3/3

**Exhibit 8: OSHA Email**

Re: The University of Chicago/Singla/301054321

Dear Dipesh Singla:

This letter is in response to your July 3,2025, request for review (RFR) of the decision to dismiss

your complaint against University of Chicago. The Directorate of Whistleblower Protection

Programs completed a review of the investigative case file and determined that your complaint

was properly dismissed as untimely.

Complaints brought under Section 11(c) of the Occupational Safety and Health Act of 1970 must

be filed within 30 days of an alleged adverse action. You filed your complaint on May 19, 2025, 

which was 130 days after the alleged adverse employment action. The circumstances of the case

do not warrant equitable tolling. Consequently, your complaint was untimely.

Please note that this is the final decision of the Secretary of Labor; your case is now closed

Sincerely,

Stacy McGuire, Acting Director

Directorate of Whistleblower Protection Programs

cc: Regional Office

Respondent

**Exhibit 9: OFCCP Letter Sept 5 Denial**

**U.S. Department of Labor**    Office of Federal Contract Compliance Programs
Southwest and Rocky Mountain Regional Office
525 South Griffin Street, Suite 840
Dallas, TX 75202



Sent via Electronic Mail: dipeshsingla668@gmail.com

September 5, 2025

Dipesh Singla
5118 S Blackstone Ave.
Apt. 1N
Chicago, IL 60615

Complaint Number: I00318715

Dear Dipesh Singla:

The Office of Federal Contract Compliance Programs (OFCCP) has reviewed your complaint and has determined that we will not be investigating the complaint because the complaint has been dual filed with the U.S. Equal Employment Opportunity Commission ((EEOC) Charge No. 440-2025-07788). Therefore, we are closing this complaint.

If you have questions about this correspondence, please contact Cecilia Gomez, Investigator at 972-850-2592 or gomez.cecilia@dol.gov.

Sincerely,

*Kimone Paley*

Kimone Paley
Dallas District Director

**Exhibit 10: OFCCP Email**

 **Dipesh Singla <dipeshsingla668@gmail.com>**

---

**I00318715 - The University of Chicago -Closure letter 09/05/2025**
4 messages

---

**Gomez, Cecilia - OFCCP** <Gomez.Cecilia@dol.gov>     5 September 2025 at 22:35

To: Dipesh Singla <dipeshsingla668@gmail.com>

Cc: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

Good afternoon, Mr. Singla,

Please reference the attached correspondence.

Have a good weekend.

**Cecilia Gomez, Investigator**

**US Department of Labor**

**Office of Federal Contract Compliance Programs**

**Dallas District Office**

**Desk: 972-850-2592**

**Fax: 972-850-2651**

**gomez.cecilia@dol.gov**

 **I00318715-University of Chicago-Closure letter- 9.5.2025.pdf**
166K

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    6 September 2025 at 04:54

To: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

Cc: "Gomez, Cecilia - OFCCP" <Gomez.Cecilia@dol.gov>

But it's not possible, since "Charge" with EEOC had not been filed yet, charge of EEOC will be filed after the first intake interview (Nov 2025 scheduled) so it's complained but no official charge had been filed yet as per best of my knowledge. I have to file the court case to avoid any particular law statute issue. without RTS from EEOC, since they can also do it after the charge is officially filed which is not the case right now as per my belief and knowledge.

So basically it's an inquiry with an interview scheduled in november till date not yet a charge.



same basis. The rules are slightly different for age discrimination charges. For age discrimination, the filing deadline is only extended to 300 days if there is a **state** law prohibiting age discrimination in employment **and** a state agency or authority enforcing that law. The deadline is **not** extended if **only** a local law prohibits age discrimination.

## Online – Use the EEOC Public Portal to Submit an Inquiry, Schedule an Appointment, and File a Charge

A Charge of Discrimination can be completed through our online system after you submit an online inquiry and we interview you. EEOC's Public Portal asks you a few questions to help determine whether EEOC is the right federal agency to handle your complaint involving employment discrimination.

## In Person at an EEOC Office

Each EEOC office has appointments, which you can schedule online through the **EEOC Public Portal.** Offices also have walk-in appointments. Go to https://www.eeoc.gov/field-office for information about the office closest to you.

In the EEOC's experience, having the opportunity to discuss your concerns with an EEOC staff member in an interview is the best way to assess how to address your concerns about employment discrimination and determine whether filing a charge of discrimination is the appropriate path for you. In any event, the final decision to file a charge is your own. An EEOC staff member will prepare a charge using the information you provide, which you can review and sign online by logging into your account.

You may file a charge of employment discrimination at the EEOC office closest to where you live, or at any one of the EEOC's 53 field offices. Your charge, however, may be investigated at the EEOC office closest to where the discrimination occurred. If you are a U.S. citizen working for an American company overseas, you should file your charge with the EEOC field office closest to your employer's corporate headquarters.

It is always helpful if you bring with you to the meeting any information or papers that will help us understand your case. For example, if you were fired because of your performance, you might bring with you the letter or notice telling you that you were fired and your performance evaluations. You might also bring with you the names of people who know about what happened and information about how to contact them.

**also the doc I shared also mentions Inquiry number, not a charge number as mis-stated in your letter clearly , since charge have not being filed yet**

**EEOC (Inquiry) Number:** 440-2025-07788

**INQUIRY INFORMATION**

**INQUIRY OFFICE**
    **Receiving:** Chicago District Office
    **Accountable:** Chicago District Office

So I request you to investigate to that I would be brought to justice.

best regards.

[Quoted text hidden]

**Gomez, Cecilia - OFCCP** <Gomez.Cecilia@dol.gov>          6 September 2025 at 04:55

To: Dipesh Singla <dipeshsingla668@gmail.com>

In accordance with public health guidelines, in response to the current COVID-19 pandemic, the Office of Federal Contract Compliance Programs (OFCCP) is implementing an agency-wide telework.  The U.S. Department of Labor and OFCCP remain open and available to serve you.  OFCCP will continue pursuing its important mission of ensuring equal employment opportunity while making adjustments to ensure all of its activities are consistent with current public health guidelines. I can be [reached by phone at 972-850-2592 and/or] [email at gomez.cecilia@dol.gov]. In addition, if you need assistance with any other OFCCP matters related to the health crisis, please contact our Help Desk at 1-800-397-6251.  The hearing impaired may call the text telephone (TTY) at 1-877-889-5627 or submit an inquiry online.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          22 September 2025 at 23:42

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

**Exhibit 11: Department of Justice Email SS(Screenshots)**

## Response: Your Civil Rights Division Report - 646656-RKN from the Disability Rights Section

Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrigh...    18:14 (4 minutes ago)

to me



U.S. Department of Justice
**Civil Rights Division**   |   civilrights.justice.gov

Dear Dipesh Singla,

You contacted the Department of Justice on August 4, 2025. After careful review of what you submitted, we have decided not to take any further action on your complaint.

## What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on our review, we have decided not to take any further action on your complaint.

## Thank you for submitting a report to the Civil Rights Division 📩 Inbox ×

**DOJ Civil Rights - Do Not Reply …**   Wed 6 Aug, 22:20 (8 days ago)   ☆ 😊 ↩ ⋮

to me ▾



*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **647832-ZZP**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect

**DOJ Civil Rights - Do Not Reply ...**   Thu 7 Aug, 06:45 (7 days ago)   ☆  🙂  ↩  ⋮

to me  ▾



**U.S. Department of Justice**
# Civil Rights Division

civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **648077-KDK**.



## Contact

**civilrights.justice.gov**

U.S. Department of
Justice
Civil Rights
Division
950 Pennsylvania
Avenue, NW

(202) 514-3847
1-855-856-1247 (toll-free)
Telephone Device for
the Deaf
(TTY) (202) 514-0716

## Thank you for submitting a report to the Civil Rights Division ➤ Inbox ×

🖨 ⬚

**DOJ Civil Rights - Do Not Repl...**    Mon 4 Aug, 19:50 (10 days ago)   ☆   ☺   ↩   ⋮

to me ▾



*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **646656-RKN**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect

# Thank you for submitting a report to the Civil Rights Division 📩 Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdo...   Tue 17 Jun, 07:52   ☆   ☺   ↩   ⋮

to me ▾



*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **625271-XKR**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect



### Response: Your Civil Rights Division Report - 617867-BNB from the Criminal Section  📩 Inbox ✕     ↱ ⤡ 🖨 ⬈

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>     Tue 17 Jun, 03:48     ☆ 🙂 ↩ ⋮
to me ▾

**U.S. Department of Justice**
**Civil Rights Division**     │ civilrights.justice.gov

Dear Dipesh Singla,

You contacted the Civil Rights Division on May 31, 2025. Your report number is 617867-BNB.

The Criminal Section of the Civil Rights Division is responsible for enforcing federal criminal civil rights statutes. Much of our enforcement activity relates to the investigation and prosecution of deprivations of civil rights under color of law. These matters generally involve allegations of excessive physical force or sexual abuse by law enforcement officers.

The information that you furnished is insufficient to permit us to determine the existence of a possible violation of federal criminal civil rights statutes. Therefore, we are unable to authorize an investigation of your complaint at this time. However, we will consider the allegation further if you provide specific information concerning the circumstances involved in your complaint. You



### Response: Your Civil Rights Division Report - 617025-CPB from the Disability Rights Section  📩 Inbox ✕     🖨 ⬈

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>     Tue 10 Jun, 01:12     ☆ 🙂 ↩ ⋮
to me ▾

**U.S. Department of Justice**
**Civil Rights Division**     │ civilrights.justice.gov

Dear Dipesh Singla,

You contacted the Department of Justice on May 29, 2025. After careful review of what you submitted, we have decided not to take any further action on your complaint.

## What we did:
——

Team members from the Civil Rights Division reviewed the information you submitted. Based on our review, we have decided not to take any further action on your complaint. We receive several thousand reports of civil rights violations each year and cannot take direct action on every report.



Response: Your Civil Rights Division Report - 617027-QNF from the Disability Rights Section  📩  Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>   Tue 10 Jun, 01:10

to me ▾

U.S. Department of Justice
**Civil Rights Division**

civilrights.justice.gov

Dear Dipesh Singla,

You contacted the Department of Justice on May 29, 2025. After careful review of what you submitted, we have decided not to take any further action on your complaint.

## What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on our review, we have decided not to take any further action on your complaint. We receive several thousand reports of civil rights violations each year and cannot take direct action on every report.



Thank you for submitting a report to the Civil Rights Division  📩  Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>   Sat 31 May, 16:39

to me ▾

U.S. Department of Justice
**Civil Rights Division**

civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **617867-BNB**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect

### 1. We review your report



Response: Your Civil Rights Division Report - 617020-WPV from the Employment Litigation Section · Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>     Fri 30 May, 21:31
to me

**U.S. Department of Justice**
**Civil Rights Division**                                     civilrights.justice.gov

Dear Dipesh Singla,

Thank you for contacting the Department of Justice on May 29, 2025. We reviewed the information you provided and determined your report of a civil rights violation would more appropriately be handled by another federal agency.

## What we did:

Your record number is 617020-WPV.

Team members from the Civil Rights Division reviewed the information you submitted. Based on your report, our team determined that you allege employment discrimination or raise other

---

Thank you for submitting a report to the Civil Rights Division · Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>     The 29 May, 21:45
to me

**U.S. Department of Justice**
**Civil Rights Division**                                     civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **617020-WPV**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect

### 1. We review your report



**DOJ's Civil Rights - Do Not Reply** civilrightsdonotreply@mail.civilrights.usdoj.gov          The 29 May, 21:48

to me

**U.S. Department of Justice**
**Civil Rights Division**                                                   civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **617025-CPB**.

**Contact**

civilrights.justice.gov

mail   U.S. Department of Justice        phone  (202) 514-3847
       Civil Rights Division                   1-855-856-1247 (toll-free)
       950 Pennsylvania Avenue, NW             Telephone Device for the Deaf

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>          The 29 May, 21:51

to me

**U.S. Department of Justice**
**Civil Rights Division**                                                   civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **617027-QNF**.

**Contact**

civilrights.justice.gov

mail   U.S. Department of Justice        phone  (202) 514-3847
       Civil Rights Division                   1-855-856-1247 (toll-free)
       950 Pennsylvania Avenue, NW             Telephone Device for the Deaf
       Washington, D.C. 20530-0001             (TTY) (202) 514-0716



Response: Your Civil Rights Division Report - 612100-LMS from the Disability
Rights Section   Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>   Wed 28 May, 23:13
to me

### U.S. Department of Justice
## Civil Rights Division
civilrights.justice.gov

Dear Dipesh Singla,

You contacted the Department of Justice on May 17, 2025. After careful review of what you
submitted, we have decided not to take any further action on your complaint.

## What we did:
___

Team members from the Civil Rights Division reviewed the information you submitted. Based on
our review, we have decided not to take any further action on your complaint. We receive
several thousand reports of civil rights violations each year and cannot take direct action on
every report.

Thank you for submitting a report to the Civil Rights Division   Inbox ×

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>   Sun 18 May, 08:08
to me

### U.S. Department of Justice
## Civil Rights Division
civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number
for tracking. Your record number is: **612100-LMS**.

If you reported an incident where you or someone else has experienced or is still experiencing
physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect
___

### 1. We review your report

**Exhibit 12: IDOL Email**

 **Dipesh Singla <dipeshsingla668@gmail.com>**

---

**Child Labor Complaint with the IL Dept of Labor**
17 messages

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>                14 June 2025 at 01:00

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

Hello Depesh Singla,


I need to ask you a few questions regarding your Child Labor complaint you submitted on May 26th, 2025.

Please call me at the number below.




Ezell Humphrey

Compliance Officer, Illinois Department of Labor

160 N. LaSalle St., Chicago, IL 60601

Cell # (312) 550-8580

Email: Ezell.Humphrey2@illinois.gov



State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail

and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    14 June 2025 at 01:26

To: "Humphrey, Ezell" <Ezell.Humphrey2@illinois.gov>

Hi

My phone number is not working it works rarely during day, not being in usa

Can you please write questions, i wll type answer here, and that would be preferable too.

Best.

[Quoted text hidden]

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>                    14 June 2025 at 02:02

To: Dipesh Singla <dipeshsingla668@gmail.com>

Name:_____

Current address_____

Current phone number_____

Are you willing to testify in a potential court proceeding?

What is your relationship to the minor?

What is your relationship to the employer?

The name of the employer/company?

Business or Industry type?

Employer/Company address?

Employer phone number and email address?

Name of Manager or Person in Charge?

Their Job title?

The number of minors you saw working?

The number of employees you saw working?

Describe what you say? Dates/Times/Type of work being performed? And anything else you might think is relevant?

Name and contact information of minor(s)?

Were there any minors working before 7:00 am?

Were there any minors working after 7:00 pm?

Were there any minors working after 9:00 pm?

What type of work was the minor performing? Did you see any hazardous or unsafe work?

Did you see a minor get injured or hurt?

If yes, describe what happened, or what you saw?

Do you know how much the minor was being paid per hour?

Do you know if the minor got a lunch/dinner break?

Was there an employment agency involved?

If yes, do you know their name?

Is there anything else you would like to tell me about this situation?

Thank you for your time and submitting the complaint.

**Ezell Humphrey**

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    14 June 2025 at 03:40

To:    "Humphrey,    Ezell"    <Ezell.Humphrey2@illinois.gov>,    Dipesh    Singla
<dipeshsingla668@gmail.com>


Keep my details and me anonymous. Also, some of the answers were already in a prior email. This is a good-faith whistleblower email. Keep me posted about process and updates as soon as you can.

Since will be filing a lawsuit soon civil + criminal against Univ, sharing my details may tamper lawsuit (however, any immediate guidance would be highly appreciated about it like filing case, pro bono working resources, and lawyers)


Name: Dipesh Singla


Current address: No answer since now in the USA (so Anonymous good faith whistleblower complaint)


Current phone number +17734571046 (don't use as it rarely works, prefer this email)


Are you willing to testify in a potential court proceeding?

 Yes(After investigation process from your office, 100%, for the sake of children safety and education) (Also, just so you know this complaint is a small part of overall claims I am gonna sue university for shortly, so this investigation may help in that particular portion of overall complaint, I am still waiting on few lawyers to reply back if they don't I am gonna sue them anyways and this matter will be part of lawsuit, so just wanted to make it clear here, I am doing this as whistleblower and as an eyewitness)

What is your relationship to the minor?

 No relation

What is your relationship to the employer?

 I was a student previously at UChicago (Master's Program)

The name of the employer/company?

The University of Chicago


Business or Industry type?

 Non-Profit and Federally Funded "Educational" Institution


Employer/. Company address?

 5801   S   Ellis   Ave,   Chicago,   IL   60637,   United   States


Employer phone number and email address?

 773.702.1234,  and whose email (Check internet on uchicago.edu)


Name of Manager or Person in Charge?

No idea as of now


Their Job title?

No idea as of now


The number of minors you saw working?

 1 (in one other event as mentioned in prior email there was another not sure the apparent age of  kid so not much empasis on that for this whistleblower)

The number of employees you saw working?


Describe what you say? Dates/Times/Type of work being performed? And anything else you might think is relevant?

 please check last email and the attached doc here again as asked last time to fill. (copied below now also "as a whistle...."

Name and contact information of minor(s)?

 Not known

Were there any minors working before 7:00 am?

 Not known

Were there any minors working after 7:00 pm?

 Not known

Were there any minors working after 9:00 pm?

 Not known

What type of work was the minor performing? Did you see any hazardous or unsafe work?

copying from complaint this was shared last time in email to your team:

As a whistleblower acting in good faith under applicable state and federal protection laws, the plaintiff respectfully brings to light observations that may raise serious legal and compliance issues concerning child labor and event oversight on the University of Chicago campus.

The plaintiff recalls that during the summer of 2024, on a bright and sunny afternoon, a university-hosted event occurred in the small quad outside the Regenstein Library. At this event, a minor child, whose identity is unknown, was observed handing out ice cream sticks to attendees. It is unclear whether the child was employed by the University of Chicago, affiliated with a third-party vendor, or connected to a university proxy. The date and official name of the event are not known but can be checked, but event was sponsored and facilitated by the University.

Additionally, the plaintiff recalls that, at a separate event held near the John Crerar Library quad, another minor was possibly observed working at a food stall. Although the identity and employment relationship of this second child are not clear, it is possible that he was assisting a parent. However, due to the limited context and lack of formal verification, this observation is noted here only as a potential concern.

If either or both instances involved the employment or participation of minors in university-affiliated events without proper supervision, clearance, or legal compliance, the University may be in violation of several applicable laws and standards. These include:

- **Illinois Child Labor Law (820 ILCS 205/1 et seq.)**, which restricts employment of minors and imposes conditions on their participation in public and commercial activities;

- **Fair Labor Standards Act (FLSA, 29 U.S.C. § 212)**, which imposes federal restrictions on the employment of minors, including permissible duties, required work permits, and hours;

- **Illinois Department of Public Health Food Code**, which governs who may handle or distribute food at public events, particularly in regard to unlicensed or untrained individuals;

- **University of Chicago's Youth Program and Campus Safety Guidelines**, which are presumed to require clearance, training, and adult supervision for any minor participating in campus programming;

- **Illinois Whistleblower Act (740 ILCS 174/)** and federal whistleblower laws, which protect individuals reporting potential legal or regulatory violations in good faith. Federal Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)) — if federal funds or programs were involved.

·    **Sarbanes-Oxley and Dodd-Frank protections**, if tied to misuse of university financial systems, grant funds, or misreporting.

The plaintiff raises these concerns to ensure that children are not being placed at risk and that the University of Chicago adheres to applicable labor, safety, and institutional compliance obligations. An investigation into these incidents is respectfully urged, and the plaintiff seeks protection under applicable whistleblower statutes for submitting this disclosure in the public and institutional interest.

**Relief Requested:**

- **Immediate investigation** into the identity of the minor and affiliation with the University.

- Review of event authorization procedures and compliance with child labor, safety, and food handling regulations.

- **Preservation of whistleblower protections** and assurance against retaliation for raising these concerns in good faith.

---

Did you see a minor get injured or hurt?

If yes, describe what happened, or what you saw?

No idea as of now


Do you know how much the minor was being paid per hour?

 No idea as of now


Do you know if the minor got a lunch/dinner break?

 No idea as of now


Was there an employment agency involved?

If yes, do you know their name?

 No idea as of now


Is there anything else you would like to tell me about this situation?

 Some things are already mentioned in the initial email, and the form is filled. Also, one small unsure thing either at JCL or reg (probably reg, ice cream kid) outside events, plaintiff believes while talking to one apparent kid doing food work told his age is around 12, and also he told he came from some other state, however since it has been many months that's not completely reaclled but wanted to mention so that it may help in your investigation


Please let me know the updates on the case and keep me anonymous as of now, especially until the filing of the lawsuit, which will have this one as a part, most probably rest whatever future attorney may say if I get one in the near future.

br

[Quoted text hidden]

📄 **childlaborlawcomplaintform (1).pdf**
509K

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>          16 June 2025 at 19:18

To: Dipesh Singla <dipeshsingla668@gmail.com>

Hello Dipesh Singla,

I have follow-up questions. That is why it is preferred to do an interview over the phone.

Do you know if the minor was being paid?

To your knowledge, the minor was not being managed or supervised by anyone?

Was the ice cream sales for charity?

Why did you wait almost a year to submit the complaint?

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          16 June 2025 at 21:57

To:  "Humphrey,  Ezell"  <Ezell.Humphrey2@illinois.gov>,  Dipesh  Singla
<dipeshsingla668@gmail.com>

Do you know if the minor was being paid?

No, just so you know as mentioned in above, it's unclear who was he managed as far as payment is concerned; even if by univ, they get payroll biweekly online(so as an individual eyewitness how can I even have idea about it since mostly everything is on backend), also if in case he was managed by university proxy especially as far as payment is concerned, it's not known how much, how was, when he was getting paid. As a concerned person, this thing got stuck in mind unlike other attendees (as it seems) about how can people easily allow it in first world country with super strong laws, but had to kept this because probably of fear as an international student and as I was scared form alleged autocratic univ like this for adverse action. I also whistleblown on other matters, and adverse action has been taken each time I whistleblown, but I don't think everything needs to be discussed here since those matters are probably separate from this one. That's why I have to sue the univ shortly.

To your knowledge, the minor was not being managed or supervised by anyone?

No, there was no person who seemed to manage him as such. Haven't seen him managed by anyone or working with someone else on his ice cream cart.

Was the ice cream sales for charity?

It was food for an event, so food for people attending it (No charity), univ had food stalls (I think 2 stalls for burgers and also they had grills for roasting patties, lot's of cold drinks, and chips, etc), and seperatly ice cream was being handed over by that kid.

Why did you wait almost a year to submit the complaint?

I was scared of adverse action by the university, and also didn't know fully how much illegal it is in the USA. Also, I believe/allege, as it seems no one else has whistleblown this to you/your team, there may be a chilling effect on child labour at university by maybe staff as well as the executive body, and students. I believe I **may have** discussed it with some people at some point of time at Harris School, SSCS office (I was working as a student employee), and/or some events at the university, but not 100% sure about it now (I belive I had but not 100% sure as of now), since it was weired and so shocking thing for me to see couple of times like childrens doing these works.

Let me know if you have some other questions.

BR

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                 1 August 2025 at 20:35

To: "Humphrey, Ezell" <Ezell.Humphrey2@illinois.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

Hi Ezell,

I hope this email finds you well,

I don't know where this investigation is right now, or had it even begun or not but I have a really important detail to share with you.

I believe most probably this was the event:

Summer Kick off BBQ
12-2 pm
Bartlett Quad

~June 13 2024

I was at the event there was a group of Italian origin students that sat with me on the same table, one of them was PhD in Maths, others were mostly Booth and Saieh(econ) PhD Students or research professionals (maybe total 4 people first 2 came, then again 2 came on table to sit, but most probably as I remember all were friends/know each other).

I have a number of one student however on inquiry he said he doesn't remember anything and also he asked his friend. That friend also told she didn't remember anything, I don't know if it's wise to share his contact information or not. there were food, drinks, bubbles(like the one we blow air in and it makes lots of temporary bubbles, on the table (that's how I remembered it after looking kid here playing with it)),

*maybe there was music also there.


Please let me know if the process is even going on and if this may help.

best.




Some details:

[Quoted text hidden]

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>          1 August 2025 at 20:44

To: Dipesh Singla <dipeshsingla668@gmail.com>

Good morning,

This is helpful Singla Dipesh.

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          1 August 2025 at 21:21

To: "Humphrey, Ezell" <Ezell.Humphrey2@illinois.gov>

Thanks a lot for sharing. keep me posted.

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          30 August 2025 at 22:08

To: "Humphrey, Ezell" <Ezell.Humphrey2@illinois.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

After checking and believing I am safe from any kind of adverse action including data protection and privacy rule, and any other laws governing it, I am sharing contact of the person I told you last time in good faith avoiding any whistleblower retaliation of any kind from agencies, or departments or any other legal and judicial authorities.

**This email should also act as an official request to provide the investigation report as soon as possible so that plaintiff will have a record and also as that can be submitted too, in a class action lawsuit that is filed in the hon'ble federal dist. court of NDIL ED court.**

**GPT:**

First chat on june 13 when the plaintiff took his number when met at the same event, he was with his group who had witnessed it most probably. (note timings in this whatsapp chat are of different time zones now due to the plaintiff being in different time zones. However, he says he doesn't remember what the plaintiff thinks after talking last time a month or so ago.

**Contact info (shared in good faith but it should avoid action against plaintiff)**

Best.

On Fri, 1 Aug 2025 at 20:44, Humphrey, Ezell <Ezell.Humphrey2@illinois.gov> wrote:

[Quoted text hidden]

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>          2 September 2025 at 19:25
To: Dipesh Singla <dipeshsingla668@gmail.com>

Hello Dipesh Singla,

This case has been dismissed. You did not provide enough information for me to investigate.

The only thing you said was, you met a 12-year-old male who was selling ice cream on the University of Chicago campus.

You don't know his name. You don't know if he was being supervised by anyone. You didn't remember if he was working for a company.

All you told me was, you started a conversation with a 12-year-old who was selling ice cream. That is not enough to start an investigation.

**From:** Dipesh Singla <dipeshsingla668@gmail.com>
**Sent:** Saturday, August 30, 2025 11:38 AM
**To:** Humphrey, Ezell <Ezell.Humphrey2@Illinois.gov>; Dipesh Singla <dipeshsingla668@gmail.com>
**Subject:** Re: [External] Re: Child Labor Complaint with the IL Dept of Labor

After checking and believing I am safe from any kind of adverse action including data protection and privacy rule, and any other laws governing it, I am sharing contact of the person I told you last time in good faith avoiding any whistleblower retaliation of any kind from agencies, or departments or any other legal and judicial authorities.

**This email should also act as an official request to provide the investigation report as soon as possible so that plaintiff will have a record and also as that can be submitted too, in a class action lawsuit that is filed in the hon'ble federal dist. court of NDIL ED court.**

**GPT:**

First chat on june 13 when the plaintiff took his number when met at the same event, he was with his group who had witnessed it most probably. (note timings in this whatsapp chat are of different time zones now due to the plaintiff being in different time zones. However, he says he doesn't remember what the plaintiff thinks after talking last time a month or so ago.

**Contact info (shared in good faith but it should avoid action against plaintiff)**

Best.


[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>            2 September 2025 at 19:47

To:    "Humphrey,    Ezell"    <Ezell.Humphrey2@illinois.gov>,    Dipesh    Singla
<dipeshsingla668@gmail.com>

Thank you for your response, can i please get a letter of dismissal citing these reasons and
appeal process for this dismissal if any, since in that case i have to look for an court order for
investigation, since I can't leave the child in that situation.

I have given you exact event date people' who were there also sitting with with me, i was not an investigator to do full investigation neither did i have the question you asked me to that person for making personal checklist.

I want to kindly provide me letter that i can file in NDIL court citing these above said reasons as you told and ofc having case number that is dismissed for this matter.

I request you to provide that as soon as possible. As you seemed to have made your investigation decision as final decision.

Best regards.

Dipesh

[Quoted text hidden]

**3 attachments**

> **image001.png**
> 329K
>
> **image002.png**
> 206K
>
> **image003.png**
> 72K

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>          2 September 2025 at 20:47

To: Dipesh Singla <dipeshsingla668@gmail.com>

Sir,


Please answer one question for me since you are so concerned about the minor.


Why did you wait more than a year to report it?

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    2 September 2025 at 22:59

To:    "Humphrey,    Ezell"    <Ezell.Humphrey2@illinois.gov>,    Dipesh    Singla <dipeshsingla668@gmail.com>

I answered it already last time, kindly check in this same chain, and as you have dismissed it, kindly provide me with a letter to file in hon'ble court of NDIL ED, I will file it today in my ongoing filed case. Also provide me with the case number here. I don't think after dismissal you can ask questions and restart it again randomly.

I strongly believe this is **taunting** and **insulting** in the way you wrote "since you are so concerned about the minor", I want to say officially, I **really don't appreciate it,** this is not at all professional when a children's life and future is at stake, and when a person is telling in good faith and providing all information to help you in potential investigations. I mentioned my answer to you already since you already have that special question for me drafted. Other people didn't report it, but tomorrow, if a substantive investigation happens by **holy court and/or jury** orders/will would you be able to say to other attendees that **why didn't they report it**?? I am doing in good faith and getting taunted and insulted here after invoking whistleblower statutes written multiple times.

I don't know completely about **me too** moment but the person who themselves faced some bad things they themselves didn't report it until everyone started reporting/lawsuit everyone came up as per my belief after voices were raised, as they are scared, in my case no one else is doing and when I am doing it I hear "since you are so concerned about the minor" .  My question to you is **are you not?**

**My strong belief apart from everything else is tampering with my liberty.**

This further raises questions after dismissal of the case from you that even if in case this got investigated, under the fear of lawsuit, and court orders, investigators/agencies can easily say nothing happened, nothing found out, **when I knew wrong happened as per laws and protections given by the law, and I am supporting and try to give you information, evidences and contacts too.** I don't know why investigative agencies seems to give BOD (Benefit of Doubt) to defendants and do things that favours to the defendants all the time, I really don't know and I am not alleging/asserting/stating anything here to get myself into trouble again, is it because they are friend of the defendant, or is it monetary benefits to govt.

and agencies, or is it they are scared from powerful defendant institution, or they don't want to do investigation at all, so as to use avoiding first methodology all the time, because to an individual who is doing everything in good faith it sounds like if kid is working still having strong laws can't make anyone accountable for their own wrongdoings, that is exactly not why USA and IL laws and constitution are made in my belief, they are there to protect people and whistleblowers especially. Dismissing the case and asking the same question again in a taunting way, destroys institutional credibility, genuineness and accountability. When plaintiff gave you exact data about the event reading through 100's of email/chats/contents you said that help, when already plaintiff had answered not known name, and also other things that were not known as you asked, you didn't dismiss it, and also you said it helps when I given details about in depth research, at that time as a tort of course I didn't needed to provide you the smoking gun proof and it work as it is always (and i believe you also perceived the same, not dismissing initially), that is why investigations are there, and they are not there to taunt whistleblowers.

I am not here to waste anyone's time nor do I have a lot left in my life. I have myself experienced some things like this in the past, I know what people go through when faced with such things in their life.

Secondly I am as of now not aware of statue of limitation for a henious crime of child labour reporting, and also you didn't mentioned that too that your team can't investigate this matter becasue of statue or similar concept time limitations.

I read the **most beautiful document of my little life**, and the first line is able to tell what all **USA Holy constitution** give to each person in USA especially emotionally so that people can live and sleep peacefully in their lives without fear and knowingly that if someone is gonna violate liberties; the holy constitution is gonna standing up as a warrior with sword of justice to defend them: Plaintiff request you this to read just the first line and you maybe able to understand all things plaintiff said above: https://constitutioncenter.org/media/files/constitution.pdf .

best.

**filling       in       good       faith       as       a       whistleblower.**

[Quoted text hidden]

---

**Humphrey, Ezell** <Ezell.Humphrey2@illinois.gov>         2 September 2025 at 23:27

To: Dipesh Singla <dipeshsingla668@gmail.com>

Sir,

I am going to ask you to take a broader view and try to look at this situation objectively.

Here are the facts:

You filled out a Child Labor complaint form. In it, you write that a minor. Someone who appears to be 12 years old is selling ice cream.

You talk to this person. They don't tell you their name. Yet you engage them in conversation and determine that a crime may be committed right now.

You don't know if the person is being supervised or not. Nor do you know if a minor is operating the other food cart nearby.

You feel that the right thing to do is to report this to the proper authorities. Yet you wait more than 365 days to report it.

After you fill out and file the complaint. I have to email you and get answers to my questions. Questions by the way, I ask everyone who fills out a Child Labor complaint.

And you have little to no information about the circumstances.

All you can tell me is "I was talking to a young person operating an ice cream cart on University of Chicago property. I talked to the young man.

Yet I don't know how old he is. I didn't ask him his name. Nor did I ask who allowed him to set up an ice cream cart on University of Chicago property".

Even though people who fill out Child Labor complaints are kept anonymous by the Illinois Department of Labor.

You wait more than a year to report it. Saying that you are concerned about the well-being of the minor.

You do not know if the minor is being supervised. Yet you tell me I need to contact Human Resources at the University.

All of those facts. Yet you are offended by the question "Why didn't you report this sooner"?

How do you know that the person you spoke with did not do this on their own?

**From:** Dipesh                Singla                <dipeshsingla668@gmail.com>
**Sent:** Tuesday,        September        2,        2025        12:29        PM
**To:** Humphrey,        Ezell        <Ezell.Humphrey2@Illinois.gov>;        Dipesh        Singla
<dipeshsingla668@gmail.com>
**Subject:** Re: [External] Re: Child Labor Complaint with the IL Dept of Labor

I answered it already last time, kindly check in this same chain, and as you have dismissed it, kindly provide me with a letter to file in hon'ble court of NDIL ED, I will file it today in my ongoing filed case. Also provide me with the case number here. I don't think after dismissal you can ask questions and restart it again randomly.

I strongly believe this is **taunting** and **insulting** in the way you wrote "since you are so concerned about the minor", I want to say officially, I **really don't appreciate it,** this is not at all professional when a children's life and future is at stake, and when a person is telling in good faith and providing all information to help you in potential investigations. I mentioned

my answer to you already since you already have that special question for me drafted. Other people didn't report it, but tomorrow, if a substantive investigation happens by **holy court and/or jury** orders/will would you be able to say to other attendees that **why didn't they report it**?? I am doing in good faith and getting taunted and insulted here after invoking whistleblower statutes written multiple times.

I don't know completely about **me too** moment but the person who themselves faced some bad things they themselves didn't report it until everyone started reporting/lawsuit everyone came up as per my belief after voices were raised, as they are scared, in my case no one else is doing and when I am doing it I hear "since you are so concerned about the minor" . My question to you is **are you not?**

**My strong belief apart from everything else is tampering with my liberty.**

This further raises questions after dismissal of the case from you that even if in case this got investigated, under the fear of lawsuit, and court orders, investigators/agencies can easily say nothing happened, nothing found out, **when I knew wrong happened as per laws and protections given by the law, and I am supporting and try to give you information, evidences and contacts too**. I don't know why investigative agencies seems to give BOD (Benefit of Doubt) to defendants and do things that favours to the defendants all the time, I really don't know and I am not alleging/asserting/stating anything here to get myself into trouble again, is it because they are friend of the defendant, or is it monetary benefits to govt. and agencies, or is it they are scared from powerful defendant institution, or they don't want to do investigation at all, so as to use avoiding first methodology all the time, because to an individual who is doing everything in good faith it sounds like if kid is working still having strong laws can't make anyone accountable for their own wrongdoings, that is exactly not why USA and IL laws and constitution are made in my belief, they are there to protect people and whistleblowers especially. Dismissing the case and asking the same question again in a taunting way, destroys institutional credibility, genuineness and accountability. When plaintiff gave you exact data about the event reading through 100's of email/chats/contents you said that help, when already plaintiff had answered not known name, and also other things that were not known as you asked, you didn't dismiss it, and also you said it helps when I given details about in depth research, at that time as a tort of course I didn't needed to provide you the smoking gun proof and it work as it is always (and i believe you also perceived the same, not dismissing initially), that is why investigations are there, and they are not there to taunt whistleblowers.

I am not here to waste anyone's time nor do I have a lot left in my life. I have myself experienced some things like this in the past, I know what people go through when faced with such things in their life.

Secondly I am as of now not aware of statue of limitation for a henious crime of child labour reporting, and also you didn't mentioned that too that your team can't investigate this matter becasue of statue or similar concept time limitations.

I read the **most beautiful document of my little life**, and the first line is able to tell what all **USA Holy constitution** give to each person in USA especially emotionally so that people can live and sleep peacefully in their lives without fear and knowingly that if someone is gonna violate liberties; the holy constitution is gonna standing up as a warrior with sword of justice to defend them: Plaintiff request you this to read just the first line and you maybe able to understand all things plaintiff said above: https://constitutioncenter.org/media/files/constitution.pdf .

best.

**filling in good faith as a whistleblower.**

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    2 September 2025 at 23:46
To: "Humphrey, Ezell" <Ezell.Humphrey2@illinois.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

I think you work probably with these things all the time so the genuine sounding questions you have (that you may think are genuine) for me, were not what I had in my mind else I would have taken a pen and notebook to write stuff or something like that, like filling a form

there for him. Further I was not there to interrogate him, I have not heard if there is something called Dipesh Rules, Dipesh Laws, and Dipesh Constitution that allow Dipesh to do an investigation with that kid.

I am and was basically acting as a lay person who doesn't know USA, IL, laws. After I explicitly wrote whistleblower things again then your sound completely changed here and you taunted me, after I message after last time when you said it helps, i knew it helps you that's why it was shared to you in good faith and that is how you perceived it to and didn't dismiss it after i initially told you what I don't know from your questions/dept questions.

Anyways I don't think I should waste your time and my precious time, I don't believe I have a lot longer time to live too. I have lost complete faith.

**Please provide me with an official determination letter, I need it.**

As it is dismissed I think it's not healthy and professional to ask any further questions on this since this will be solved by hon'ble court since fundamentals of my liberties and other things are at stake.

Best.

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                   22 September 2025 at 23:43

To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

**Exhibit 13: FOIA Multiple Emails**

I am in receipt of your email below requesting documents from our office pursuant to the Illinois Freedom of Information Act (FOIA). The documents that you requested are contained in investigatory files maintained by the Office of the Independent Inspector General. Investigatory files maintained by an Inspector General's office, such as ours, are exempt from disclosure under FOIA. See 5 ILCS 140/7.5(h); 5 ILCS 430/20-95(d). Accordingly, the requested documents will not be provided to you. Also, please note that we do not have jurisdiction over the University of Chicago.

You have a right to have the denial of your request reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General. 5 ILCS 140/9.5(a). You can file your Request for Review with the PAC by writing to:

Public Access Counselor

Office of the Attorney General

500 South 2nd Street

Springfield, Illinois 62701

Fax: 217-782-1396

E-mail: public.access@ilag.gov

You also have the right to seek judicial review of the denial by filing a lawsuit in the State circuit court.  5 ILCS 140/11.  If you choose to file a Request for Review with the PAC, you must do so within 60 calendar days of the date of this denial letter.  5 ILCS 140/9.5(a).  Please note that you must include a copy of your original FOIA request and this denial letter when filing a Request for Review with the PAC.

Sincerely,

Katherine McKay

OIIG FOIA Officer

Case 2:

  RE:    DCFS FOIA

            request no.  06315787

Dear Dipesh Singla:

I write in response to your Freedom of Information Act (FOIA) request, which was received and processed by the Department. Your request states:

*Dear                FOIA                Officer                and                staff,*

*Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I hereby request access to and copies of all agency records concerning the University of Chicago, and all of its*

*affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union.*

*The scope of this request includes, but is not limited to, the following record types generated from January 1, 2015 to the present:*

*All formal and informal complaints filed.*

*All charges, determinations, and decisions issued.*

*All administrative orders, settlement agreements, and consent decrees.*

*All correspondence (including emails and memoranda) between the agency and the aforementioned entities.*

*All inspection reports, audit findings, and investigative files.*

*Any Other Records*

Under FOIA, "[a]ll records **in the custody or possession** of a public body are presumed to be open to inspection or copying." (Emphasis added.) 5 ILCS 140/1.2 (West 2024). Further, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 321 (D.C. Cir. 1982); see also *Workmann v. Illinois State Board of Education*, 229 Ill. App. 3d 459, 463-64 (1992) (a public body does not violate FOIA when it does not disclose a record that it does not possess).

Based upon your request, which provides no indication of how or why the records are connected to DCFS, DCFS does not maintain records relating the requests you made. Therefore, your request is denied.

You have the right to have your request reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General. 5 ILCS 140/9.5(a). You can file your request for review with the PAC at:

Public Access Counselor

Office of the Attorney General

500 South 2nd Street

Springfield, Illinois 62706

Fax: 217-782-1396

E-mail: public.access@ilag.gov

If you choose to file a Request for Review with the PAC, you must do so within 60 calendar days of the date of this letter. 5 ILCS 140/9.5(a). Please note that you must include a copy of your original FOIA request and this letter when filing a Request for Review with the PAC.

You also have the right to seek judicial review concerning your request by filing a lawsuit in the state circuit court. 5 ILCS 140/11.

Sincerely,

Carl W. Gilmore

Carl W. Gilmore

FOIA Officer

Illinois Department of Children

and Family Services

**Case 3:** IDPH

 **Dipesh Singla <dipeshsingla668@gmail.com>**

---

**RE: [External] FOIA Data Request: Full Fee Waiver Requested (DPH 25-1520 FOIA)**
4 messages

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                    1 October 2025 at 01:37

To: Dipesh Singla <dipeshsingla668@gmail.com>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

 Dear Dipesh Singla,

This is in response to your Freedom of Information Act request below.

The Illinois Department of Public Health does not have jurisdiction over any educational institutions. Therefore, we have no records responsive to your request. The Illinois Board of Higher Education (IBHE) is the state agency that oversees private universities in Illinois. You can file a FOIA request with IBHE by following the instructions on the following website: https://www.ibhe.org/foia.html.

You can reach me via email to DPH.FOIA@illinois.gov if you require further assistance.

Sincerely,

Patricia C. Montalvo

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

115 South LaSalle Street, 7th Floor

Chicago, IL 60603

**From:** Dipesh Singla <dipeshsingla668@gmail.com>
**Sent:** Tuesday, September 30, 2025 11:51 AM
**To:** Dipesh Singla <dipeshsingla668@gmail.com>
**Subject:** [External] FOIA Data Request: Full Fee Waiver Requested

Dear FOIA Officer and staff,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I hereby request access to and copies of **all** agency records concerning **the University of Chicago**, and all of its affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union.

The scope of this request includes, but is not limited to, the following record types generated from **January 1, 2015 to the present**:

All formal and informal complaints filed.

All charges, determinations, and decisions issued.

All administrative orders, settlement agreements, and consent decrees.

All correspondence (including emails and memoranda) between the agency and the aforementioned entities.

All inspection reports, audit findings, and investigative files.

Any Other Records

Fee Waiver Request:

I request a full waiver of all fees associated with the processing of this request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government by shedding light on labor practices, compliance with federal regulations, and the administration of labor relations at a major educational institution. It is not primarily in my commercial interest, and I am seeking this information for research. I require this data but would not be able to pay anything. I further request expedited processing of this request as there is a compelling need to inform the public concerning actual or alleged federal government activity.

Please contact me if you require any clarification or have questions regarding this request. Thank you for your assistance.

Sincerely,

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail

and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    1 October 2025 at 01:40

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Do you take complaints against university that is private if so fo you have those data?

Br

[Quoted text hidden]

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                    1 October 2025 at 01:58

To: Dipesh Singla <dipeshsingla668@gmail.com>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

As advised, we don't have any legal or enforcement authority over academic institutions, which includes public schools, private schools, public and private universities, and trade schools, which is why we don't accept complaints about those entities. We deal with public health matters, like licensing to become a plumber or regulating nursing homes. We don't do anything involving educational systems. IBHE is the agency in Illinois that deals with private universities.

--

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

O: (312) 814-3577

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    1 October 2025 at 02:00

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Ok

[Quoted text hidden]

**Email 2 with IDPH**

**Illinois Department of Public Health Freedom of Information Act Request No. DPH 25-1564                                                                                                    FOIA**
8 messages

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                                    8 October 2025 at 09:10

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Dear Dipesh Singla,

This is in response to the Freedom of Information Act request you submitted on September 30, 2025 for the following records:

**"Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I hereby request access to and copies of all agency records concerning the University of Chicago, and all of its affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union. The scope of this request includes, but is not limited to, the following record types generated from January 1, 2015 to the present: All formal and informal complaints filed. All charges, determinations, and decisions issued. All administrative orders, settlement agreements, and consent decrees. All correspondence (including emails and memoranda) between the agency and the aforementioned entities. All inspection reports, audit findings, and investigative files. Any Other Records."**

On October 7, 2025, you submitted the following **duplicate** Freedom of Information Act request for the same records:

**"Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I hereby request access to and copies of all agency records concerning the University of Chicago, and all of its affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union. The scope of this request includes, but is not limited to, the following record types generated from January 1, 2015 to the present: All formal and informal complaints filed. All charges, determinations, and decisions issued. All administrative orders, settlement agreements, and consent decrees. All correspondence (including emails and memoranda) between the agency and the aforementioned entities. All inspection reports, audit findings, and investigative files. Any Other Records."**

As we previously advised, the Department does not have records responsive to your request. The Department of Public Health does not have any jurisdiction or regulatory authority over institutions of higher education and specifically over private universities such as the University of Chicago. Private universities are overseen by the Illinois Board of Higher Education                                                                                  (IBHE).
You can file a FOIA request with IBHE by following the instructions on the following webs ite: https://www.ibhe.org/foia.html.

We kindly ask that you not file any more requests with the Department with regard to the records requested herein. We simply do not have the records you are seeking, and we have kindly provided you with the agency we believe to be the proper agency that may have some of the records responsive to your request.

Sincerely,

Patricia C. Montalvo

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

115 South LaSalle Street, 7th Floor

Chicago, IL 60603

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**2 attachments**

 **DPH 25-1520 FOIA Response Email.pdf**
154K

 **DPH 25-1520 FOIA Response Email 2.pdf**
183K

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    8 October 2025 at 13:30

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Some data is here. I thought, as they have medical centers, you should ideally have some communications/complaints, no worries if you don't, as you mentioned in the letter.

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    8 October 2025 at 13:56

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

https://dph.illinois.gov/resource-center/news/2014/october/statement-idph-and-chicago-ebola-resourcenetwork.html

https://dph.illinois.gov/resource-center/news/2019/may/idph-investigating-legionella-possibly-associated-chicago-hospital0.html

[Quoted text hidden]

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                    8 October 2025 at 20:06

To: Dipesh Singla <dipeshsingla668@gmail.com>

We have data regarding the hospital but none related to your asks. We wouldn't be the entity to follow up on the graduate programs or their medical school's operations. If you are having a specific issue with them, I can try and direct you further but please do not file the same FOIA request again. Have you reported your issues to the school? Usually they require that you report those issues internally and exhaust internal remedies before seeking other external redress.


Thank you.


Pat


--

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health


[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    8 October 2025 at 21:17

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>, Dipesh Singla <dipeshsingla668@gmail.com>

Yes I have exhausted internal things, thanks for **your concerns,** university however hid the data when it was required and asked, secondly if I was looking for data from them I would have not contacted you.

further on papers university is private entity ("As of now"), so looking for complaint and grievance filed against university of chicago medical center, university of chicago, and with @uchicago.edu any responsive records,

If you don't have anything complaints/orders/communications even about their healthcare facilities, medical centre, research labs, than it's fine, if you have you can share them here.

best.

[Quoted text hidden]

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                    9 October 2025 at 06:02

To: Dipesh Singla <dipeshsingla668@gmail.com>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

If you want to file a FOIA request asking for complaint investigation reports involving University of Chicago Hospital for the last 6 years (that is how far back our records go), I can have the program check. My suggestion is that you consult with an attorney before you start asking for records as it is unlikely that anything we provide will help you in whatever issues you are having with the University. Furthermore, the University of Chicago is accredited by Joint Commission and most of the complaints filed against them are investigated by them and not IDPH.

If you decide to file a new FOIA request, you can do so via the following link: **IDPH FOIA Submission Form**.

--

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    9 October 2025 at 06:45

To: "DPH.FOIA" <DPH.FOIA@illinois.gov>

Ok thanks so please do it for the last 6 years, I will wait for it.

Pl lmk if I need to do anything else.

br

[Quoted text hidden]

---

**DPH.FOIA** <DPH.FOIA@illinois.gov>                9 October 2025 at 07:14

To: Dipesh Singla <dipeshsingla668@gmail.com>

Cc: "DPH.FOIA" <DPH.FOIA@illinois.gov>

You will need to submit a formal foia request by using the link I provided.


Pat




--

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

O: (312) 814-3577

[Quoted text hidden]

**Email 3 IDPH**

**FOIA**                                                              **Request**
6 messages

---

**Montalvo, Patricia** <Patricia.Montalvo@illinois.gov>       9 October 2025 at 07:41

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

We would not have records for the other facilities listed- only the hospital. We do not regulate the hospital's clinics, laboratories, etc.

In the future, do not copy my emails into a FOIA request. Use your own words.

--

**Patricia C. Montalvo**

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

115 South LaSalle Street, 7th Floor

Chicago, IL 60603

O: (312) 814-3577

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    9 October 2025 at 08:33

To: "Montalvo, Patricia" <Patricia.Montalvo@illinois.gov>, Dipesh Singla <dipeshsingla668@gmail.com>, Public Access <public.access@ilag.gov>, Emergency_Judge@ilnd.uscourts.gov

So are you searching for uchicago hospitals for the past 6 years or not?

Further any funding records like funding process that went through IDPH, any appeal process, complaints etc to be added. In addition if any uchicago course with any school especially harris school of public policy be having some recommendations to you like policy proposal a complete trial of the demands idph might have did to university, what responses were give by students, professors, and the documents submitted are also demanded.

Add this data especially if you have data about food safety, EPR, HCP, EHP, Lab testing, prevention and wellness, resources, which are my allegations

Lastly, in addition please let me know and provide if you are an affiliate, alum, or friend of university, or if your agency higher officials are friends/affiliates/alumni of university. How much funding the university of chicago gets from IDPH, and how much they fund you in your projects/activities/everyday tasks.

I request a waiver of all fees associated with this request.

-

Your own writing was for reference else your office might have ask me to tell whole matter again, further as per your last email, I wanted to clarify, **I didn't ask for advice on how I can get this sorted out,** you are not my lawyer to suggest to sort out things through the internal procedure, **I didn't ask for it,** I only asked for data. Further data from UChicago hospital will also have mention of **University of Chicago** when you will be searching, I don't know what made you think that I asked you for anything other than data like guidance on how I can get my problems sorted with university. Your task was only to provide data in your possession not to guide me in my life.

Lastly when you replied can I call this as you used my words?

Furthermore you are most probably a public officer copying your own words to yourself if wrong. I don't understand why, and as of yet you haven't mentioned any law/case that supports your claim as tortfully there's nothing wrong with that **at all.**

I am appealing this to extract the data as soon as possible, and invoking legal and constitutional protections based on the rude and unnecessary replies and unnecessary guidance being provided over the emails. And also invoking retaliation and whistleblower protections explicitly herein.

Any dissemination of this email to other authorities without my consent should be considered not right, not legal, and not ethical, by me **as confidentiality requests are demanded.**

-

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                    9 October 2025 at 08:37

To: efiling.support@tylertech.com, eappeals@cookcountycourt.com, Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]

---

**Montalvo, Patricia** <Patricia.Montalvo@illinois.gov>                    9 October 2025 at 08:56

To: Dipesh Singla <dipeshsingla668@gmail.com>, Public Access <public.access@ilag.gov>, "Emergency_Judge@ilnd.uscourts.gov" <Emergency_Judge@ilnd.uscourts.gov>

Dear Dipesh Singla,

Of course, I will process your request. I haven't denied it. I simply asked that you file a formal request for the records and not simply copy emails I send you into the descriptions of the records sought because what you added is a conversation between us and the request has to be in your words and not mine. I am just trying to help you draft your request so that the individuals who actually look up the records know specifically what you are seeking. Please keep in mind that I am just the FOIA Officer. I don't create records or investigate matters. I am simply trying to help you but if you prefer that I not, then I will cease from doing so.

Before I can respond to your request, it appears that you have amended it below. Can you please resubmit your request to me in a clean email that specifically itemizes the records you are seeking. Please be as specific as possible and provide a good description of the records being sought. It would help if you number your requests so that when I respond, I can respond to each part of your request separately.

If you can get that to me by the morning that would be fine.

Thanks,

Pat

--

Patricia C. Montalvo

Assistant General Counsel & FOIA Officer

Division of Legal Services

Illinois Department of Public Health

O: (312) 814-3577


**From:** Dipesh Singla <dipeshsingla668@gmail.com>
**Sent:** Wednesday, October 8, 2025 10:03 PM
**To:** Montalvo, Patricia <Patricia.Montalvo@Illinois.gov>; Dipesh Singla <dipeshsingla668@gmail.com>; Public Access <public.access@ilag.gov>; Emergency_Judge@ilnd.uscourts.gov
**Subject:** [External] Re: FOIA Request


So are you searching for uchicago hospitals for the past 6 years or not?

Further any funding records like funding process that went through IDPH, any appeal process, complaints etc to be added. In addition if any uchicago course with any school especially harris school of public policy be having some recommendations to you like policy proposal a complete trial of the demands idph might have did to university, what responses were give by students, professors, and the documents submitted are also demanded.


Add this data especially if you have data about food safety, EPR, HCP, EHP, Lab testing, prevention and wellness, resources, which are my allegations


Lastly, in addition please let me know and provide if you are an affiliate, alum, or friend of university, or if your agency higher officials are friends/affiliates/alumni of university. How much funding the university of chicago gets from IDPH, and how much they fund you in your projects/activities/everyday tasks.

I request a waiver of all fees associated with this request.

-

Your own writing was for reference else your office might have ask me to tell whole matter again, further as per your last email, I wanted to clarify, **I didn't ask for advice on how I can get this sorted out,** you are not my lawyer to suggest to sort out things through the internal procedure, **I didn't ask for it,** I only asked for data. Further data from UChicago hospital will also have mention of **University of Chicago** when you will be searching, I don't know what made you think that I asked you for anything other than data like guidance on

how I can get my problems sorted with university. Your task was only to provide data in your possession not to guide me in my life.

Lastly when you replied can I call this as you used my words?

Furthermore you are most probably a public officer copying your own words to yourself if wrong. I don't understand why, and as of yet you haven't mentioned any law/case that supports your claim as tortfully there's nothing wrong with that **at all.**

I am appealing this to extract the data as soon as possible, and invoking legal and constitutional protections based on the rude and unnecessary replies and unnecessary guidance being provided over the emails. And also invoking retaliation and whistleblower protections explicitly herein.

Any dissemination of this email to other authorities without my consent should be considered not right, not legal, and not ethical, by me **as confidentiality requests are demanded.**

-


[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                9 October 2025 at 12:31

To: "Montalvo, Patricia" <Patricia.Montalvo@illinois.gov>

Cc: Public Access <public.access@ilag.gov>, "Emergency_Judge@ilnd.uscourts.gov" <Emergency_Judge@ilnd.uscourts.gov>

I will do that email again but this will still have to be dealt with the hon'ble courts since this is not fine and fair at all, I clearly separated the reply to your sayings and the data request in the last email.

br

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>                9 October 2025 at 14:04

To: Dipesh Singla <dipeshsingla668@gmail.com>


----------        Forwarded        message        ---------
From: **Dipesh        Singla** dipeshsingla668@gmail.com
Date:        Thu,        9        Oct        2025        at        12:31

Subject:          Re:          [External]          Re:          FOIA          Request
To: Montalvo, Patricia <Patricia.Montalvo@illinois.gov>

[Quoted text hidden]

[Quoted text hidden]

Case 4:

---

**FOIA**                                                        **Response**
3 messages

---

---

**EEC. LegalStaff**                          3 October 2025 at 23:57

---

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

---

Good afternoon Dipesh,

Thank you for your FOIA request of September 30, 2025, in which you requested "**all** agency records concerning **the University of Chicago**, and all of its affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union. The scope of this request includes, but is not limited to, the following record types generated from **January 1, 2015 to the present**: All formal and informal complaints filed. All charges, determinations, and decisions issued. All administrative orders, settlement agreements, and consent decrees. All correspondence (including emails and memoranda) between the agency and the aforementioned entities. All inspection reports, audit findings, and investigative files. Any Other Records."

Under the State Officials and Employees Ethics Act (Ethics Act), information relating to allegations, complaints, disciplinary cases, Executive Inspector General investigatory files and reports, and other matters is subject to strict confidentiality requirements. See 5 ILCS 430/20-90 and 20-95 (setting forth restrictions on disclosure of information).

However, the Ethics Act does allow the Commission to publish certain information where appropriate—for example, (a) the Commission's disciplinary decisions in contested Ethics Act cases and (b) investigative reports issued by the Offices of the Executive Inspectors General (OEIGs). 5 ILCS 430/20-50(l) and 20-52. The Commission's website includes

searchable databases of Ethics Act decisions, OEIG investigative reports, and other publications. The Commission's website is here: OEIG Investigative Reports.

A search of Commission files, including those published on the Commission's website, indicates the Commission has no records responsive to your request that would not be exempt from disclosure under FOIA exemptions addressing confidentiality and privacy. 5 ILCS 140/7(1)(a), (b), (c), and (f). 5 ILCS 140/7; 5 ILCS 430/20-90(b) and 20-95.

To the extent your request has been denied, you have 60 days to exercise your right to request review by the Public Access Counselor at the following address:

Public Access Counselor

Office of the Attorney General

500 South 2nd Street

Springfield, IL 62706

Fax: 217-782-1396

Email: publicaccess@atg.state.il.us

The request for review must be in writing, be signed by the requester, and include a copy of the request for access to records and responses from the public body. You also have the right to judicial review under Section 11 of the Illinois Freedom of Information Act, 5 ILCS 140/11. The person responsible for the denial is Megan R. Delgado, Assistant General Counsel and FOIA Officer for the Executive Ethics Commission.

If you have any questions regarding this response, please don't hesitate to contact me for assistance.

Thank you,

Megan

**From:**From: Dipesh Singla dipeshsingla668@gmail.com
**Sent:** Tuesday, September 30, 2025 11:51 AM
**To:** Dipesh Singla dipeshsingla668@gmail.com
**Subject:** [External] FOIA Data Request: Full Fee Waiver Requested

Dear FOIA Officer and staff,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I hereby request access to and copies of **all** agency records concerning **the University of Chicago**, and all of its affiliated entities, individuals, and labor unions representing its employees, including but not limited to Graduate Students United (GSU) and the Teamsters Union.

The scope of this request includes, but is not limited to, the following record types generated from **January 1, 2015 to the present**:

All formal and informal complaints filed.

All charges, determinations, and decisions issued.

All administrative orders, settlement agreements, and consent decrees.

All correspondence (including emails and memoranda) between the agency and the aforementioned entities.

All inspection reports, audit findings, and investigative files.

Any Other Records

Fee Waiver Request:

I request a full waiver of all fees associated with the processing of this request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government by

shedding light on labor practices, compliance with federal regulations, and the administration of labor relations at a major educational institution. It is not primarily in my commercial interest, and I am seeking this information for research. I require this data but would not be able to pay anything. I further request expedited processing of this request as there is a compelling need to inform the public concerning actual or alleged federal government activity.

Please contact me if you require any clarification or have questions regarding this request. Thank you for your assistance.

Sincerely,

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**Dipesh Singla** <dipeshsingla668@gmail.com>          4 October 2025 at 00:31

To: "EEC. LegalStaff" <EEC.LegalStaff@illinois.gov>

So not any kind of data is there for me with mention of UChicago?

br

[Quoted text hidden]

---

**EEC. LegalStaff**          10 October 2025 at 22:12

To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

Hi Dipesh,

Thank you for your follow up question. No, there are not any responsive records that wouldn't be exempt under the Freedom of Information Act.

Further, the Executive Ethics Commission's jurisdiction is limited to public institutions of higher learning. 5 ILCS 430/1-5.